UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | |
| ABEINSA HOLDING, INC., et al.,[1] | ) | Case No. 16-10790 (KJC) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | (D.I. 286, 384) |

## OPINION[2]

## BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

Before the Court is the Motion of Portland General Electric ("PGE") for Relief from Stay. (D.I. 286.) PGE moves that the stay be lifted so that it may initiate litigation against various debtor entities arising out of alleged breaches of a construction agreement between PGE and the Debtors[3] called the "Turnkey Engineering, Procurement & Construction Agreement for Carty Generating Station," (the "EPC Contract"). The EPC Contract has an exclusive forum selection clause naming the U.S. District Court for the District of Oregon. Chapter 15 debtor Abengoa, S.A. (Case No. 16-10754 (KJC)), the instant Debtors' parent company, guaranteed the obligations of the Debtors under the EPC Contract (the "Guaranty"). The Guaranty has a forum selection clause specifying that arbitration of any disputes take place under ICC rules, also in

---

[1] The debtors in these chapter 11 cases are: Abeinsa Holding Inc.; Abeinsa EPC LLC; Abencor USA, LLC; Abener Construction Services, LLC; Abener North America Construction, LP; Abengoa Solar, LLC; Inabensa USA, LLC; Nicsa Industrial Supplies LLC; Teyma Construction USA, LLC; Abeinsa Abener Teyma General Partnership; Abener Teyma Mojave General Partnership; Abener Teyma Inabensa Mount Signal Joint Venture; Teyma USA & Abener Engineering and Construction Services General Partnership; Abengoa US, LLC; Abengoa US Operations, LLC; Abengoa Bioenergy Biomass of Kansas, LLC; Abengoa Bioenergy Hybrid of Kansas, LLC; Abengoa Bioenergy Technology Holding, LLC; Abengoa Bioenergy New Technologies, LLC. Items on the docket for Case No. 16-10790 are referred to as "D.I. ____."

[2] This Memorandum constitutes the findings of fact and conclusions of law, as required by Fed.R.Bankr.P. 7052. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This contested matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(A) and (G).

[3] Abeinsa Abener Teyma General Partnership, Abeinsa EPC LLC, Abener Construction Services, LLC, and Teyma Construction USA, LLC, are referred to as the "Debtor-Contractors" by the Debtors, but, as they are the only relevant Debtors for the purposes of this Opinion, I will simply refer to them as the Debtors.

Oregon.[4] Abengoa seeks arbitration related not only to the Guaranty, pursuant to which PGE has yet to make any claim, but also on the underlying breach of the EPC Contract dispute between PGE and the Debtors. PGE has not requested this Court to enforce the forum selection clause in the EPC Contract. Rather, PGE asks that this Court lift the stay to allow the Oregon court to resolve jurisdictional questions, and then, in the event of a favorable determination, to allow PGE to prosecute its claims against the Debtors to final judgment (but not enforce any such judgment).

For the reasons set forth below, the relief from stay will be granted.

## BACKGROUND

In 2013, the Debtors entered into the EPC Contract to build a combined-cycle combustion turbine and related facility for the generation of energy (or the "Carty Project") for PGE. Soon thereafter, Abengoa, the Debtors' ultimate Spain-based parent company, signed the Guaranty. The Debtors also obtained a performance bond from Liberty Mutual Insurance Company and Zurich American Insurance Company (collectively, the "Sureties"). Relations between PGE and the Debtors broke down in November 2015, and PGE notified the Debtors that it was considering placing them into default. Subsequently, in December 2015, PGE terminated the EPC Contract.[5] Around the same time, PGE sought recovery from the Sureties, and the Sureties denied the claim. On December 31, 2015, in accordance with the provisions of the Guaranty, Abengoa commenced an ICC arbitration with PGE (ICC Case No. 215620/RD). Abengoa joined the Debtors and the Sureties to the arbitration, relying upon clauses in the Guaranty that provided for arbitration as the exclusive forum and that "either Party may implead

---

[4] "ICC" is the International Chamber of Commerce International Court of Arbitration.
[5] In its Reply Brief in Support (D.I. 395), PGE objects to some of the factual assertions contained in the Debtors' Objection (D.I. 384), the principal source for the facts presented above. PGE Reply Br. in Supp. 15 n.12. I note that there was minimal competing recitation of facts, no correction of the Debtors' recitation of facts, and no joint stipulation of facts. I cite to unsupported facts only to provide general background.

[and/or raise any claim against] any other person or entity provided such claim arises out of or in connection with an agreement with . . . this Guaranty." (Guaranty Art. 10(b)(vii), D.I. 395-1, at 24-26.) In February 2016, PGE sought to enjoin the arbitration. In March 2016, PGE commenced an action against the Sureties in the U.S. District Court for the District of Oregon. The Sureties moved to stay the action to remain in arbitration, and PGE moved to enjoin the Sureties from participation in the arbitration.

On March 29, 2016, the Debtors filed their voluntary petitions for relief under chapter 11.

On May 25, 2016, PGE filed its Motion for Relief from the Stay to pursue claims against the Debtors, relying upon a clause in the EPC Contract that states, in relevant part:

> The Parties irrevocably consent to the exclusive jurisdiction of any U.S. federal court with jurisdiction over Oregon. Each Party hereby irrevocably waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the venue of any such proceeding which is brought in such court.

(EPC Contract, Art. 40.18, D.I. 395-1, at 16.) After briefing, a hearing was held on July 7, 2016, at which this Court decided that further consideration would be paused pending the Oregon District Court's forthcoming decision regarding the Sureties.

U.S. District Judge Hernandez issued his decision on July 27, 2016,[6] enjoining the Sureties from participation in the arbitration, and refusing to stay the case in District Court because: "There is no agreement between PGE and Sureties to submit any proceeding to arbitration."[7] The court also held, *inter alia*, that: "The EPC Contract does not contain an arbitration provision."[8] The court enjoined the Sureties from joining the arbitration, following a

---

[6] *PGE v. Liberty Mut. Ins. Co.*, 2016 WL 4059658 (D. Or. July 27, 2016).
[7] *Id.* at *2.
[8] *Id.* at *1.

line of cases holding that forcing a party into an arbitration it did not agree to constitutes *per se* irreparable harm.[9]

After supplemental briefing, and another hearing held on August 9, 2016, I took the matter under advisement.

## APPLICABLE LAW

Under 11 U.S.C. § 362(a):

[A] petition filed under section 301 . . . of this title . . . operates as a stay, applicable to all entities, of—
(1) the commencement or continuation, including the issuance of employment of process, of a judicial . . . proceeding against the debtor that was or could have been commenced before the commencement of the case under this title . . . .

Under 11 U.S.C. § 362(d):

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
(1) for cause . . . .

"Except for lack of adequate protection, 'cause' is not defined by § 362(d)(1). Cause is a flexible concept and courts often conduct a fact intensive, case-by-case balancing test, examining the totality of the circumstances to determine whether sufficient cause exists to lift the stay."[10] Motions to lift the § 362 stay are customarily evaluated under the three-factor test articulated in *In re Rexene Products Co.*, to determine whether:

a)  any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit,
b)  the hardship to the [non-bankrupt party] by maintenance of the stay considerably outweighs the hardship of the debtor, and
c)  the creditor has a probability of prevailing on the merits.[11]

With regard to the burden of proof, 11 U.S.C. § 362(g) provides:

---

[9] *See id.* at *8.
[10] *In re SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007).
[11] *Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citation omitted).

In any hearing under subsection (d) or (e), concerning relief from the stay of any act under subsection (a) of this section—

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues.

Since the Debtors' equity in property is not at issue here, the burden to resist lifting of the stay rests entirely with the Debtor. Curiously, the cases considering such requests for relief tend toward asking the question: "Why should the court lift the stay?" The statute, by its burden shifting, seems almost instead to ask, "why shouldn't the stay be lifted?" Similarly, application of the *Rexene* factors seem to limit the significance of placing the burden of proof squarely upon the party who opposes lifting of the stay, here, Abiensa. It is not PGE's burden to show that the Debtors would not be harmed by stay relief. I also find that use of the *Rexene* test in situations like this one is sometimes inadequate to the task of determining whether stay relief should be granted.

In *In re SCO Group, Inc.*, my colleague, Judge Gross, turned to the Court of Appeals for the Second Circuit for the following list of factors (Judge Gross called them policies), in which the balance of harms is but one element:

1) whether relief would result in a partial or complete resolution of the issues; 2) lack of any connection with or interference with the bankruptcy case; 3) whether the other proceeding involves the debtor as a fiduciary; 4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; 5) whether the debtor's insurer has assumed full responsibility for defending it; 6) whether the action primarily involves third parties; 7) whether litigation in another forum would prejudice the interests of other creditors; 8) whether the judgment claim arising from the other action is subject to equitable subordination; 9) whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor; 10) the interests of judicial economy and the expeditious and economical resolution of litigation; 11) whether the parties are

ready for trial in the other proceeding; and 12) impact of the stay on the parties and the balance of the harms.[12]

## DISCUSSION

I find that no great prejudice will result to the Debtors from initiation of the proposed suit in the federal district court. The Debtors have failed to carry their burden to demonstrate harm. I do not (as urged by PGE) hold that the Debtors' offer to resolve the entire suit in arbitration is a de facto consent to lift the stay because the two forums are not the same—greater resources would be expended in the full action if jurisdiction in the Oregon District Court were held to be proper (resources that would be devoted to discovery, testimony, all of the features that make it PGE's preferred forum). However, the jurisdictional determination is not the entire consequent action. Expenditure of the resources necessary to obtain a proper determination of jurisdiction will not prejudice the Debtors, and, should the Oregon District Court be determined to be the proper forum, there has been no convincing argument from the Debtors that abiding by the terms of their contract will result in undue prejudice. The Debtors have also failed to prove that litigation, jurisdictional or otherwise, in the Oregon District Court would prejudice the interests of the rest of the creditor body. The only argument that touched upon the subject, and briefly, was that of the Official Creditors Committee at the July 7 hearing. (7/7/16 Tr. 37:7-38:24). Concerns voiced over the effect of lifting the stay on the overall bankruptcy are purely speculative.

The potential hardship to PGE considerably outweighs the hardship to the Debtors. At the August 9 hearing, the Debtors presented arbitration as the most efficient forum because it is "the forum where the final decision cannot be appealed . . . ." (8/9/16 Tr. 39:9-11, D.I. 505.) As I

---

[12] 395 B.R. at 857 (quoting *In re Sonnax Indus., Inc*, 907 F.2d 1280, 1287 (2d Cir. 1990)). I confess, however, my reluctance, in the absence of controlling law, to fashion or adopt any test consisting of more than five factors. Nevertheless, under these circumstances, consideration of the *SCO* Court's factors is helpful.

stated at the hearing, "efficiency isn't solely a measure of how much time something takes to be

decided." (8/9/16 Tr. 39:16-17.) This speaks to the concern, raised by PGE, that the Debtors are

using the stay offensively to force their choice of forum, a forum which could potentially present

due process concerns due to that very lack of a comprehensive appeals process. While I do not

believe that the Debtors are abusing the automatic stay, or that their offer to lift the stay

voluntarily only for arbitration is in any way coercive, I am cognizant of PGE's misgivings.

While PGE concedes that the ICC is properly considering the arbitrability of the dispute

(or potential dispute) concerning the Guaranty, PGE does not admit to any obligation to arbitrate

the underlying EPC Contract. Given that contention, and in light of the abbreviated and summary

nature of this proceeding, it is proper that PGE have a full and fair opportunity to litigate the

jurisdictional issues in the forum that is best suited to manage what could prove to be separate

parallel proceedings between PGE and Abengoa and possibly Abeinsa in arbitration, and

between PGE and the Sureties and possibly Abeinsa in the action that is going forward in Oregon

District Court. In a footnote to PGE's Supplemental Brief in Support, PGE clarifies how it sees

the next steps after a lift-stay progressing:

> As PGE has made clear all along, it is not asking for a definitive jurisdictional ruling
> from this Court. PGE submits denial of the Motion would inappropriately constitute
> such a ruling. But if relief from stay is granted, the Abeinsa Companies may file a
> motion to stay the new action [pursuant to the Federal Arbitration Act], as they
> suggest they will in the [Debtors' Obj. ¶ 29, D.I. 384]; and PGE will likely file a
> motion to enjoin the Abeinsa Companies from going forward in the arbitration. The
> Oregon Federal Court will make the final jurisdictional determination.

(D.I. 472 at 2 n.3.) I agree that allowing the Oregon District Court to manage this matter seems

the best and most efficient resolution. I acknowledge that a request to initiate, rather than resume,

litigation commenced pre-petition is somewhat unusual. However, here, proceedings on related

matters have already been commenced and are continuing. The Oregon District Court, having

already ruled on a related issue, is best positioned to determine the extent of the jurisdictional

issues that may be presented to the ICC panel, including, should the Oregon District Court agree

with PGE, the extent to which certain disputes between PGE and Abeinsa may be removed from

the ICC's determination of arbitrability.[13] If the ICC panel determines that it does not have

jurisdiction over the underlying EPC Contract, or should the district court determine that the

issues Abengoa has sought declarations upon in arbitration would not be binding upon PGE,[14]

the Oregon District Court is best positioned to take up the matter and, due to Judge Hernandez's

familiarity with the dispute and concurrent jurisdiction over the aspects involving PGE and the

Sureties, render a final decision on all related matters. Obtaining a final jurisdictional

determination will at the very least allow the parties to evaluate the merits and hazards of the

dispute going forward. I therefore reject the Debtors' argument concerning the number of

"fronts" that have opened up in pursuit of resolving this dispute, and doubly so as Judge

Hernandez acknowledged that, with arbitration, at times there is simply nothing to be done about

the dangers of parallel proceedings or inconsistent rulings.[15]

    With regard to the probability of success on the merits on the underlying construction

dispute, I have barely been briefed and it has been hazily outlined at best, but both parties

indicate that if it went forward in the Oregon District Court it would be hotly contested and

involve significant complexity, many witnesses, and extensive discovery. That is not enough to

---

[13] I acknowledge that built into this analysis is the supposition, advanced by PGE, that any suit commenced by PGE would be assigned to the same district judge as a related matter.
[14] Abengoa's requested relief in the arbitration is pitched directly at the dispute between the Debtors and PGE. Abengoa's requested relief includes:
      i.      A declaration that the Debtors' are not in default of the EPC Contract;
      ii.     Rejection of all of PGE's claims of default by Abengoa and/or the Debtors;
      iii.    Payment of damages of more than $64,000,000;
      iv.    Granting the Debtors recovery of all attorneys' fees and costs associated with the arbitration.
*See* Abengoa's Answer and Claim, Bledsoe Decl. Ex. 2, at 8, D.I. 286-4, at 9.
[15] *See PGE v. Liberty Mut. Ins. Co.*, 2016 WL 4059658, at *7 (D. Or. July 27, 2016) (citing to *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983), for the proposition that "the relevant federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement.").

state an opinion on the probability of success on the merits. However, the jurisdictional issues have been sufficiently briefed and I find that PGE has a sufficient likelihood of success on the issue of forum selection under the EPC Contract.  This this factor weighs in PGE's favor. Although I do not believe that I am, as PGE suggests, compelled by the principles of collateral estoppel or comity to apply the Oregon court's interpretation of the Sureties' bond to the interpretation of the EPC Contract, there is merit in the contention that when the EPC issue is before that court it may, under similar reasoning, reach a similar conclusion.[16]

## CONCLUSION

For the reasons set forth above, PGE's Motion for Relief from the Stay will be granted. An appropriate order will follow.

BY THE COURT:

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY COURT

Dated: October 6, 2016

---

[16] In light of U.S. constitutional jurisprudence, allowing commencement of litigation in an Article III court, which has the authority to enter a final order on what would be a non-core matter in this Court, and which likely has jurisdiction over all of the parties involved in this dispute, strikes me as the most appropriate outcome.