# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ABEINSA HOLDING INC., *et al.*,<br><br>Reorganized and Liquidating Debtors.[1] | Chapter 11<br><br>Case No. 16-10790 (KJC)<br><br>(Jointly Administered)<br><br>**Obj. Deadline: September 13, 2017 at 4:00 p.m. (ET)**<br>**Hearing Date: September 20, 2017 at 1:30 p.m. (ET)** |

### REORGANIZED DEBTORS' OBJECTIONS TO (I) CLAIM OF SYNFLEX INSULATIONS, LLC (CLAIM NUMBER 302), AND/OR (II) CLAIM OF ORBITAL INSULATION CORP. (CLAIM NUMBER 301)

The Responsible Person, on behalf of the EPC Reorganized Debtors[2] and the Solar Reorganized Debtor (together, the "Reorganized Debtors"), by and through his undersigned counsel, DLA Piper LLP (US), hereby objects (the "Objection") to (i) proof of claim (proof of claim no. 302) in the amount of $11,192,133.12 (the "Synflex Claim")[3] filed by Synflex Insulations, LLC ("Synflex"), and (ii) proof of claim (proof of claim no. 301) in the amount of $1,142,008.47 (the "Orbital Claim," and together with the Synflex Claim, when appropriate, the "Claims") filed by Orbital Insulation Corp. ("Orbital," and together with Synflex, the "Claimants"), against Abeinsa Holding Inc. ("Abeinsa Holding"), one of the EPC Reorganized

---

[1] The Reorganized Debtors in these chapter 11 cases, together with the last four digits of each Reorganized Debtor's federal tax identification number, are as follows: Abeinsa Holding Inc. (9489); and Abengoa Solar, LLC (6696). The Liquidating Debtors in these chapter 11 cases, together with the last four digits of each Liquidating Debtor's federal tax identification number, are as follows: Inabensa USA, LLC (2747); and Abengoa Bioenergy Holdco, Inc. (8864).

[2] Capitalized terms not defined in this Objection shall have the meanings given to them in the *Debtors' Modified First Amended Plans of Reorganization and Liquidation* [Docket No. 944] (the "Plan"). The Plan defines the EPC Reorganized Debtors as the EPC Reorganizing Debtors and the Solar Reorganized Debtor as the Solar Reorganizing Debtor. These entities are the same.

[3] The Reorganized Debtors believe that the amounts Synflex has asserted in the Synflex Claim may be duplicative of amounts claimed by other parties, including Orbital. The Reorganized Debtors and the Litigation Trustee reserve all rights to object and otherwise dispute any duplicative amounts and claims.

Debtors. The Synflex Claim is a claim for insulation materials, supplies, and services, that, under section 502(b)(1) of title 11 of the United States Code (the "Bankruptcy Code"), should be disallowed in its entirety because the Claim is unenforceable against the EPC Reorganized Debtors and their property under applicable law, namely, California law that required Synflex to be a licensed California contractor, and, if it was not, it could not be paid for contractor work. The Orbital Claim relates to the alleged provision of labor, services, equipment, and materials *to Synflex* (Orbital is an affiliate of Synflex), not to Abeinsa Holding. Therefore, Abeinsa Holding has no liability for the Orbital Claim. Even if Orbital held a direct claim against Abeinsa Holding, the Orbital Claim is unenforceable against the EPC Reorganized Debtors for the same reasons the Synflex Claim is unenforceable – Orbital was not a licensed California contractor. In addition, in light Orbital having filed a mechanics' lien against it, the Solar Reorganized Debtor ("Solar") objects to allowance of the Orbital Claim for the same reasons asserted by the EPC Reorganized Debtors, to the extent that Orbital is asserting a claim against Solar. In support of this Objection, the Reorganized Debtors rely upon the *Declaration of Bruce Van Malekenhorst in Support of Reorganized Debtors' Objections to Claims of Synflex Insulations, LLC and Orbital Insulation Group* (the "Declaration"), which is attached to this Objection as **Exhibit A**. In further support of this Objection, the Reorganized Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over the Reorganized Debtors, their estates, all of their assets, and this matter under 28 U.S.C. §§ 157 and 1334, the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012, and Article X of the Plan. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409. The Reorganized Debtors consent to

the entry of final orders on this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2. The statutory predicates for the relief requested herein are sections 502(b)(1) of the Bankruptcy Code, rules 3003, 3007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and California Professional Business Law section 7031(a) (the "California Contractor License Law").

<b><u>FACTS RELEVANT TO THIS OBJECTION</u></b>

A. **General Background**

3. On March 29, April 6, April 7, and June 12, 2016 (collectively, the "Petition Date"), the Debtors commenced these chapter 11 cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. Information regarding the Debtors' businesses, capital structure, and the circumstances leading to the commencement of these cases is set forth in *Debtors' Disclosure Statement Pursuant to* Section *1125 of the Bankruptcy Code* [Docket No. 587] relating to the Plan.

5. On July 28, 2016, the Court entered the *Order Establishing Deadlines and Procedures for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [Docket No. 443] (the "Bar Date Order"). Under the Bar Date Order, all persons or entities who wished to assert claims against the pre-Effective Date Debtors' estates were required to file a proof of claim against one or more of the Debtors by no later than September 26, 2016 at 5:00 p.m. (prevailing Eastern Time) (the "General Bar Date"). The General Bar Date applied to any person, other than governmental units, holding a claim against the Debtors owing as of the

Petition Date or any person with an alleged claim or expense to have allegedly arisen prior to the Petition Date.  Any governmental unit seeking to file a claim against one or more of the Debtors was required to do so by no later than November 7, 2016 at 5:00 p.m. (prevailing Eastern Time).

6.      To date, over 1,000 proofs of claim have been filed in these chapter 11 cases.

**B.    The Synflex Claim**

7.      By this Objection, the EPC Reorganized Debtors seek to disallow the Synflex Claim, which is unenforceable against them and their property under applicable law, through disallowance under section 502(b)(1) of the Bankruptcy Code.  The relevant, applicable law is section 7031(a) of the California Contractor License Law, which provides that an unlicensed contractor may not "bring or maintain" any action for compensation for performing any act or contract for which a license is required unless the contractor was duly licensed "at *all* times" during performance.  Cal. Bus. & Prof. Code § 7031(a) (emphasis supplied).

8.      Synflex filed the Claim against the Abeinsa Holding on September 13, 2016, in the amount of $11,192,133.12, in connection with insulation materials, supplies, and services it claims to have provided under three (3) contracts [4] (the "Agreements"), attached to the Declaration as *Exhibit 1*.[5]  The Synflex Claim does not include the Agreements or any facts to

---

[4]    The Insulation for the Powerblock & Utilities for Alpha & Beta Plan, Mojave Solar Power Plant Project, San Bernardino County, California - Contract No. 00305 / 4500507872; the Insulation for the Steam Generator for the Mojave Solar Power Plant Project, San Bernardino County, California - Contract No. 00205p / 4500471474; the Insulation for the HTF Piping for the Alpha Plant Contract, Mojave Solar Power Plant Project, San Bernardino County, California – Contract No. 00225 / 4500477686.

The Agreements were entered into between Synflex and Abener Teyma Mojave General Partnership, one of the EPC Reorganizing Debtors.  As noted above, the Claimants filed their Claims against Abeinsa Holding.  As the cases of Abeinsa Holding and Abener Teyma Mojave General Partnership were substantively consolidated under the Plan (*see* Plan, Article IV, HH; Confirmation Order, JJ), the fact that the Claims were filed against the wrong EPC Reorganized Debtors is of no moment in the context of this Objection.

[5]    In addition to Synflex being required by applicable law to be licensed in California before it commenced work on the project, the Agreements provide that Synflex (and any subcontractors, such as Orbital) be fully licensed and Synflex represented and warranted that it had obtained all necessary licenses and permits.  *See* Declaration, Exhibit 1, p. 5, §§ 3.6, 3.1, 3.11, 18.1, and 24.

establish the basis of the Synflex Claim other than setting out a list of 63 open invoices that total the amount sought in the Synflex Claim. Copies of the Claims are attached hereto as **Exhibit B**.

9.  Prior to entering into the Agreements, Synflex represented to Abeinsa Holding that Orbital, an affiliate of the Claimant and an alleged California entity, was a qualified licensed contractor in the state of California, as required by California law. *See* Declaration, ¶ 3; *see also id.*, Exhibit A, p. 103 (where Synflex listed is false California contractor's license number).

10. Therefore, Abeinsa Holding believed that Synflex, through its affiliate, was licensed and entitled to provide services and materials under the Agreements in accordance with applicable California law. *See* Declaration, ¶ 4.

11. In October 2014, Abeinsa Holding discovered that Synflex had not provided true and accurate credentials, because Orbital, a *Texas* entity, did *not* have an appropriate license to perform the contracted for services in the state of California. *See* Declaration, ¶ 5.

12. On October 28, 2014, Abeinsa Holding sent a letter to counsel for Synflex, indicating that Synflex had not provided a true and accurate California Contractor's License number, and requested that Synflex provide the correct license number (the "October Letter"). A copy of the October Letter is attached to the Declaration as *Exhibit 2*.

13. After several failed attempts to contact Synflex, Abeinsa Holding sent a follow-up letter to counsel for Synflex on November 4, 2014, similarly requesting a correct license number (the "November Letter"). The November Letter is attached to the Declaration as *Exhibit 3*.

14. To date, Abeinsa Holding has not received a response from Synflex. *See* Declaration, ¶ 8.

15. In December of 2014, Abeinsa Holding ended its relationship with Synflex due Synflex's failure to provide a valid license number, performance issues, and because Synflex had

been failing to pay its subcontractors, all as required under the Agreements. *See* Declaration, ¶ 9, Exhibit 2, and Exhibit 3.

16. Abeinsa Holding searched through the online California Contractors State License Board database for valid license numbers for both Synflex and its affiliate Texas entity, Orbital. *See* Declaration, ¶ 10. This search yielded results showing that neither Synflex nor Orbital was licensed as a contractor in California during the relevant period. *See* Declaration, ¶ 10.

17. Accordingly, the Synflex Claim should be disallowed in its entirety because it is unenforceable against the EPC Reorganized Debtors under applicable law and under the terms of the Agreements. In addition, to the extent that it is found Orbital holds a direct claim against Abeinsa Holding (which it does not), the Orbital Claim should be denied for the same reasons and the EPC Reorganized Debtors incorporate all arguments relating to the Synflex Claim to the Orbital Claim out of an abundance of caution.

**C.    The Orbital Claim**

18. On September 13, 2016, Orbital filed the Orbital Claim against Abeinsa Holding for provision of labor, services, equipment, and materials to its affiliate, Synflex. There is no direct contractual relationship between any of the EPC Reorganized Debtors and Orbital, and none appears to be claimed. Nor is there a direct contractual relationship between Orbital and Solar, which did not deter Orbital from filing a mechanics' lien against Mojave Solar (a non-Debtor) and Solar.

19. Further, even if there were a direct relationship between Orbital and the EPC Reorganized Debtors, Orbital's claim would be unenforceable against the EPC Reorganized Debtors, because, like its affiliate Synflex, Orbital was not a licensed contractor in California at any time while it was providing goods or services to Abeinsa Holding. Further, like the Synflex

Claim, the Orbital Claim does not include any facts to establish the basis of the Orbital Claim – there is no agreement attached (because one does not exist). Orbital did attach a mechanics' lien filed against a non-Debtor and a non-EPC Reorganized Debtor, and invoices to Synflex that serve as the purported basis of Orbital's Claim. But this material does not support a claim against any of the EPC Reorganized Debtors (or the Solar Reorganized Debtor). Further, under the Agreements, Synflex was responsible for all payments to subcontractors, not the EPC Reorganizing Debtors. *See* Declaration, Exhibit 1, §§ 3.11 and 22.2.

20. In addition, although Orbital has not filed a direct claim against Solar and there is no agreement between Orbital and Solar, the existence of the mechanics' lien,[6] was the basis for one of the EPC Reorganized Debtors for listing Orbital in its Schedules, Orbital should be barred from asserting any claims against Solar in connection with the Claims for the same reasons set forth above with respect to the EPC Reorganized Debtors.

**RELIEF REQUESTED**

21. By this Objection, the EPC Reorganized Debtors object to the Claims under to section 502(b)(1) of the Bankruptcy Code and section 7031(a) of the California Contractor License Law for the reasons described. The Reorganized Debtors also object to the Orbital Claim on the basis that they have no liability with respect to that claim, as there is no direct contractual relationship between the parties. Accordingly, the Reorganized Debtors request that

---

[6] EPC Reorganized Debtor Abener Teyma Mojave General Partnership ("ATMGP") listed Orbital in its *Schedules of Assets and Liabilities* (the "Schedules") twice – first, as having a potential, contingent, unliquidated, and disputed lien claim, and second, in connection with RLI Insurance Company having issued a bond to Orbital, which, as noted above, was believed to hold a California contractors' license at the time. *See* Docket No. 246. On September 29, 2015, Orbital filed a mechanics' lien against Mojave Solar, LLC/Abengoa Solar, LLC in the County of San Bernadino under California Civil Code § 8416 (the mechanics' lien is attached to the Orbital Claim as an exhibit). At the time ATMGP listed Orbital in its Schedules, it was under the mistaken impression that Synflex had provided valid credentials required under California law through Orbital.

the Court enter an order, substantially in the form attached hereto as **Exhibit D**, disallowing the Claims in their entirety.

## BASIS FOR RELIEF

22. Section 502(b)(1) of the Bankruptcy Code provides, in pertinent part, that:

> [T]he court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that . . . such claim is unenforceable against the debtor and property of the debtor . . . under applicable law . . .

11 U.S.C. § 502(b)(1).

23. The Claims are unenforceable under the applicable California state law, which states, in relevant part, that:

> no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract where a license is required by this chapter without alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract regardless of the merits of the cause of action brought by the person . . .

Cal. Bus. & Prof. Code § 7031(a).[7]

24. California public policy is clear that unlicensed contractors may not be paid for work that should be performed by a licensed contractor. *See Montgomery Sansome LP v. Rezai*, 204 Cal.App.4th 786 (2012) (state law prohibiting unlicensed contractors from recovering compensation for performance of work requiring a license represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business outweighs any harshness between the parties, and that such deterrence can best be realized by

---

[7] A copy of this chapter of the California and Business Professional Code (the "California Statute") is attached as **Exhibit C**.

denying violators the right to maintain any action for compensation.); *see also Franklin v. Nat. Goldstone Agency*, 33 Cal.2d 628, 632 (1949) ("the licensing requirements of this Code in regulation of the contracting business were enacted for safety and protection of the public against imposition, and such public policy may not be circumvented.").

25. At no relevant date was Synflex, or its affiliated entity, Orbital, a licensed contractor in California. To make matters worse, Synflex provided a fraudulent California Contractor's License number in order to lure Abeinsa Holding into entering into and executing the Agreements.

26. Abeinsa Holding attempted to contact Synflex on multiple occasions to address the issue of Synflex's licensure and rectify the situation; these efforts were availing.

27. By this Objection, the EPC Reorganized Debtors move for disallowance of the Claims under section 502(b)(1) of the Bankruptcy Code because under the California Contractor License Law, an unlicensed contractor may not "bring or maintain" any action for compensation for performing any act or contract for which a license is required unless the contract was duly licensed "at *all* times" during performance. Cal. Bus. & Prof. Code § 7031(a) (emphasis provided). California courts have interpreted the California Statute to require strict compliance. *See, e.g., Ahdout v. Hekmatjah*, 213 Cal. App. 4th 21, 30 (Cal. Ct. App. 2013) (internal citations omitted) (noting that "[t]o protect the public, [section 7031] imposes strict and harsh penalties for a contractor's failure to maintain proper licensure.").

28. For example, in *Judicial Counsel of California v. Jacobs Facilities, Inc.*, the Judicial Counsel of California ("JCC") and Jacobs Facilities, Inc. ("Facilities") entered into a contract, which conditioned performance under the contract by Facilities having a license. 239 Cal. App. 4th 882, 889 (Cal. Ct. App. 2015). During the term of the contract, Facilities

internally restructured and transferred responsibility for the project with JCC to a wholly-owned subsidiary. *Id.* Facilities caused the subsidiary to obtain a license under California law, as required under section 7031, but allowed its own license to lapse. *Id.* A year later, JCC and Facilities entered an agreement to assign the contract to Facilities' subsidiary. *Id.* JCC initiated litigation against Facilities and its subsidiary under section 7031, seeking disgorgement of all monies paid under the contract, which totaled approximately $18 million. *Id.* Before the lower court, the jury found that Facilities was compliant with the California Statute during the entirety of the project, because Facilities internally assigned the contract and JCC was not "adversely affected." *Id.* at 893. The jury also awarded the subsidiary outstanding fees and declined JCC's request to have Facilities disgorge the over $18 million in fees it received in connection with the project. *Id.*

29. JCC moved for a judgment notwithstanding the verdict, which the lower court denied. JCC then appealed to the appellate court (the "*JCC* Court").

30. In evaluating the California Statute, the *JCC* Court noted that the unambiguous legislative intent behind the California Statute, as amended, was to require strict compliance with the California Statute, with a very limited exception set forth in subjection (e), which does not apply to the Claims at issue here. *Id.* at 896. Further, *JCC* Court noted that "[if] a contractor is unlicensed for any period of time while delivering construction services, the contractor forfeits *all* compensation for the work, not merely compensation for the period when the contractor was unlicensed. *Id.* at 896 (emphasis in original) (internal citations omitted). In addition, the *JCC* Court noted that "[a]lthough construction contractors often make substantial payments to others for materials and labor, an unlicensed contractor forfeits all money paid, without offsets for such payments to third parties." *Id.* Finally, the *JCC* Court noted that the equities of the case or

situation do not impact or change the strict application of the California Statute, because, "[r]egardless of the equities, unlicensed contractors are prohibited from asserting equitable defenses, such as estoppel, to forfeiture." *Id.* at 897 (internal quotations omitted).

31.  After evaluating all of the facts, the underlying record, and the California Statute, the *JCC* Court reversed the jury's verdict as not conforming to the legislative intent and purpose of the California Statute, which required strict compliance by contractors with the California Statute (and a corresponding strict interpretation and application by courts interpreting the California Statute). *Id.* at 911.

32.  Regarding Synflex and Orbital, at *no time* was either entity a licensed California contractor. As noted above, the California Statute requires strict compliance, and the Claimants' failure to adhere to the California Statute requires the complete disallowance of their Claims. Further, contrary to the *JCC* case, there was no "gap period" here that would justify a substantial compliance hearing under the California Statute. In addition, unlike the contractors in *JCC*, Synflex was in breach of multiple provisions of the Agreement during the course of its work on the project.

33.  In addition, in the context of bankruptcy, courts have disallowed claims for failure to comply strictly with similar contractor statutes. *See also Bear Air Mech., Inc. v. Canepa (In re French Quarter, Inc.)*, 2011 WL 4485880 (BAP 9th Cir. Aug. 10, 2011) (evaluating a similar statue in effect in Nevada, the court held that because the contractor seeking to enforce a claim against the debtor's estate did not have a license at any time during applicable periods, did not attempt to obtain a license undergoing the work for which it was contracted, and did not apply for a license after the work was complete, the contractor did not comply with the Nevada statute and therefore was not entitled to payment on its claim and disallowed the claim in its entirety.).

34. The Orbital Claim should be disallowed and expunged in its entirety for the reasons set forth above, but also because, under the Agreements, the ECP Reorganizing Debtors have no contractual relationship with, or responsibility to compensate, any subcontractors, including Orbital. In this regard, and ignoring all of the other flaws in its claim, Orbital's sole source of recovery is against Synflex.

## CONCLUSION

35. The Claims meet the requirement for mandatory disallowance under section 502(b)(1) of the Bankruptcy Code. Indeed, the policies underlying the enactment of section 502(b)(1), California Professional Business Law section 1730(a), in combination with the pertinent facts of these chapter 11 cases, unequivocally weigh in favor of the disallowance of the Claims. In light of the foregoing, the Reorganized Debtors respectfully request that this Court enter an order, substantially in the form attached hereto as **Exhibit D**, disallowing the Claims in their entirety under section 502(b)(1) of Bankruptcy Code.

## RESERVATION OF RIGHTS

36. By filing this Objection, the Reorganized Debtors do not waive, and hereby expressly preserve, their rights to supplement or amend this Objection, or to file further objections, to assert other grounds for objecting to the Claims, including the grounds that the Claims were filed against a debtor entity that is not liable to Synflex or Orbital. Further, to the extent the Court does not disallow the Claims in their entirety through this Objection, the Reorganized Debtors reserve all rights to object to and address the merits of the Claims.

## NOTICE

37. The Reorganized Debtors shall provide notice of this Objection, along with a notice of hearing, to (i) counsel to the Claimants at the addresses set forth on the Claimants'

-13-

proofs of claim, (ii) the Office of the United States Trustee for the District of Delaware, (iii) counsel to Drivetrain, LLC as Litigation Trustee, Hogan Lovells US LLP, 875 Third Avenue, New York, NY 10022, Attn.: David Dunn, Esq., and (iv) those parties requesting notice in these cases under Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Reorganized Debtors submit that no other or further notice need be given.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Reorganized Debtors respectfully request that the Court (a) enter an order, in substantially the form as attached to this Objection as **Exhibit D**, disallowing the Claims, and (b) grant such other and further relief as is just and proper.

Dated:  August 17, 2017
        Wilmington, Delaware     Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ R. Craig Martin*
R. Craig Martin (DE 5032)
Maris J. Kandestin (DE 5294)
1201 North Market Street, Suite 2100
Wilmington, Delaware  19801
Telephone:  (302) 468-5700
Facsimile:   (302) 394-2341
Email:  craig.martin@dlapiper.com
        maris.kandestin@dlapiper.com

-and-

Richard A. Chesley (admitted *pro hac vice*)
444 W. Lake Street, Suite 900
Chicago, Illinois 60606-0089
Telephone: (312) 368-4000
Facsimile: (312) 236-7516
Email:   richard.chesley@dlapiper.com

*Counsel to Reorganized Debtors*