## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | CHAPTER 11 |
| | : | |
| **ABEINSA HOLDING, INC,** *et al.,*[1] | : | Case No. 16-10790 (KJC) |
| | : | (D.I. 1791) |
| | : | |
| Reorganized and Liquidating Debtors. | : | |

## MEMORANDUM[2]

Before the Court is the Motion of the Litigation Trustee for Entry of an Order Enforcing the Plan Injunctions to Compel Rioglass Solar, Inc. to Release its Claim for Security for Costs and Enjoin it from Collecting Any Costs Incurred in the Arbitration (D.I. 1791) (the "Plan Injunction Motion"). Rioglass Solar, Inc. ("Rioglass") filed a response opposing the Plan Injunction Motion (D.I. 1800) (the "Response"). The Litigation Trustee filed a reply. The Court held a hearing on the Plan Injunction Motion on April 27, 2018, and a telephonic status conference on February 12, 2019.

## BACKGROUND

On February 27, 2012, Rioglass and Abener Teyma Mojave General Partnership ("ATMGP") entered into a contract for Rioglass to provide ATMGP with solar reflectors for the construction of a thermal-solar power plant in San Bernardino County, California (the "Supply

---

[1] The "Reorganized Debtors" in these chapter 11 cases are (i) Abeinsa Holding Inc. and (ii) Abengoa Solar, LLC; and the "Liquidating Debtors" in these chapter 11 cases are (i) Inabensa USA, LLC and (ii) Abengoa Bioenergy Holdco, Inc.

[2] This Memorandum constitutes the findings of fact and conclusions of law, as required by Fed. R. Bankr. P. 7052. This Court has jurisdiction to decide the Motion pursuant to 28 U.S.C. §§ 157 and 1334.

Contract"). The Supply Contract provided that "[a]ny Dispute[3] shall be settled by an amicable effort on the part of the parties affected."[4] The Supply Contract further provided that "[i]f an attempt of amicable settlement has failed, the Dispute shall be finally settled by [arbitration]."[5]

On March 29, 2016, the Debtors, including ATMGP, filed chapter 11 bankruptcy petitions in this Court.[6] On December 15, 2016, I entered an Order Confirming the Debtors' Modified First Amended Plans of Reorganization and Liquidation (the "Plan").[7] The Plan became effective on March 31, 2017 and, on that date, the Reorganizing Debtors, including ATMGP, entered into an agreement (the "Litigation Trust Agreement") with Drivetrain, LLC (the "Litigation Trustee") that assigned certain claims of those Debtors to the Litigation Trust.

On July 11, 2016 (which was post-petition, but pre-confirmation), ATMGP filed arbitration proceedings (the "Arbitration") against Rioglass before the International Chamber of Commerce ("ICC") asserting breach of contract claims under the Supply Contract and claiming liquidated

---

[3] The term "Dispute" is defined in the Supply Contract as "any dispute, difference, controversy and/or claim of any kind whatsoever arising between the Parties in connection with or arising out of the Contract including without limitation any question regarding its existence, validity, interpretation, scope, termination or the supply of the Goods or the execution of (or any failure in the execution of) the Work, whether during the progress of the manufacture or fabrication of the Goods or the performance of the Work or after their completion and whether before or after the abandonment or breach of the Contract or the termination of the Contractor's engagement hereunder." Decl. of Samuel Zimmerman in Support of the Plan Injunction Motion (D.I. 1792) ("Zimmerman Decl."), Ex. D, § 1.1.

[4] *Id.* at § 30.3.

[5] The provision states that unresolved Disputes "shall be finally settled by the International Chamber of Commerce of Paris, under and by its Rules of Arbitration (hereinafter referred to as "Rules") by three arbitrators appointed in accordance with the Rules." *Id.* at § 30.4.

[6] On March 29, 2016, Abeinsa Holding Inc. and the following affiliated entities filed chapter 11 petitions in this Court: Abeinsa EPC LLC; Abencor USA, LLC; Abener Construction Services, LLC; Abener North America Construction, LP; Abengoa Solar, LLC; Inabensa USA, LLC; Nicsa Industrial Supplies, LLC; Teyma Construction USA, LLC; Abeinsa Abener Teyma General Partnership; Abener Teyma Mojave General Partnership; Abener Teyma Inabensa Mount Signal Joint Venture; Teyma USA & Abener Engineering and Construction Services General Partnership; Abengoa US, LLC; Abengoa US Operations, LLC; Abengoa Bioenergy Biomass of Kansas, LLC; Abengoa Bioenergy Hybrid of Kansas, LLC; Abengoa Bioenergy Technology Holding, LLC; Abengoa Bioenergy New Technologies, LLC (the "Debtors").

[7] See D.I. 1042 (the "Confirmation Order"). The Plan was attached as Exhibit A to the Confirmation Order.

damages of $2.7 million arising from Rioglass's alleged late deliveries.  After confirmation of the Plan, Rioglass and the Litigation Trustee disputed the manner in which the Litigation Trustee would pursue the assigned claims in the Arbitration.  At a hearing on competing motions before this Court, the parties reported that they had agreed to resolve outstanding issues, subject to documentation.  The parties attempted, but failed, to draft a stipulation.  After reviewing competing proposed orders, I entered an Order on July 13, 2017 (D.I. 1409) (the "July Settlement Order").  Rioglass moved for reconsideration of the July Settlement Order.  After a hearing and more briefing, I issued an Opinion dated February 26, 2018 (D.I. 1742), deciding (among other things): (i) to remove language from the July Settlement Order that excluded Rioglass from applying to the Tribunal for recovery of costs associated with a discontinued Adversary Proceeding; and (ii) clarifying that the Litigation Trust was substituted for ATMGP as the claimant in the Arbitration.

In November 2017, Rioglass filed an application with the Arbitration Tribunal seeking security for costs.[8]  The Trust opposed Rioglass's application, and the parties presented their respective arguments to the Tribunal by teleconference on January 26, 2018.[9]  On March 6, 2018, the Tribunal issued its decision and "determined that it would exercise its discretion under Article 28(1) of the ICC Rules by ordering Claimant to make provision for a separate security for costs of the Respondent."[10]  The Tribunal ordered the Trust to provide security for costs in the amount of $250,000.00, rather than the amount of $1,646,969.88, as requested by Rioglass.[11]

---

[8] Zimmerman Decl. ¶5.
[9] Zimmerman Decl. ¶5.
[10] Zimmerman Decl., Ex. B, ¶ 85.
[11] *Id.*, ¶¶ 7, 86.

The Trust and Rioglass could not reach an agreement as to the form of the security, and each sought clarification from the Tribunal.[12]  On March 27, 2018, the Tribunal directed the Trust to "post a bond in the amount of US$250,000 from a financially stable banking institution, on terms that it shall be subject to payment upon the written direction of the Tribunal in an amount up to US$250,000 pursuant to an award issued in this case." (the "Security Order").[13]  The Tribunal further wrote that "[t]he parties should confer on the form of the bond, but if further terms or conditions need to be addressed in order to implement this direction, either party may seek our assistance."[14]  The Tribunal also noted that "any costs of this application and these directions are reserved for determination at the conclusion of this case according to the discretion granted to the Tribunal under the ICC Rules."[15]  The Trust did not post a bond.

On March 13, 2018, Rioglass filed a petition in the United States District Court for the Northern District of California (the "California District Court") seeking an order confirming the Decision on security for costs.[16]  On April 2, 2018, the Trust filed the Plan Injunction Motion asking this Court to interpret and enforce the injunctions in the Plan[17] and Confirmation Order and to compel Rioglass to release its claim for security for costs against the Trust. On or about April 12, 2018, the Tribunal stayed enforcement of the Decision requiring the Trust to post security.  On July 12, 2018, the California District Court entered an order dismissing the Rioglass Petition to Confirm "without prejudice to refiling one if necessary and appropriate after" this Court decides the Plan Injunction Motion.[18]

---

[12] Zimmerman Decl., ¶ 6.
[13] Zimmerman Decl., Ex. C.
[14] *Id.*
[15] *Id.*
[16] *Rioglass Solar, Inc. v. Abeinsa Litigation Trust Represented by Drivetrain LLC As Litigation Trustee*, No. 18-1591 (N.D. Cal. Mar. 13, 2018), ECF No. 1 (the "Petition to Confirm").
[17] Article IX of the Plan contains the Plan's injunctions (the "Plan Injunctions").
[18] D.I. 1853.

By letter dated November 9, 2018, counsel for Rioglass advised this Court that the Tribunal entered an Order lifting the stay on enforcement of its prior Decision regarding security for costs.[19] At the status conference on February 12, 2019, the parties informed the Court that the Tribunal has not yet issued its decision on the merits of the Arbitration. The Trust has not posted the security for costs.

## DISCUSSION

1.    This Court has jurisdiction to enforce the Plan Injunctions

Because jurisdiction is a threshold issue, I must first address Rioglass's assertion that this Court lacks jurisdiction to decide the Plan Injunction Motion. Rioglass argues that the Bankruptcy Court does not have *exclusive* jurisdiction to enforce its confirmation orders,[20] and further contends that only a federal district court located where an arbitration is seated can entertain a party's motion to review arbitration tribunal decisions or enjoin the arbitration.[21]

The Plan Injunction Motion falls within a bankruptcy court's post-confirmation "related to" jurisdiction. The Plan established the Litigation Trust to prosecute causes of action and

---

[19] D.I. 1923.

[20] Rioglass points out that I previously determined that a bankruptcy court does not have *exclusive* jurisdiction to enforce its confirmation orders. *In re Fansteel, Inc.*, No. 02-10109, 2017 WL 3822724, *5 (Bankr. D. Del. Aug. 28, 2017). *Fansteel* is distinguishable, however, because it involved a request to reopen a 2002 bankruptcy case. The *Fansteel* parties wanted this Court to decide the effect of a 2003 plan and confirmation order on environmental issues arising in a new chapter 11 case filed in 2017 before the Bankruptcy Court in the Southern District of Iowa. Rather than open a long-closed case previously administered by a now-retired district court judge, I decided that the Iowa bankruptcy court also had jurisdiction to decide issues regarding the interpretation and effect of the 2003 plan and confirmation order on the current case.

[21] The Plan Injunction Motion does not seek to enjoin the arbitration proceeding. Instead, it seeks to enjoin Rioglass from enforcing the order to post a bond for security. Bankruptcy proceedings often prevent creditors from enforcing other courts' judgments against a debtor's property.

distribute the Litigation Trust Proceeds to Holders of certain Allowed Claims.[22] The Third Circuit

has determined:

> Whether a matter has a close nexus to a bankruptcy plan or proceeding is
> particularly relevant to situations involving continuing trusts, like litigation trusts,
> where the plan has been confirmed, but former creditors are relegated to the trust
> res for payment on account of their claims. To a certain extent, litigation trusts by
> their nature maintain a connection to the bankruptcy even after the plan has been
> confirmed. The question is how close a connection warrants post-confirmation
> bankruptcy jurisdiction. Matters that affect the interpretation, implementation,
> consummation, execution, or administration of the confirmed plan will typically
> have the requisite close nexus.[23]

The relief requested in the Plan Injunction Motion unquestionably affects the interpretation,

implementation, consummation, execution or administration of the confirm plan. Moreover, the

Plan Injunction Motion is a core matter pursuant to 28 U.S.C. §157(b)(2)(A), (M), and (O).

The United States Supreme Court also has recognized that a bankruptcy court "plainly

[has] jurisdiction to interpret and enforce its own prior orders."[24] Further, 28 U.S.C. § 1334(e)

provides that the court[25] "in which a case under title 11 is commenced or is pending shall have

*exclusive* jurisdiction of all property, wherever located, of the debtor as of the commencement of

the case, and of property of the estate."[26] The Plan Injunction Motion seeks to prevent Rioglass

---

[22] Plan, Art. IV.D. The Plan also requires $3 million of the Litigation Trust Proceeds to revert to
the parent under certain conditions after the Litigation Trust obtains a net recovery of more than $28 million.
However, the majority of the Litigation Trust Proceeds are payable to Holders of Allowed Claims against
the EPC Reorganizing Debtors, as described in greater detail and as defined in the Plan.

[23] *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 167 (3d Cir.
2004).

[24] *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151, 129 S. Ct. 2195, 2205, 174 L.Ed.2d 99
(2009). "It is axiomatic that a court possesses the inherent authority to enforce its own orders." *In re
Continental Airlines, Inc.*, 236 B.R. 318, 325-26 (Bankr. D. Del. 1999) (citing *Kokkonen v. Guardian Life
Ins. Co. of America*, 511 U.S. 375, 379-80, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)).

[25] 28 U.S.C. § 1334(e) refers to the district court, which may refer cases to the bankruptcy court
pursuant to 28 U.S.C. § 157(a): "[e]ach district court may provide that any or all cases under title 11 and
any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred
to the bankruptcy judges for the district."

[26] 28 U.S.C. § 1334(3) (emphasis added).

from exercising control over Litigation Trust property that was set aside in the confirmed Plan for

distribution to creditors in accordance with the Plan's distribution scheme.

Moreover, the confirmed Plan provides that this Court will retain such jurisdiction after the

Plan's Effective Date as is legally permissible, including, without limitation, jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest against the Debtors, including . . . the resolution of any and all objections to the allowance or priority of Claims;

      . . . .

4.      ensure that Distributions to Holders of Allowed claims are accomplished under the provisions of the Plan, . . .

5.      decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving a Debtor that may be pending on the Effective Date or instituted by the Responsible Person, the Litigation Trustee, or the Liquidating Trustee after the Effective Date;

6.      enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and this Confirmation Order;

7.      resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan, the Confirmation Order, or any Entity's obligations incurred in connection with the Plan;

      . . . .

10.     enforce the injunction set forth in Article IX.E.3 [of the Plan].[27]

Applicable law and the provisions of the confirmed Plan provide this Court with

jurisdiction to consider whether enforcement of the Tribunal's Security Order against Litigation

Trust assets violates the Plan Injunctions.

---

[27] Plan, Art. X.

2.    <u>Res Judicata is not applicable to the Plan Injunction Motion</u>

Rioglass argues that the Tribunal has already decided the issues raised in the Plan Injunction Motion. Under these circumstances, however, Rioglass's reliance on res judicata is misplaced and is not the lens through which this dispute should be viewed. "The standard analysis for claim preclusion is not easily applied in bankruptcy proceedings," because a bankruptcy case is fundamentally different from the typical civil action. [28] The Court must scrutinize the totality of the circumstances in each action and then determine whether there is identity of causes of action.[29]

> [A] bankruptcy court or district court resolving disputes over allowance, disallowance, or subordination of claims can never be bound by prior judgment of another court, except to the extent that the judgment is an initial determination of the nature of the claim and the amount of resulting damages under nonbankruptcy law. *Any decision regarding the satisfaction or treatment of such liquidated claims under bankruptcy law are within the exclusive in rem jurisdiction of federal courts presiding over the subject bankruptcy case.*[30]

This happens quite often. Another court may determine liability and liquidate the amount of a claim, but the creditor's ability to recover that claim from assets of the estate is a question exclusively within the jurisdiction of the bankruptcy court. The claim's impact on the interests of other creditors or the priority scheme of a plan are paramount concerns for the bankruptcy court. Here, the Arbitration Tribunal is free to decide the amount of any claim of Rioglass for costs, but the bankruptcy court must decide whether Rioglass is entitled to receive any distribution on its claim from the Litigation Trust assets in accordance with the Plan's classification and distribution scheme.

---

[28] *In re Process America, Inc.*, 588 B.R. 82, 95 (Bankr. C.D. Cal. 2018) (quoting *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 155 (2d Cir. 2017)).
[29] *Id.*
[30] *In re Comstock Fin. Serv., Inc.*, 111 B.R. 849, 858 (Bankr. C.D. Cal. 1990) (emphasis added).

3.    Rioglass is enjoined from seeking security or payment from Litigation Trust Assets

The injunctions in the Debtors' Plan and Confirmation Order are not unusual. Article IX.F(4) of the Plan precludes any party on account of any Claim or Equity Interest satisfied or released under the Plan or Confirmation Order, from:

(a)    commencing or continuing in any manner any action or other proceeding of any kind against any Debtor, the Creditors' Committee, the Liquidating Trusts, the Liquidating Trustee, the Litigation Trust, the Litigation Trustee, the Responsible Person, the Parent, their successors and assigns, and their assets or properties;

(b)    enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any Debtor, the Creditors' Committee, the Liquidating Trusts, the Liquidating Trustee, the Litigation Trust, the Litigation Trustee, the Responsible Person, the Parent, their successors and assigns, and their assets and properties;

(c)    creating, perfecting or enforcing any encumbrance of any kind against any Debtor, or the property or estate of any Debtor, the Creditors' Committee, the Liquidating Trusts, the Liquidating Trustee, the Litigation Trust, the Litigation Trustee, the Responsible Person, or the Parent;

. . . . ; or

(e)    taking any action inconsistent with Article IX of the Plan.[31]

Article IX.E(5) of the Plan also enjoins any party "from taking any actions to interfere with the implementation or consummation of the Plan."

Rioglass's efforts to enforce the Tribunal's Security Order are acts to attach the Litigation Trust property. Payment of any potential claim for Rioglass's damages or costs from Litigation Trust assets could elevate that claim over the claims of other Litigation Trust Beneficiaries, which interferes with the Plan's classification and distribution scheme.[32] The Plan Injunctions prohibit Rioglass from taking action to enforce the Security Order.

---

[31] Plan, Art. IX.F(4).
[32] I note that during the telephonic status conference held on February 12, 2019, the Trustee represented that the Trust holds assets in excess of $30 million. The Tribunal set the security amount at $250,000.

The Arbitration Tribunal is free to determine and liquidate any claim by Rioglass for damages or costs. Rioglass, however, may not take any action to collect or enforce its claims against Litigation Trust assets without returning to this Court for authority to do so.

<u>CONCLUSION</u>

For the reasons set forth above, the Plan Injunction Motion will be granted, and Rioglass is enjoined from taking any action to enforce its claim for security for costs against the assets of the Litigation Trust.  Further, if the Arbitration Tribunal awards Rioglass damages or costs, Rioglass must return to this Court to seek a determination of the appropriate distribution Rioglass is entitled to receive from the Litigation Trust assets in accordance with the Plan.

An appropriate Order follows.


BY THE COURT:


_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE


Dated: February 14, 2019