UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Abeinsa Holding Inc., *et al.*,[1]<br><br>Reorganized and Liquidating Debtors. | Chapter 11<br><br>Case No. 16-10790 (KJC)<br>(Jointly Administered)<br>(Re: D.I. 1464, 1609) |

**MEMORANDUM OPINION**[2]

**BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE**

Before the Court are the objections to claims of Synflex Insulations, LLC ("Synflex"), Orbital Insulation Corp. ("Orbital"), and Crown Financial, LLC ("Crown"). The Litigation Trustee, Drivetrain, LLC ("Litigation Trustee") filed the objection to Crown's claim.[3] The Responsible Person, on behalf of the EPC Reorganized Debtors and the Solar Reorganized Debtor (together, the "Debtors"), filed the objection to the Synflex and Orbital claims.[4]

**BACKGROUND**

On March 29, April 6, April 7, and June 12, 2016 (collectively, the "Petition Date"), the Debtors filed voluntary chapter 11 petitions. On July 28, 2016, the Court entered the Order Establishing Deadlines and Procedures for Filing Proofs of Claim and Approving the Form and

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Reorganized Debtor's federal tax identification number, are as follows: Abeinsa Holdings Inc. (9489); and Abengoa Solar, LLC (6696). The Liquidating Debtors in these chapter 11 cases. Together with the last four digits of each Liquidating Debtor's federal tax identification number, are as follows: Inabensa USA, LLC (2747); and Abengoa Bioenergy Holdco, Inc. (8864).

[2] This Opinion constitutes the findings of fact and conclusions of law required by Fed. R. Bankr. P. 7052. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) and (b)(2)(B).

[3] D.I. 1609.

[4] D.I. 1464.

Manner of Notice Thereof (the "Bar Date Order").[5] The deadline for persons or entities filing a proof of claim was set for September 26, 2016. The deadline for any governmental unit to file a proof of claim was set for November 7, 2016. Over 1,000 proofs of claim were filed.

The Debtors were organized into four groups: (i) the EPC Reorganizing Debtor Group; (ii) the Solar Reorganizing Debtor Group; (iii) the EPC Liquidating Debtor Group; and (iv) the Bioenergy and Maple Liquidating Debtor Group. Accordingly, the Plan was composed of four separate plans – two plans of reorganization and two plans of liquidation – one for each Debtor group. On December 15, 2016, the Court entered the Order Confirming Debtors' Modified First Amended Plans of Reorganization and Liquidation (the "Confirmation Order").[6] The Plan became effective on March 31, 2017 (the "Effective Date"). As of the Effective Date, the Debtors were partially substantively consolidated under the following cases: (i) Abeinsa Holding Inc., for the EPC Reorganized Debtors; (ii) Abengoa Solar, LLC, for the Solar Reorganized Debtor; (iii) Inabensa USA, LLC, for the EPC Liquidating Debtors; and (iv) Abengoa Bioenergy Holdco, Inc. for the Bioenergy and Maple Liquidating Debtors. The Debtors' other chapter 11 cases were closed on May 3, 2017.[7]

## FACTS

Although the claims and objections have individual issues, all three arise out of a common set of facts related to insulation work performed at the Mojave Solar Power Plant Project in San Bernardino County, California (the "Project).

(a) Synflex Claim

---

[5] D.I. 443.
[6] D.I. 1043.
[7] D.I. 1303.

2

Synflex is a Texas limited liability company with a principal place of business in Baytown, Texas. Synflex provides insulation and scaffolding services and is owned by Eduardo Gracian and Daniel Sinecio. Synflex and Abener Teyma Mojave General Partnership ("ATMGP") entered into three contracts dated September 19, 2013, October 7, 2013, and December 10, 2013 (the "Contracts"), under which Synflex would provide insulation services. A valid contractor's license number was not provided.

On October 28, 2014, the Debtors sent a letter to counsel for Synflex, indicating that Synflex had failed to provide a truthful and accurate California Contractor's License number, and requested that Synflex provide the correct license number. No response was received. After several attempts to contact Synflex, the Debtors sent a follow up letter to counsel, but received no response. In December 2014, the Debtors ended the relationship with Synflex, due to a failure to provide the accurate license number, performance issues, and for failing to pay subcontractors. The Debtors searched the online California Contractors State License Board database for valid license numbers for both Synflex, and a related entity, Orbital;[8] and search results yielded that neither was a licensed entity.

On September 13, 2016, Synflex filed an $11 million claim against Abeinsa Holding for insulation materials, supplies, and services provided under the Contracts.[9] The Debtors filed an objection to Synflex's claim on August 17, 2017.[10] The Declaration of Pablo Schenone, in support of the objection, asserts that the total amount awarded under the Contracts was $10.2 million, plus

---

[8] The parties dispute whether Orbital is an affiliate of Synflex. Eduardo Gracian was also an owner of Orbital. However, an affiliate relationship is not required for the court's analysis.
[9] Proof of Claim no. 302.
[10] D.I. 1464.

change orders of $2.1 million, for a total of $12.3 million.[11] The total paid to Synflex for work and materials was approximately $7.7 million.[12]

(b) Orbital Claim

On September 13, 2016, Orbital filed a $1.1 million claim for provision of labor, services, equipment, and materials to Synflex.[13] Orbital is a Texas-based entity with a principal place of business in Port Arthur, Texas,[14] which provides insulation, scaffolding, and limited painting services to industrial clients in the Gulf of Mexico region. There was no direct contractual relationship between any of the Debtors and Orbital, but Orbital acted as a vendor to Synflex. Orbital's proof of claim attaches documentation of a mechanics lien filed against a non-Debtor and a non-EPC Recognized Debtor, and numerous invoices to Synflex. Orbital never alleged that it held a California contractor's license.

(c) Crown Claim

In April 2014, Synflex and Crown entered into an Account Purchase Agreement, wherein Crown would review invoices sent by Synflex and decide whether to approve and purchase an invoice. Synflex submitted five invoices to Crown reflecting an obligation of the Debtors to Synflex for work done on the Project. Crown decided not to purchase or factor any invoices without first obtaining a written agreement from the account debtor. Synflex and the Debtors signed Crown's Agreement (the "No Offset Agreement") which provided that the Debtors would pay the amount of the invoices to Crown's Community Bank, and that the payment obligation was not subject to offset, back charges, or disputes. Between April 2014 and mid-October 2014, Crown

---

[11] Schenone Decl. ¶¶ 15, 16.
[12] Schenone Decl. ¶ 20.
[13] Proof of Claim no. 301.
[14] Bruno Fernandez and Eduardo Gracian were co-owners from 2006 to 2013, and Eduardo Gracian is currently the sole owner. Gracian Dep. 6:9-21, Jan. 4, 2018.

4

submitted, and Debtors signed, an additional eighteen invoices. Crown's claim[15], filed on April 4, 2012, amounts to $2,022,527.00, which is the remainder of the $5.41 million allegedly owed to Crown.

## DISCUSSION

Bankruptcy Code section 502(b) provides that if a claim objection is made "the court, after notice and hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount [subject to certain exceptions, not applicable here.]"[16] The burden of proof as to the validity of the claim shifts between parties.[17] The Third Circuit described the shifting burdens of proof in *Allegheny Int'l* as follows:

> Initially, the claimant must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is "prima facie" valid. In other words, a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward. The burden of going forward then shifts to the objector to produce evidence sufficient to negate the prima facie validity of the filed claim. It is often said that the objector must produce evidence equal in force to the prima facie case....In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence.... The burden of persuasion is always on the claimant.[18]

"Section 502(b)(1) is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in

---

[15] Proof of Claim no. 114.
[16] 11 U.S.C.§ 502(b).
[17] *In re Landsource Communities Development LLC*, 485 B.R. 310 (Bankr. D. Del. 2013) (citations omitted).
[18] *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992) (citations omitted).

bankruptcy."[19] This requires bankruptcy courts to consider state law in determining the validity of a claim.[20]

The underlying statute is Section 7031 of the California Contractors' State License Law, which states, in relevant part, that:

> [n]o person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract where a license is required by this chapter without alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract regardless of the merits of the cause of action brought by the person…[21]

"In California, a contractor who performs unlicensed work is not entitled to recover payment for that work."[22] "The purpose of the licensing law is to protect the public from incompetence and dishonesty in those who provide building and construction services."[23] The licensing requirement ensures that all persons providing such services in California have requisite skill and character, are apprised of local laws and codes, and know the principles of administering a contracting business.[24] "The obvious statutory intent is to discourage persons who have failed to comply with the licensing law from offering or providing their unlicensed services for pay."[25]

"Section 7031 represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business outweighs any harshness between the parties, and that such deterrence can best be realized by denying violators the right to maintain

---

[19] *Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.*, 549 U.S. 443, 444 (2007).
[20] *Id.*
[21] Cal. Bus. & Prof. Code § 7031(a).
[22] *MP Nexlevel of California, Inc. v. CVIN, LLC*, 740 Fed. Appx. 881, 883 (9th Cir. 2018).
[23] *Montgomery Sansome LP v. Rezai*, 204 Cal. App. 4th 786, 794 (2012)
[24] *Id.*
[25] *Id.* (citing *Hydrotech Systems, Ltd. v. Oasis Waterpark*, 52 Cal. 3d 988, 995 (1991)).

any action for compensation in the courts of this state."[26] The California Supreme Court has given a broad, literal approach to section 7031(a) and has held that it applies even when the person for whom the work was performed knew the contractor was unlicensed.[27] An unlicensed contractor may not circumvent the clear provisions and purposes of section 7031 by alleging that when the illegal contract was made, the other party had no intention of performing.[28] "Section 7031 places the risk of such bad faith squarely on the unlicensed contractor's shoulders."[29]

"Section 7031 creates both a defense to any action to enforce a lien or collect a debt brought by an individual who was not a licensed contractor for the duration of the contract as well as an affirmative claim that can be asserted offensively."[30] The statute provides remedies through a defensive *shield* or an affirmative *sword*.[31] "The *shield*, contained in section 7031(a), was enacted more than 70 years ago, and provides that a party has a complete defense to claims for compensation made by a contractor who performed work without a license, unless the contractor meets the requirements of the statutory substantial compliance doctrine."[32] The *sword*, contained in section 7031(b), allows a hiring party to recover amounts paid to an unlicensed contractor.[33] For the purposes of this discussion, only the shield provision of section 7031(a) is relevant.

The statute imposes strict penalties for a contractor's failure to maintain proper licensure. Earlier cases softened the severity of the statute by allowing contractors to show that they had

---

[26] *Id.* (citing *MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.*, 36 Cal. 4th 412, 423 (Cal. 2005)).
[27] *Hydrotech*, 58 Cal. 3d at 997.
[28] *Id.*
[29] *Id.*
[30] *In re Yurdumyan*, 2018 WL 4042817, *2 (Aug. 23, 2018).
[31] *Id.*
[32] *Id.* (citations omitted).
[33] *Id.*

7

substantially complied with licensure requirements.[34] But the doctrine of substantial compliance has limited application under section 7031. The statute states, in relevant part:

> The judicial doctrine of substantial compliance shall not apply under this section where the person who engaged in the business or acted in the capacity of a contractor has never been a duly licensed contractor in this state. However, notwithstanding subdivision (b) of Section 143, the court may determine that there has been substantial compliance with licensure requirements under this section if it is shown at an evidentiary hearing that the person who engaged in the business or acted in the capacity of a contractor (1) had been duly licensed as a contractor in this state prior to the performance of the act or contract, (2) acted reasonably and in good faith to maintain proper licensure, and (3) acted promptly and in good faith to remedy the failure to comply with the licensure requirements upon learning of the failure.[35]

In short, to comply with the statute under modern substantial compliance, the contractor must have been duly licensed at some time prior to the performance of the act or contract.[36]

(a) Synflex Claim

Synflex argues that it held itself out to the Debtors as an entity authorized to provide insulation and scaffolding services in California, but it did so with full disclosure that it was relying on its relationship with a third-party entity, A-1 Mechanical Insulation, LLC ("A-1 Insulation"). Synflex understood that it was authorized to operate under A-1 Insulation's California contractor's license. Synflex asserts that the Debtors confirmed Synflex's contracting status and used Synflex's services with full knowledge and approval of its licensing position. Synflex alleges that the Debtors ousted Synflex from the project and fraudulently claim discovery of Synflex's licensing status to avoid payment.

The Contracts between ATMGP and Synflex explicitly state that Synflex, not A-1 Insulation, would maintain required licenses to provide services.[37] California courts have rejected

---

[34] *MW Erectors*, 36 Cal. 4th at 418.
[35] Cal. Bus. & Prof. Code § 7031(e).
[36] *MW Erectors*, 36 Cal. 4th at 432.
[37] DI. 1464, Ex. 1.

the notion of "borrowing" a license and have determined that the contracting party must maintain a valid license.[38] Synflex was the contracting party and was, therefore, required to maintain the appropriate license.

Synflex argues that the Debtors induced its performance without a license with a false promise to pay. However, the *Hydrotech* court rejected a fraud claim in this situation. The court stated, "In a garden-variety dispute over money owed an unlicensed contractor, the contractor cannot evade section 7031 by alleging that the express or implied promise to pay for the contractor's work was fraudulent. However artful the pleadings, if the primary fraud alleged is a false promise to pay for unlicensed construction work, and the primary relief sought is compensation for the work, section 7031 bars the action."[39] Accordingly, Synflex's contention of fraud on behalf of the Debtors is barred.

Finally, Synflex argues that its efforts to conform to the statute amount to substantial compliance. Synflex argues that it disclosed that it lacked a California license and took appropriate steps to create an affiliate relationship with a California licensed contractor. However, substantial compliance under section 7031 requires that the contractor be duly licensed *"prior to the performance of the act or contract."*[40] Thus, to invoke substantial compliance, a contractor who was unlicensed at any time is required to establish that he or she had been duly licensed at some time before performance began.[41] Synflex does not allege that it held a California license at any time before performance began. Therefore, Synflex is ineligible, under section 7031, to invoke the doctrine of substantial compliance.

---

[38] *Opp v. St. Paul Fire & Marina Ins. Co.*, 154 Cal. App. 4th 71, 75-79 (2007) (holding that borrowing a license number from a closely-related party is insufficient to satisfy section 7031).
[39] *Hydrotech*, 36 Cal. 4th at 1002.
[40] Cal. Bus. & Prof. Code § 7031(e) (emphasis added).
[41] *MW Erectors*, 36 Cal. 4th at 768.

Regardless of any asserted equities, Bus. & Prof. Code, § 7031, bars all actions that effectively seek compensation for illegal unlicensed contract work.[42] The statute is absolute, and its application applies regardless of the knowledge of any customer. Synflex was not a licensed contractor. Regardless of the Debtors' knowledge, Synflex is not entitled to any payment because of its unlicensed status.

(b) Orbital Claim

Orbital states that it lacks a direct relationship or agreement with the Debtors, and instead has a direct contractual relationship with Synflex as its vendor of materials and rental equipment. Orbital argues that even if the claim fails for lack of privity between Orbital and the Debtors, a claim should still exist for Orbital's rental property that remains in the hands of the Debtor. Outside of the existence of a relationship between Orbital and Synflex, Orbital has failed to provide documentation supporting its claim. Orbital sent invoices to Synflex, but no agreements or other documents reference the Debtors or reflect that that the leased material is related to a project of the Debtors. Further, there is no documentation to indicate which equipment and/or inventory is being withheld from Orbital, and no evidence provided of what the market replacement value would be.

Orbital has not provided evidence of a claim against the Debtors, but rather a claim against Synflex. Orbital fails to substantiate a claim against the Debtors, and the claim is disallowed.

(c) Crown Claim

Crown contends that it has a valid claim arising from Synflex's services to the Debtors under the No-Offset Agreement, despite the nullity of Synflex's claims. Crown asserts that it not only agreed to a factoring agreement with Synflex, but it was separately a party to the No-Offset Agreement with ATMGP which gives rise to its claim. Crown submits that the No-Offset

---

[42] *Hydrotech*, 36 Cal. 4th at 997.

Agreement is an independent contract, supported by valid offer, acceptance, meeting of the minds, communication of assent, execution and consideration.[43] Crown asserts that the No-Offset Agreement entitles Crown to recovery, as it successfully performed under that separate agreement.

Crown's claims should be treated as that of an assignee. An assignment of a contract results in the assignee stepping into the shoes of the assignor; receiving no more and no less than the assignor.[44] An assignment does not modify the terms of the underlying contract and is "a separate agreement between the assignor and assignee which merely transfers the assignor's contract rights, leaving them in full force and effect as to the party charged."[45] "An assignment is intended to change only who performs an obligation, not the obligation to be performed."[46]

I have determined that the Synflex claims are invalid. Synflex was not a licensed contractor and, however harsh the result may be, is barred from recovery under Cal. Bus. & Prof. Code §7031. Synflex assigned its rights to payment to Crown under the factoring agreement. This factoring agreement provided that Crown would purchase invoices from Synflex and would obtain the same rights that Synflex had. This is an assignment and should be treated as such. The Synflex claims are unenforceable. It follows, then, that Crown, as an assignee of Synflex, also lacks an enforceable claim. The Court does not need to consider the validity of an alleged independent contract, as the claims underlying the contract are void.[47]

---

[43] Crown asserts that the independent contract arises under Texas law, which requires six components for a valid contract.
[44] *Medtronic AVE, Inc. v. Advanced Cardiovascular Systems, Inc.*, 247 F.3d 44 (3d Cir. 2001).
[45] *Citibank, N.A. v. Tele/Resources, Inc.*, 724 F.2d 266, 269 (2d Cir. 1983).
[46] *Medtronic*, 247 F.3d at 60.
[47] Crown cites *LSQ Funding Group, L.C. v. EDS Field Services*, 879 F. Supp. 2d 1320 (M.D. Fla. 2012), which found adequate consideration for an independent contract concerning a factoring arrangement because parties testified that the assignor would not otherwise have been able to provide service without the assignment. This case is distinguishable from *LSQ* because the invoices are unenforceable under section 7031.

Finally, Crown argues that U.C.C. § 9-403 limits the defenses that may be asserted. Section 9-403(b) states:[48]

> Except as otherwise provided in this section, an agreement between an account debtor and an assignor not to assert against an assignee any claim or defense that the account debtor may have against the assignor is enforceable by an assignee that takes an assignment:
>
> (1) for value;
> (2) in good faith;
> (3) without notice of a claim of a property or possessory right to the property assigned; and
> (4) without notice of a defense or claim in recoupment of the type that may be asserted against a person entitled to enforce a negotiable instrument under Section 3-305(a).[49]

Further, Section 9-403(c) provides:

> Subsection (b) does not apply to defenses of a type that may be asserted against a holder in due course of a negotiable instrument under Section 3-305(b).[50]

Accordingly, Section 9-403(b) & (c) must be read in conjunction with Section 3-305. U.C.C.§ 3-305(b) provides: "The right of a holder in due course to enforce the obligation of a party to pay the instrument is subject to defenses of the obligor stated in subsection (a)(1), but is not subject to defenses of the obligor stated in subsection (a)(2) or claims in recoupment stated in subsection (a)(3) against a person other than the holder." Defenses listed in section 3-305(a)(1) include duress, lack of legal capacity, or illegality of the transaction, which under other law, nullifies the obligation of the obligor.[51]

Paragraph 1 of the Uniform Commercial Code comment following section 3-305 explains that if, under local law, the effect of the duress or the illegality is to make the obligation entirely

---

[48] Parties do not note which state's version of the UCC should be interpreted. However, both Texas and California have adopted UCC sections 9-403 and 3-305 without changes.
[49] Uniform Commercial Code § 9-403(b).
[50] U.C.C. § 9-403(c).
[51] U.C.C. § 3-305.

null and void, the defense may be asserted against a holder in due course. Otherwise it is cut off.[52] The Trustee further cites *Wilson v. Steele* in support of this position, which determined that an unlicensed California contractor's assignee does not take a note free from the defense of "illegality of the transaction, as renders the obligation of the party a nullity."[53] Even if Crown is a holder in due course of the assignment from Synflex, the Synflex invoices are unenforceable as a matter of California law. Therefore, under section 3-305(b), illegality may be asserted against Crown, as the assignee of Synflex.

## CONCLUSION

For the foregoing reasons, the Trustee's Objections to Claims are sustained and claims numbered 114, 301 and 302 are denied. An appropriate order follows

BY THE COURT:

DATED: March 26, 2019

_____
KEVIN J. CAREY
UNITED STATES BANKRUPTCY COURT

---

[52] U.C.C. § 3-305, par. 1.
[53] *Wilson v. Steele*, 211 Cal. App. 3d 1053, 1056 (1989).

13