# EXHIBIT A

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ABEINSA HOLDING INC., *et al.*,<br><br>                              Debtors.[1] | Chapter 11<br><br>Case No. 16-10790 (KJC)<br><br>(Jointly Administered)<br><br>**Related D.I.: 991, 1033 & 1039** |

## ORDER CONFIRMING DEBTORS' MODIFIED FIRST AMENDED PLANS OF REORGANIZATION AND LIQUIDATION

WHEREAS, Abeinsa Holding Inc. and certain of its affiliates, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), have filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"): (i) the *Debtors' Modified First Amended Plans of Reorganization and Liquidation* (the "Plan"), a final version of which is attached hereto as Exhibit A,[2] and (ii) the *Motion of the Debtors for Entry of an Order (A) Approving the Disclosure Statement, (B) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Plan, (C) Approving the Forms of Ballot and Solicitation Materials, (D) Establishing the Voting Record Date, (E) Scheduling Confirmation*

---

[1]        The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Abeinsa Holding Inc. (9489); Abeinsa EPC LLC (1176); Abencor USA, LLC (0184); Abener Construction Services, LLC (0495); Abener North America Construction, LP (5989); Abengoa Solar LLC (6696); Inabensa USA, LLC (2747); Nicsa Industrial Supplies LLC (9076); Teyma Construction USA, LLC (0362); Abeinsa Abener Teyma General Partnership (2513); Abener Teyma Mojave General Partnership (2353); Abener Teyma Hugoton General Partnership (7769); Abener Teyma Inabensa Mount Signal Joint Venture (9634); Teyma USA & Abener Engineering and Construction Services General Partnership (6534); Abengoa US Holding, LLC (6871); Abengoa US, LLC (9573); Abengoa US Operations, LLC (1268); Abengoa Bioenergy Hybrid of Kansas, LLC (9711); Abengoa Bioenergy Technology Holding, LLC (7434); Abengoa Bioenergy New Technologies, LLC (8466); Abengoa Bioenergy Holdco, Inc. (8864); Abengoa Bioenergy Meramec Holding, Inc. (1803).

[2]        All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

*Hearing and Setting the Deadline for Filing Objections to Confirmation of the Plan, and (F) Approving the Related Forms of Notice* [D.I. 592] (the "Disclosure Statement Motion");

WHEREAS, on October 31, 2016, the Bankruptcy Court entered the *Order (A) Approving the Disclosure Statement, (B) Establishing Procedures for the Solicitation and Tabulation of Votes to Accept or Reject the Plan, (C) Approving the Forms of Ballot and Solicitation Materials, (D) Establishing Voting Record Date, (E) Scheduling Confirmation Hearing and Setting Deadline for Filing Objections to Confirmation of the Plan, and (F) Approving the Related Forms of Notice* [D.I. 746] (the "Disclosure Statement Order"), approving the adequacy of the disclosures in connection with the Plan and otherwise granting the related relief requested by the Disclosure Statement Motion;

WHEREAS, due notice of the Confirmation Hearing has been given to Holders of Claims, Holders of Equity Interests, and other parties in interest in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order, as set forth in the related *Affidavits of Service* [D.I. 819, 839, 861, 865, and 948] (the "Confirmation Hearing Notice Affidavit");

WHEREAS, in compliance with the Disclosure Statement Order, notice of the Confirmation Hearing was published in the *Wall Street Journal* [D.I. 545] (the "Publication Notice");

WHEREAS, in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order, solicitation packages containing (i) the Plan, (ii) the Disclosure Statement, (iii) a Ballot, (iv) notice of the Confirmation Hearing, and (v) the Disclosure

Statement Order (collectively, the "Solicitation Packages") were transmitted to the Holders of

Claims:

> EPC Reorganizing Plan:
> Class 3A EPC Reorganizing MRA Affected Debt Claims
> Class 3B EPC Reorganizing US Debt Claims
> Class 4 EPC Reorganizing General Unsecured Claims
> Class 5 EPC Reorganizing Litigation Claims
> Class 6 EPC Reorganizing Debt Bonding Claims
>
> EPC Liquidating Plan:
> Class 3 EPC Liquidating General Unsecured Claims
> Class 3A EPC Liquidating US Debt Claims
>
> Bioenergy and Maple Liquidating Plan:
> Class 3 Bioenergy and Maple Liquidating General Unsecured Claims
> Class 3A Bioenergy and Maple Liquidating US Debt Claims
>
> Solar Reorganizing Plan:
> Class 3 Solar Reorganizing US Debt Claims
> Class 4 Solar Reorganizing General Unsecured Claims
> Class 5 Solar Reorganizing Litigation Claims
> Class 6 Solar Reorganizing Debt Bonding Claims
>
> (collectively, the "Voting Classes");

WHEREAS, on December 1, 2016, the Official Committee of Unsecured Creditors

appointed in these Chapter 11 Cases (the "Committee") filed the *Statement of the Official*

*Committee of Unsecured Creditors in Respect of Confirmation of the Debtors' First Amended*

*Plans of Reorganization and Liquidation* [D.I. 940];

WHEREAS, on December 2, 2016, the Claims Agent filed the *Declaration of Christina*

*Pullo of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on*

*the Debtors' Modified First Amended Plans of Reorganization and Liquidation* [D.I. 153] (the

"First Voting Declaration"), containing a tabulation of all valid Ballots received;

WHEREAS, on December 6, 2016, the Claims Agent filed the *Supplemental Declaration of Christina Pullo of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Debtors' Modified First Amended Plans of Reorganization and Liquidation* [D.I. 981] (the "Supplemental Voting Declaration," and together with the First Voting Declaration, the "Voting Declarations");

WHEREAS, on December 2, 2016, the Debtors filed the *Debtors' Modified First Amended Plans of Reorganization and Liquidation* [D.I. 944];

WHEREAS, on December 2, 2016, the Debtors filed their *Memorandum of Law (I) in Support of Approval and Confirmation of Debtors' Modified First Amended Plans of Reorganization and Liquidation and (II) in Response to Objections Thereto* [D.I. 945] (the "Memorandum of Law");

WHEREAS, on December 5, 2016, the Debtors filed the *Declaration of Sebastian Felicetti in Support of Confirmation of Debtors' First Amended Plans of Reorganization and Liquidation* [D.I. 957] (the "Felicetti Declaration");

WHEREAS, on December 5, 2016, the Debtors filed the *Declaration of Jeffrey Bland in Support of Confirmation of Debtors' Modified First Amended Plans of Reorganization and Liquidation* [D.I. 967] (the "Bland Declaration");

WHEREAS, on December 5, 2016, the Debtors filed the *Declaration of William H. Runge III in Support of Confirmation of Debtors' Modified First Amended Plans of Reorganization and Liquidation* [D.I. 972] (the "Runge Declaration");

WHEREAS, on December 5, 2016, the Debtors filed the *Declaration of Samuel E. Star in Support of Confirmation of Debtors' Modified First Amended Plans of Reorganization and Liquidation* [D.I. 975] (the "Star Declaration," and together with the Felicetti Declaration, and the Bland Declaration the "Declarations");

WHEREAS, on December 5, 2016, the Debtors filed Exhibit B to the Memorandum of Law [D.I. 974];

WHEREAS, on December 6, 2016, the Bankruptcy Court conducted the Confirmation Hearing;

WHREAS, on December 7, 2016, the Debtors filed the *Notice of Post-Hearing Submission by Debtors and Official Committee of Unsecured Creditors* [D.I. 989] setting forth a summary of the evidence contained in the Declarations that supports the Debtors' and the Committee's positions with respect to the confirmability of the Plan (the "Post Hearing Submission");

WHEREAS, on December 7, 2016, the Debtors filed the *Debtors' Modified First Amended Plans of Reorganization and Liquidation* [D.I. 991];

WHEREAS, on December 14, 2016, the Bankruptcy Court issued an *Opinion on Confirmation of the Debtors' Modified First Amended Plans of Reorganization and Liquidation* ("Opinion") [D.I. 1033]; and

**NOW, THEREFORE,** based upon the Bankruptcy Court's consideration of the entire record of the Chapter 11 Cases, including, among other things, (i) the Disclosure Statement, (ii) the Plan, (iii) the Disclosure Statement Motion, (iv) Disclosure Statement Order, (v) the

Confirmation Notice Affidavit, (vi) the Voting Declarations, (vii) the Publication Notice, (viii) any objections to the Plan, (ix) the Memorandum of Law, (x) the Declarations filed in support of confirmation, and (xi) the evidence and arguments presented at the Confirmation Hearing, and the Bankruptcy Court having found that the Plan is confirmable and all objections thereto have either been settled, withdrawn, or overruled at or before the Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor, *and except as otherwise provided in the Opinion,*

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.    <u>Findings and Conclusions</u>. The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    <u>Jurisdiction, Venue, Core Proceeding</u>. On the Petition Date the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code with this Court.  The Debtors are eligible debtors under section 109 of the Bankruptcy Code.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Bankruptcy Court has jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334.  The Debtors are the plan proponents in accordance with section 1121(a) of the Bankruptcy Code and Parent is the Plan sponsor.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b) and this Court has jurisdiction to enter a final order with respect thereto.

C.     The Official Committee of Unsecured Creditors.  On April 13, 2016, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Committee in these Chapter 11 Cases.

D.     Judicial Notice.  The Bankruptcy Court takes judicial notice of the docket of these Chapter 11 Cases and the Chapter 15 cases of *Abengoa, S.A., et al.*, Case No. 16-10754 and *Abengoa Concessions Investments Limited*, Case No. 16-12590 (together, the "Chapter 15 Cases"), maintained by the Clerk of the Bankruptcy Court, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of the Chapter 11 Cases and the Chapter 15 Cases.

E.     Disclosure Statement Order Compliance.  The Debtors have complied with the Disclosure Statement Order, including the solicitation process, in all respects.

F.     Burden of Proof.  The Debtors have the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.  The Debtors have met this burden.

G.     Voting.  As evidenced by the Voting Declarations, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the solicitation process set forth in the Disclosure Statement Order, and applicable non-bankruptcy law.  The Voting Classes that voted to accept the Plan did not include the votes of any insider.

H.     Solicitation.  The Solicitation Packages were transmitted and served in compliance with the Bankruptcy Code, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, and the Disclosure Statement Order.  The form of the Ballot adequately addressed the

particular goals and requirements of the Plan, these Chapter 11 Cases, and the Bankruptcy Code,

and is appropriate for the Holders of the Claims in the Voting Classes, each of whom may

receive a distribution under the Plan, and whose votes were, therefore, solicited.

> 1. The period during which the Debtors solicited acceptances of the Plan was reasonable in the circumstances of these Chapter 11 Cases and enabled the Holders of Claims in the Voting Classes to make an informed decision to accept or reject the Plan. The Debtors were not required to solicit votes from the Holders of Claims in any other Class.

> 2. The Debtors were not required to solicit votes from the Holder of Claims in Classes comprising (i) Intercompany Claims by Debtor Affiliates and (ii) Equity Interests in the EPC Liquidating Debtors and the Bioenergy and Maple Liquidating Debtors (collectively, the "Deemed Rejecting Classes") as such Classes will receive no recovery under the Plan[3] and are deemed to reject the Plan.

> 3. As described in and as evidenced by the Voting Declarations and the Confirmation Notice Affidavit, the transmittal and service of the Solicitation Packages were timely, adequate, and sufficient under the circumstances. The solicitation of votes on the Plan complied with the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and any other applicable rules, laws, and regulations.

I.      Good Faith. The Debtors have not engaged in any collusive or unfair conduct in

connection with the Plan. The Plan was negotiated and constructed at arm's-length and without

collusion with any Person or Entity.

J.      Notice. As is evidenced by the Voting Declarations and the Confirmation Notice

Affidavit, the transmittal and service of the Solicitation Packages were adequate and sufficient

under the circumstances, and all parties required to be given notice of the Confirmation Hearing

(including the deadline for filing and serving objections to confirmation of the Plan) have been

given due, proper, timely, and adequate notice in accordance with the Disclosure Statement

Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, and applicable non-

---

[3]      Under the Plan, Debtors holding Intercompany Claims against other Debtors will receive no recovery, and non-debtor affiliates holding Intercompany Claims against the Debtors will receive the treatment afforded in the Master Restructuring Agreement.

bankruptcy law, and such parties have had an opportunity to appear and be heard with respect thereto. No other or further notice is necessary or required.

K.    Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).    The Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Plan is dated and identifies the Debtors as the plan proponents, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.  Pursuant to section 1122(a) of the Bankruptcy Code, each Class of Claims and Equity Interests contains only Claims or Equity Interests that are substantially similar to the other Claims or Equity Interests within that Class.  Valid reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan and therefore the Plan does not unfairly discriminate among the Holders of Claims and Equity Interests.

L.    The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtors have complied with all applicable provisions of the Bankruptcy Code, satisfying the requirements of section 1129(a)(2) of the Bankruptcy Code.

M.    Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).  The Plan has been proposed in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.

N.    Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).  Any payment made or to be made by the Debtors, or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.  As has been disclosed to the Court,

Alvarez & Marsal is engaged by Parent, and has performed services for the Debtors and is being paid by Parent. As the Plan sponsor, Parent is paying such costs as additional New Value Contribution under the Plan, however, Parent is issuing securities under the Master Restructuring Agreement and only incident to the Plan. Consequently, this arrangement does not run afoul of the requirements of section 1129(a)(4) of the Bankruptcy Code.

O.    Responsible Person, Litigation Trustee, Liquidating Trustee, Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)). The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. The identity of the Responsible Person, Litigation Trustee, and Liquidating Trustees proposed to serve after the Effective Date have been fully disclosed in the Plan Supplement [Docket Nos. 882, 924, 978].

P.    No Rate Changes (11 U.S.C. § 1129(a)(6)). There is no regulatory commission having jurisdiction after confirmation of the Plan over the rates of the Debtors and no rate change provided for in the Plan requiring approval of any such commission. Therefore, 11 U.S.C. § 1129(a)(6) is not applicable.

Q.    Best Interest of Creditors (11 U.S.C. § 1129(a)(7)). The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The *Liquidation Analysis*, attached to the Disclosure Statement as **Exhibit C** and submitted in connection with the Plan, and the other evidence proffered or adduced at the Confirmation Hearing (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that each Holder of an Impaired Claim and/or Equity Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date. Holders of Allowed Claims against the

Solar Reorganizing Debtor will be paid in full under the Solar Reorganizing Plan and, therefore, section 1129(a)(7) is satisfied as to such Plan.  Under the Plan, the Cash portion of the New Value Contribution totaling $38 million, will permit the EPC Reorganizing Debtors and the Liquidating Debtors to make distributions to Holders of Allowed Claims that satisfy the requirements of section 1129(a)(9) of the Bankruptcy Code, distributions that the Debtors would be incapable of making if their cases were converted to cases pending under chapter 7 of the Bankruptcy Code.

R.    <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>.  All Classes of Claims or Equity Interests either voted to accept the Plan or were deemed to accept the Plan, other than the Deemed Rejecting Classes.  The Rejecting Impaired Classes are Impaired by the Plan and either voted to reject the Plan or are not entitled to receive or retain any property under the Plan and, therefore, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  As found and determined below, pursuant to section 1129(b)(1) of the Bankruptcy Code, the Plan may be confirmed notwithstanding the fact that the Rejecting Impaired Classes are Impaired and have, or are deemed to have, rejected the Plan.

S.    <u>Treatment of Administrative Claims, Priority Tax Claims, and Professional Claims (11 U.S.C. § 1129(a)(9))</u>.  The treatment of Allowed Administrative Claims, Allowed Priority Tax Claims, and Allowed Professional Claims pursuant to the Plan satisfies the requirements of sections 1129(a)(9)(A), (B), and (C) of the Bankruptcy Code.

T.    <u>Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10))</u>. Holders of Claims in at least one Voting Class under each of the EPC Reorganizing Plan, EPC Liquidating Plan, Bioenergy and Maple Liquidating Plan and Solar Reorganizing Plan voted to accept the Plan,

determined without including any acceptance of the Plan by any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

U.    Feasibility (11 U.S.C. § 1129(a)(11)).  Section 1129(a)(11) of the Bankruptcy Code requires the debtors to demonstrate that confirmation of a plan is not likely to be followed by the liquidation or the further financial reorganization of the debtors or any successor to the debtors, unless such liquidation or reorganization is proposed in the plan.

　　　　1.    EPC Reorganizing Plan: The pro forma cash flow projections attached to the Disclosure Statement as Exhibit D, as replaced, demonstrate that during the calendar year 2017, the EPC Reorganizing Debtors project that they will experience positive cash flow of approximately $5 million in addition to their opening cash balance as of January 1, 2017.  At no time during the calendar year 2017 do the reorganized EPC Reorganizing Debtors project that they will be in a negative cash position.   While the EPC Reorganizing Debtors do not guarantee that their projections will be realized, the evidence adduced in support of confirmation supports a finding that the assumptions considered in preparing the projections, including, without limitation, (i) that the EPC Reorganizing Debtors as a result of receiving the New Value Contribution allocated to these Debtors will have sufficient funds on the Effective Date to make the distributions required under the Plan, and (ii) that the reorganized EPC Reorganizing Debtors will likely receive additional financial support from Abengoa S.A. following the Effective Date to support their post-Effective Date operations, and the projections, in light of past performance of the EPC Reorganizing Debtors, are reasonable.  The EPC Reorganizing Plan is feasible.

　　　　2.    Solar Reorganizing Plan: The Solar Reorganizing Plan provides for payment in full of all Allowed Claims.

　　　　3.    EPC Liquidating Plan and Bioenergy and Maple Liquidating Plan: The Plan calls for liquidation of the EPC Liquidating Debtors and the Bioenergy and Maple Liquidating Debtors.  Therefore, confirmation of the Plan will not be followed by the need for further financial reorganization of the Liquidating Debtors, thereby satisfying (or eliminating the need to consider) section 1129(a)(11) of the Bankruptcy Code.

V.    Payment of Fees (11 U.S.C. § 1129(a)(12)).  The Plan provides that on the Effective Date, and thereafter as may be required, the Debtors shall pay all fees payable pursuant to section 1930 of title 28 of the United States Code, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

W.    Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13). The Debtors do not maintain retirement plans or other benefits obligations. Accordingly, section 1129(a)(13) of the Bankruptcy Code is not applicable to the Plan.

X.    No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)). The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable to the Chapter 11 Cases.

Y.    The Debtors are not Individuals (11 U.S.C. § 1129(a)(15)). The Debtors are not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable to the Chapter 11 Cases.

Z.    No Applicable Non-Bankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16)). The Debtors are moneyed, business, and/or commercial corporations, and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable to the Chapter 11 Cases.

AA.    Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b)). The Holder of Claims and Interests in the Rejecting Impaired Classes have voted to reject or are deemed to have not accepted the Plan. Based upon the evidence proffered, adduced, and presented by the Debtors at the Confirmation Hearing, the Plan does not discriminate unfairly and is fair and equitable with respect to the aforementioned Classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code. Thus, the Plan may be confirmed notwithstanding the rejection or deemed rejection of the Plan by the Rejecting Impaired Classes.

BB.    Only One Plan (11 U.S.C. § 1129(c)). The Plan is the only plan filed in these Chapter 11 Cases, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

CC.    <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Exchange Act of 1933, and no governmental unit has objected to the confirmation of the Plan on any such grounds.  Therefore, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

DD.    <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>.  Based on the record before the Bankruptcy Court and the record of the Chapter 11 Cases, the Debtors, Parent and their respective Representatives, in each case, have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code and, therefore, (i) are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan and (ii) are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and, to the extent such parties are listed therein, the exculpation provisions set forth in Article IX of the Plan.

EE.    <u>Section 1145 Exemption Applies to Parent's Issuance of Class A Shares and Class B Shares</u>.  Section 1145(a)(1) of the Bankruptcy Code exempts the issuance of securities under a plan from registration under the Securities Act and under state securities laws.  The Parent will issue the Class A shares and Class B shares pursuant to and in accordance with the Master Restructuring Agreement.  The Parent of the Debtors is participating as the sponsor under the

Plan. The securities to be issued by the Parent will be issued in exchange, settlement and satisfaction of Claims as provided under the Master Restructuring Agreement. The issuance of Class A shares and Class B shares of the Parent in connection with the Plan pursuant to and in accordance with the Master Restructuring Agreement satisfies the requirements of section 1145(a)(1) of the Bankruptcy Code and is, therefore, exempt from registration under the Securities Act and state securities laws.

FF.    Executory Contracts and Unexpired Leases.    The Debtors have exercised reasonable business judgment in determining whether to assume, assume and assign, or reject each of their executory contracts and unexpired leases as set forth in the Plan and the Plan Supplement or otherwise in this Confirmation Order.    The assumption, assumption and assignment, or rejection of executory contracts and unexpired leases in accordance with the Plan and the Plan Supplement is integral to the Plan and in the best interests of the Debtors, their Estates, Holders of Claims and Equity Interests, and other parties in interest. The Debtors have satisfied the provisions of section 365 with respect to the assumption, assumption and assignment, or rejection of executory contracts and unexpired leases as contemplated by the Plan and the Plan Supplement. The Debtors have provided adequate assurance of future performance of each of the executory contracts and unexpired leases that are being assumed pursuant to the Plan and the Plan Supplement. The Debtors have cured or provided adequate assurance that the Reorganizing Debtors will cure defaults (if any) under or relating to each of the executory contracts and unexpired leases that are being assumed pursuant to the Plan and the Plan Supplement.

GG.    Litigation Trustee.    The Litigation Trustee's compensation, including fees and expenses of professionals, will be paid as set forth in the Litigation Trust Agreement.

HH.    Implementation.  All documents necessary to implement the Plan, and all other relevant and necessary documents have been developed and negotiated in good faith and at arm's-length and shall, upon completion of documentation and execution, and subject to the occurrence of the Effective Date, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.  The Reorganizing Debtors are authorized to execute, deliver and perform under the Master Restructuring Agreement.  This Confirmation Order does not and shall not be construed as approving the Master Restructuring Agreement.

II.    Reserves.

Reorganizing Post-Confirmation Reserves: Effective upon the Confirmation Date, the EPC Reorganizing Debtors and the Solar Reorganizing Debtor, respectively, shall each establish and fund a reserve in the amount of $3,850,000 and $1,500,000, respectively, to fund the fees and costs anticipated to be incurred following the Confirmation Date through the completion of the Responsible Person's duties under the Plan (the "Reorganizing Post-Confirmation Reserves"), which Reorganizing Post-Confirmation Reserves may be increased, as necessary, by the Responsible Person after the Effective Date with the consent of the Litigation Trustee, which consent shall not be unreasonably withheld.  Each such reserve shall be used to pay the costs of the reconciliation of and objections to Claims, ordinary course Allowed Administrative Claims, including the Administrative Claims and estimated Administrative Claims to be incurred through to the Effective Date.  Any excess funds in either of such reserves shall be turned over to the control of the Responsible Person promptly following the effectiveness of his appointment, but shall remain segregated and shall be utilized for such purposes.  Prior to the Effective Date, the Reorganizing Debtors and the Committee shall agree to a budget with respect to the proposed Reorganizing Post-Confirmation Reserves.    The

Responsible Person shall provide reports of disbursements from the Reorganizing Post-Confirmation Reserves to the Litigation Trustee every thirty (30) days until such reserves are exhausted. The Litigation Trustee shall have leave to seek relief from the Bankruptcy Court with respect to objections, if any, to the disbursements set forth in such reports.

<u>Disputed Claims Reserve</u>: On the Effective Date, separate Disputed Claims reserves shall be created and escrowed, or placed in a trust account, for the EPC Reorganizing Debtors, the Solar Reorganizing Debtor, the Bioenergy and Maple Liquidating Debtors, and the EPC Liquidating Debtors. The Disputed Claims reserves for the Reorganizing Debtors shall be managed by the respective Reorganizing Debtors or Responsible Person, as applicable, and the Disputed Claims reserves for the Liquidating Debtors shall be managed by the respective Liquidating Trustee, as applicable; *provided, however*, that with respect to the Reorganizing Debtors, the Responsible Person and the Litigation Trustee shall cooperate with respect to the resolution of Disputed Claims. On each Distribution date after the Effective Date in which the respective Responsible Person or respective Liquidating Trustee (as applicable) makes Distributions to Holders of Claims (including without limitation, General Unsecured Claims), the respective Responsible Person or the respective Liquidating Trustee (as applicable) shall retain on account of Disputed Claims an amount the respective Responsible Person or the respective Liquidating Trustee (as applicable) estimates is necessary to fund the Pro Rata Share of such Distributions to Holders of Disputed Claims if such Claims were Allowed (or such amount as may be estimated in accordance with Article VI.D. of the Plan), with any Disputed Claims that are unliquidated or contingent being reserved in an amount reasonably determined by the respective Responsible Person or the respective Liquidating Trustee (as applicable). Cash retained on account of such Disputed Claims shall be retained in the respective Disputed Claims

reserve for the benefit of the Holders of Disputed Claims pending a determination of their entitlement thereto under the terms of the Plan. If any Disputed Administrative or Priority Claim is disallowed or Allowed in an amount that is lower than the aggregate assets retained on account of such Disputed Claim, then the respective Responsible Person or the Liquidating Trustee (as applicable) shall within fifteen (15) days after such disallowance or allowance return the assets that exceed the Allowed amount of such Claim to the applicable Debtors' Estates or to the respective Reorganizing Debtors or Liquidating Debtors, in each case for distribution to Holders of Allowed Claims against the applicable Debtors.

Professional Fee Reserve: The Responsible Person shall maintain a professional fee reserve and escrow account based on the estimated amounts provided by the Professionals. The professional fee reserve shall be funded on the Effective Date and may be increased in the discretion of the Responsible Person, as necessary, with the consent of the Liquidation Trustee, which consent shall not be unreasonably withheld. Any excess funds in either of such reserve shall be turned over to the control of the Responsible Person promptly following the effectiveness of his appointment, but shall remain segregated in an escrow account and shall be utilized to pay professional fees related to the Debtors.

Surety Reserve: Pursuant to the terms of the Plan, a reserve in the amount of $6.5 million shall be established on the schedule set forth in the Plan from the funds being retained under the Plan by Holders of Equity Interests in Solar Reorganizing Debtors Class 8 (Equity Interests), of which the Parent is the ultimate beneficiary, and which the Parent is gifting to beneficiaries of Holders of Allowed Claims in EPC Reorganizing Debtors Class 6 (Debt Bonding Claims) and Solar Reorganizing Debtor Class 6 (Debt Bonding Claims). In exchange for the amounts contained in the Surety Reserve, the Surety Reserve Beneficiaries shall not be

entitled to share in the EPC Reorganizing Distribution or the Solar Reorganizing Distribution, as applicable.  For the avoidance of doubt, distributions to the Surety Reserve Beneficiaries will be made solely from the funds available in the Surety Reserve.

JJ.    Substantive Consolidation.    The Plan provides for the partial substantive consolidation of the EPC Reorganizing Debtors under the EPC Reorganizing Plan, the EPC Liquidating Debtors under the EPC Liquidating Plan, and the Bioenergy and Maple Liquidating Debtors under the Bioenergy and Maple Liquidating Plan.  The Solar Reorganizing Debtor is a single entity that will not be substantively consolidated with any other entity.  The Debtors have demonstrated that prepetition, the entities to be consolidated, operated their businesses as an integrated enterprise to such an extent that many of their major creditors treated them as one legal entity and that postpetition the entities' assets and liabilities are so scrambled that separating them is prohibitive and would be harmful to all of their respective Creditors.  Based upon the evidence adduced and arguments made at the Confirmation Hearing and the record of these Chapter 11 Cases, the EPC Reorganizing Debtors under the EPC Reorganizing Plan, the EPC Liquidating Debtors under the EPC Liquidating Plan, and the Bioenergy and Maple Liquidating Debtors under the Bioenergy and Maple Liquidating Plan, as of the Effective Date, shall be partially substantively consolidated.

KK.    New Value Contribution.  The EPC Reorganizing Debtors have satisfied the "new value" exception to the so-called "Absolute Priority Rule" embodied in section 1129(b)(2) of the Bankruptcy Code.  The portion of the $38 million New Value Contribution (portions of which consist of proceeds from the sale of the Ashalim Project) that is allocated to the EPC Reorganizing Debtors in consideration for the Parent's retention of its indirect interest in the EPC Reorganizing Debtors, the settlement with respect to the MRA Affected Debt Claims as

contemplated by the Plan, and the releases, exculpation and injunction provided for under the Plan, is new money or money's worth that is necessary and substantial under such Plan to render such Plan feasible, and represents a premium to the market value of the equity in the reorganized and substantively consolidated EPC Reorganizing Debtors. Such New Value Contribution is necessary to permit the EPC Reorganizing Debtors to satisfy the requirements under sections 1129(a)(7) and (11).

LL.    <u>Releases</u>. The Bankruptcy Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the releases set forth in the Plan, and the related injunction in the Plan and the Confirmation Order. Section 105(a) of the Bankruptcy Code permits approval of the releases set forth in the Plan and the related injunctions in the Plan and Confirmation Order, because, as has been established based upon the record in the Chapter 11 Cases and the evidence presented at the Confirmation Hearing, such provisions (i) are integral to the settlement embodied in the Plan, are partially in exchange for the New Value Contribution and are essential to the formulation and implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtors' Estates, (iii) are fair, equitable, and reasonable, (iv) are in the best interests of the Debtors, their Estates, and all parties in interest, and (v) with respect to the third party releases, such releases have been consented to, or deemed consented to, by the releasing parties.

MM.    Pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the exculpation provision and the releases set forth in the Plan and implemented by this Confirmation Order are fair, equitable, reasonable, and in the best interests of the Debtors, and their Estates, creditors, and equity holders. The record of the Confirmation Hearing and these Chapter 11 Cases is sufficient to support the exculpation provision set forth in the Plan and the

releases provided for in the Plan, and the related injunction in the Plan. Accordingly, based upon the record of the Chapter 11 Cases, the representations of the parties, and/or the evidence proffered, adduced, and/or presented at the Confirmation Hearing, this Court finds that such exculpation provision, releases and the related injunction in the Plan are consistent with the Bankruptcy Code and applicable law. The failure to implement the release and injunction provisions of the Plan would jeopardize the global restructuring by eliminating the New Value Contribution and preventing confirmation of the Plan, which in turn would violate the Master Restructuring Agreement.

NN.    Based on the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.    <u>Findings of Fact and Conclusions of Law</u>. The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein.

2.    <u>Notice of the Confirmation Hearing</u>. Notice of the Confirmation Hearing complied with the terms of the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules.

3.    <u>Solicitation</u>. The solicitation of votes on the Plan complied with the Disclosure Statement Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and applicable non-bankruptcy law.

4.     Confirmation of the Plan.  The Plan is approved and confirmed under section 1129 of the Bankruptcy Code.  The terms of the Plan are incorporated by reference into, and are an integral part of, this Confirmation Order.

5.     Objections Resolved or Overruled.  All objections, responses, reservations, statements and comments in opposition or with respect to the Plan, other than those withdrawn with prejudice, waived, or settled prior to, or on the record at, the Confirmation Hearing, shall be, and hereby are, overruled in their entirety on the merits.

6.     General Authorizations.  The Plan was approved by an authorized officer or representative of each Debtor.  Pursuant to the appropriate provisions of the corporate or business organizations law of the applicable states of organization of the Debtors, including, without limitation, DGCL § 303, and section 1142(b) of the Bankruptcy Code, no additional action of the respective directors, members, managers, or stockholders of the Debtors shall be required to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan, Master Restructuring Agreement and any contract, instrument, or other document, including without limitation, the Litigation Trust Agreement and the Liquidating Trust Agreements, to be executed, delivered, adopted, or amended in connection with the implementation of the Plan.

7.     Binding Effect.  On the date of and following entry of this Confirmation Order and subject to the occurrence of the Effective Date, the provisions of the Plan shall bind the Debtors, the Responsible Person, the Litigation Trustee, the Liquidating Trustees, all Holders of Claims and Equity Interests (irrespective of whether such Claims or Equity Interests are Impaired under the Plan or whether the Holders of such Claims or Equity Interests have accepted the Plan), any and all non-Debtor parties to executory contracts and unexpired leases with the

Debtors, any other party in interest in these Chapter 11 Cases, and the respective Representatives, heirs, executors, administrators, successors, or assigns, if any, of any of the foregoing.

8. <u>Vesting of Assets</u>. As of the Effective Date, pursuant to the provisions of Bankruptcy Code section 1141(b) and (c), except as otherwise provided herein or in the Plan, any assets that are property of the EPC Reorganizing Debtors, EPC Liquidating Debtors, Bioenergy and Maple Liquidating Debtors, or Solar Reorganizing Debtor, or their respective Estates on the Effective Date including, without limitation, all Causes of Action, including, without limitation, those Causes of Action specifically identified in the Disclosure Statement, Plan Supplement, Litigation Trust Agreement and Liquidating Trust Agreements, shall vest in the EPC Reorganizing Debtors, the Litigation Trust, the Solar Reorganizing Debtor, the EPC Liquidating Trust or the Bioenergy and Maple Liquidating Trust, as applicable and as set forth in the Plan, free and clear of all Claims, Liens, encumbrances and interests of any kind. The reorganized EPC Reorganizing Debtors, the reorganized Solar Reorganizing Debtor, or the Liquidating Trusts, respectively, may use, acquire and dispose of such property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules or Bankruptcy Court approval, subject to the terms of the Litigation Trust Agreement, the Liquidating Trust Agreements (as applicable), the Plan and the Confirmation Order. Except as specifically provided in the Plan or this Confirmation Order, as of the Effective Date, all property of the Debtors shall be free and clear of any Liens, Claims, encumbrances and interests of any kind.

9. <u>Implementation of the Plan</u>. The Debtors, the Responsible Person, the Holders of Equity Interests in the EPC Reorganizing Debtors and the Solar Reorganizing Debtor and Parent and their respective designees, the Liquidating Trustees and the Litigation Trustee are hereby

authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, and take such other actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan.  On the Effective Date, each of the Responsible Person, the Litigation Trustee, and the Liquidating Trustees, as applicable, is authorized and empowered to issue, execute, file, and deliver or record such documents, contracts, instruments, releases, and other agreements in the name of and on behalf of the applicable Reorganizing Debtors, the Litigation Trust, or the Liquidating Trusts, respectively. The Reorganizing Debtors are authorized to execute, deliver and perform under the Master Restructuring Agreement.  This Confirmation Order does not and shall not be construed as approving the Master Restructuring Agreement.

10.     <u>Compromise of Controversies</u>.  The settlement of Claims and Causes of Action provided for in the Plan and in the Master Restructuring Agreement is approved in all respects.

11.     <u>Rejection of Executory Contracts and Unexpired Leases</u>.  Except as is set forth in the Plan, as of the Effective Date, all executory contracts and unexpired leases to which any Debtor is a party are hereby rejected as of the Effective Date.

12.     <u>Preservation of Insurance</u>.  Notwithstanding anything to the contrary contained herein or in the Plan, nothing shall diminish or impair the enforceability of any insurance policy or claim of the Debtors that may provide coverage for claims, Claims, Causes of Action or causes of action against the Debtors, the Go Forward Chapter 11 Companies, their current and former directors and officers, the Liquidating Trusts, the Litigation Trust, or any other Person or Entity.

13.     <u>Binding Exculpation Provision</u>.  All exculpation provisions embodied herein and/or in the Plan, including but not limited to, those contained in Article IX of the Plan, are

approved and shall be effective and binding on all Persons and Entities, to the extent provided therein or herein.

14. <u>Binding Release Provisions</u>. All release provisions embodied herein and/or in the Plan, including but not limited to, those contained in Article IX of the Plan, are approved and shall be effective and binding on all Persons and Entities, to the extent provided therein or herein. Notwithstanding any provision of the Plan, this Confirmation Order, or any implementing or supplementing Plan Documents, nothing contained in this Confirmation Order or the Plan or the Plan Documents shall release the Parent from its obligations to pay the fees and expenses of Alvarez & Marsal.

15. <u>Binding Injunction Provisions</u>. All injunction provisions embodied herein and/or in the Plan, including but not limited to those contained in Article IX of the Plan, are approved and shall be effective and binding on all Persons and Entities, to the extent provided therein or herein.

16. <u>Payment of Statutory Fees</u>. All statutory fees owing to the U.S. Trustee that are due and owing as of the Effective Date or that have accrued, but are not yet due, as of the Effective Date shall be paid or fully reserved for by the Debtors and paid in full when such fees are due. After the Effective Date, the Liquidating Trusts and the Reorganizing Debtors, respectively, shall pay any and all such fees when due and payable. After the Effective Date, the Responsible Person and Liquidating Trustees, as applicable, shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. Notwithstanding the limited substantive consolidation provided for in the Plan, each and every Debtor shall remain responsible for the payment of quarterly fees pursuant to 28 U.S.C. § 1930, until the earliest of the time a particular Chapter 11 Case is closed, dismissed or converted.

17. <u>Reversal/Stay/Modification/Vacatur of Confirmation Order</u>. Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of the Bankruptcy Court or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or Lien incurred or undertaken by the Debtors, as applicable, pursuant to the Plan, Master Restructuring Agreement and the Confirmation Order prior to the Effective Date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of the Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, the Confirmation Order or the Master Restructuring Agreement prior to the Effective Date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of the Confirmation Order, the Master Restructuring Agreement and the Plan or any amendments or modifications thereto.

18. <u>Intercompany Claims of Parent and its Affiliates</u>. The Parent and its Affiliates agree that they shall not seek payment on account of any claims against the debtors in the chapter 11 proceedings pending in the United States Bankruptcy court for the Eastern District of Missouri (Case No. 16-41161).

19. <u>Equity Interests in the Reorganizing Debtors</u>. On the Effective Date, the Holders of the Equity Interests in the EPC Reorganizing Debtors and the Solar Reorganizing Debtor shall retain their Equity Interests, subject to the provisions of the Plan, Master Restructuring Agreement and this Confirmation Order. Unless later authorized in accordance with applicable non-bankruptcy law, such Equity Interests shall not be certificated.

20.     Retention of Jurisdiction.  Notwithstanding the entry of this Confirmation Order

and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date,

retain such jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters

related to the Chapter 11 Cases, the Debtors, the Parent, and the Plan, including, without

limitation, the Litigation Trust and the Liquidating Trusts, as is legally permissible, including,

without limitation, jurisdiction to:

> i.     allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest against the Debtors, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims;

> ii.     grant, deny or otherwise resolve any and all applications of Professionals or Persons retained in the Chapter 11 Cases by the Debtors or the Committee for allowance of compensation or reimbursement of expenses authorized by the Bankruptcy Code or the Plan, for periods ending by the Effective Date;

> iii.     resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired leases to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

> iv.     ensure that Distributions to Holders of Allowed Claims are accomplished under the provisions of the Plan, including by resolving any disputes regarding the entitlement of the Debtors, the Responsible Person, the Litigation Trust, the Litigation Trustee, the Liquidating Trusts, or the Liquidating Trustee to recover assets held by third parties;

> v.     decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving a Debtor that may be pending on the Effective Date or instituted by the Responsible Person, the Litigation Trustee, or the Liquidating Trustee after the Effective Date;

> vi.     enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and this Confirmation Order;

> vii.     resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan, the Confirmation Order, or any Entity's obligations incurred in connection with the Plan;

viii. issue injunctions, enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

ix. enforce Article IX.A, Article IX.B, Article IX.C and Article IX.D of the Plan;

x. enforce the injunction set forth in Article IX.E.3 of the Plan;

xi. resolve any cases, controversies, suits or disputes with respect to the releases, injunction, and other provisions contained in Article IX of the Plan, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions, and other provisions of the Plan;

xii. enter and implement such orders as necessary or appropriate if this Confirmation Order is modified, stayed, reversed, revoked, or vacated;

xiii. resolve any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, this Confirmation Order, the Litigation Trust, the Liquidating Trusts or any contract (except for the Master Restructuring Agreement), instrument, release, indenture, or other agreement or document adopted or entered into in connection with the Plan or the Disclosure Statement;

xiv. resolve any disputes between the Responsible Person and the Litigation Trustee or the Liquidating Trustees;

xv. resolve any disputes arising from the non-payment of any amounts required to be paid by the Parent under, or in connection with, the Plan or this Confirmation Order; and

xvi. enter one or more orders and Final Decrees closing the Chapter 11 Cases.

21. <u>Exemption from Certain Taxes</u>. Pursuant to section 1146(a) of the Bankruptcy Code, all transactions, and the delivery and recordation of any instrument, under, in furtherance of, or in connection with the Plan shall not be subject to any stamp tax, real estate transfer tax, or similar transfer fee or tax.

22. <u>Immaterial Modifications to Plan</u>.

A. <u>Resolution of the Informal Objections of Morse Associates, Inc. (the "**Morse**")</u>: On November 28, 2016, the Solar Reorganizing Debtor and Morse entered into a Stipulation and Settlement Resolving Claim No. 267 ("<u>Morse Stipulation</u>"). The Morse Stipulation is docketed at number 903 and was approved by Order of this Court. Upon receipt by Morse, or its successors and/or assigns, of all

distributions under the Plan to be made on account of the Morse Claim, the Morse Claim shall be deemed satisfied in full and none of Morse, its affiliates, successors and assigns, or its past, present and future members, officers, directors, partners, principals, agents, insurers, servants, employees, representatives, administrators, executors, trustees and attorneys (collectively, the "Morse Parties"), shall have any further right to payment against the Debtors, their affiliates, their estates or their respective successors or assigns (collectively, the "Debtor Parties"); provided, however, that if Morse or its successors and/or assigns do not receive distributions under the Plan equal to 100% of the Allowed Amount, as defined in the Morse Stipulation, nothing in the Morse Stipulation or in the Plan or in this Confirmation Order, or in any vote or election by Morse in connection with the Plan, shall affect the rights of any of the Morse Parties under any guaranty previously given to Morse in connection with the Morse Claim, and nothing in the Morse Stipulation or in the Plan or in this Confirmation Order, or in any vote or election by Morse in connection with the Plan, shall affect the defenses and/or counterclaims available to any Debtor Party that is a guarantor under such guaranty.

B. Resolution of Objection Internal Revenue Service: Notwithstanding any provision to the contrary in the Plan, this Confirmation Order, and any documents implementing the Plan (collectively, "Documents"), nothing shall: (1) affect the ability of the Internal Revenue Service ("IRS") to pursue any non-debtors to the extent allowed by non-bankruptcy law for any liabilities that may be related to any federal tax liabilities owed by the Debtors or the Estates; (2) affect the rights of the United States to assert setoff and recoupment and such rights are expressly preserved; (3) discharge or enjoin any claim of the IRS described in 11 U.S.C. Section 1141(d)(6); or (4) require the IRS to file an administrative claim by the Administrative Claims Bar Date in order to receive payment for any liability described in 11 U.S.C. Section 503(b)(1)(B) and (C). To the extent Allowed, IRS Priority Tax Claims (including any penalties, interest or additions to tax entitled to priority under the Bankruptcy Code) are not paid in full in cash on the Effective Date, such Allowed IRS Priority Tax Claims shall accrue interest commencing on the Effective Date at the rate and method set forth in 26 U.S.C. Sections 6621 and 6622. IRS administrative expense claims allowed pursuant to the Plan or section 503 of the Bankruptcy Code shall accrue interest and penalties as provided by applicable law until paid in full; provided, however, that the Debtors reserve all rights and defenses under applicable law. Moreover, nothing in the Documents shall: (a) be construed as a compromise or settlement of any IRS claim or interest; (b) effect a release, discharge or otherwise preclude any claim whatsoever against any Debtor by or on behalf of the IRS for any liability arising out of any unfiled tax return or any pending audit or audit which may be performed with respect to any unfiled tax return; and (c) nothing shall enjoin the IRS from amending any claim against any Debtor with respect to any tax liability arising as a result of the filing of an unfiled return or a pending audit or audit which may be performed with respect to any tax return. Further, any liability arising as a result of an unfiled return or final resolution of

a pending audit or audit which may be performed with respect to any such tax return shall be paid in accordance with 11 U.S.C. Sections 1129(a)(9)(A) and (C).

C. <u>Resolution of Informal Comments of Texas Workforce Commission</u>. The Texas Workforce Commission ("<u>TWC</u>") timely filed a Priority Tax Claim in the amount of $1,639.94 against Debtor Abeinsa EPC LLC (the "<u>TWC Claim</u>"). The TWC Claim is based on returns filed by Debtor Abeinsa EPC LLC. The TWC Claim is an Allowed Priority Tax Claim and shall be paid on or as soon as practicable after the Effective Date, pursuant to Article III.B.3.(b) of the Plan. To the extent the TWC Claim is not paid in full on or before the Effective Date, the TWC is entitled to interest, at a rate determined under non-bankruptcy law, from the Effective Date until the TWC Claim has been paid in full.

D. <u>Resolution of Texas Comptroller of Public Accounts</u>. The Texas Comptroller of Public Accounts ("<u>Comptroller</u>") timely filed Priority Tax Claims in the amount of $75,000 against each of the following Debtors: Abeinsa Holdings, Inc.; Abengoa Solar LLC; Abeinsa EPC LLC; Nicsa Industrial Supplies, LLC; Abener Construction Services, LLC; Abeinsa Abener Teyma General Partnership; Teyma Construction USA, LLC; and Abengoa US, LLC (together the "<u>Comptroller Claims</u>"). These Debtors are members of a combined reporting group; each jointly and severally liable for the 2016 franchise tax pursuant to § 171.1014(i) of the Texas Tax Code. The Comptroller Claims are estimated due to Debtors' failure to timely file the requisite 2016 franchise tax return. Debtors shall file the 2016 franchise tax return within sixty (60) days of the Effective Date. At that time, the Comptroller Claims shall be amended to reflect the return-based liability.

Notwithstanding anything in the Plan or the Confirmation Order to the contrary, to the extent they are not paid in full on the Effective Date, the Comptroller Claims shall be paid in accordance with § 1129(a)(9)(C) of the Bankruptcy Code via monthly installments beginning on the 1st day of the first full month following the Effective Date and continuing on the 1st day of each month thereafter, with all payments to be complete within 5 years of the Petition Date. The Comptroller Claims shall be paid with interest at the rate of 4.5% from the Effective Date. Interest shall accrue on the Comptroller Claims from the Effective Date until the claims are paid in full, including for any period of time during which payment is delayed for any reason.

To the extent Debtors dispute any of the Comptroller Claims, a Disputed Claims Reserve shall established for the full amount of the Disputed Claim(s), pending final order determining allowance of the Disputed Claim(s). Upon allowance, the Claim(s) shall be paid in accordance with the above terms.

Notwithstanding any provision in the Plan or the Confirmation Order to the contrary: (a) pursuant to § 503(b)(1)(D) of the Bankruptcy Code, the Comptroller and the TWC shall not be subject to the Administrative Claims Bar Date

established by the Plan; (b) all requisite tax returns and payments coming due the Comptroller or the TWC post-petition shall be filed and paid when due under the laws of the State of Texas; (c) the bankruptcy shall have no effect on the Comptroller or TWC rights, if any, as to responsible non-Debtor third parties; and (d) the Comptroller and TWC setoff rights shall be preserved in accordance with § 553 of the Bankruptcy Code.

E. <u>Resolution of Informal Comments Regarding Arizona Solar One LLC and Mojave Solar LLC</u>.  Notwithstanding anything else in the Plan or this Confirmation Order, the claims of Arizona Solar One LLC and the claims of Mojave Solar LLC against any persons who are not Debtors are not affected by the Plan or this Confirmation Order.  For the avoidance of doubt and notwithstanding anything else in the Plan or this Confirmation Order, (i) neither of Arizona Solar One LLC nor Mojave Solar LLC is a Debtor Releasing Party or Released Party (both as defined in the Plan), (ii) neither Arizona Solar One LLC nor Mojave Solar LLC is providing or shall be deemed to have provided any release contained in Article IX.B.1 of the Plan, and (iii) none of Arizona Solar One LLC, Mojave Solar LLC, or the United States of America (including the Department of Energy and the Federal Financing Bank) is providing or shall be deemed to have provided any release of the Released Parties under Section IX.B.2 of the Plan.

F. <u>Resolution of Objection of SPX Heat Transfer LLC and SPX Cooling Technologies, Inc.</u>: Notwithstanding any provision to the contrary in the Plan, this Confirmation Order, and any documents implementing the Plan, nothing shall affect, waive, release, diminish, or limit the rights of SPX Heat Transfer LLC or SPX Cooling Technologies, Inc. to assert setoff and recoupment rights and such rights are expressly preserved.

G. <u>Resolution of Limited Objection of FHI Plant Services, Inc.</u>: Notwithstanding any provision to the contrary in the Plan, this Confirmation Order, and any documents implementing the Plan, nothing shall affect, waive, release, diminish, or limit the rights of FHI Plant Services, Inc. to assert setoff and recoupment rights and such rights are expressly preserved.

H. <u>Resolution of Limited Objection of American Piping Products, Inc.</u>: Notwithstanding any provision to the contrary in the Plan, this Confirmation Order, and any documents implementing the Plan, nothing shall affect, waive, release, diminish, or limit the rights of American Piping Products, Inc. to assert setoff and recoupment rights and such rights are expressly preserved.

I. <u>Resolution of Informal Objection of Compañia Española de Financiación de Desarrollo, Cofides, S.A.</u>: None of this Confirmation Order, the Plan, any finding or conclusion of the Court in connection with the Plan, this Confirmation Order, or the Confirmation Hearing, votes to accept the Plan by Compañía Española de Financiación del Desarrollo, Cofides, S.A. ("Cofides"), or absence

of any objection to confirmation of the Plan by Cofides shall (i) be used to, or shall be deemed to, support or oppose substantive consolidation of any of the Debtors' affiliates that are debtors in jointly-administered chapter 11 cases before the U.S. Bankruptcy Court for the District of Missouri, Eastern Division (Case No. 16-41161), including without limitation Abengoa Bioenergy US Holding, LLC and Abengoa Bioenergy Operations, LLC (collectively, the "Missouri Debtors") or (ii) be deemed to constitute res judicata or an admission or to estop any party regarding any argument, fact, or conclusion of law regarding substantive consolidation of the Missouri Debtors. All parties rights are reserved as to substantive consolidation of the Missouri Debtors.

J. Resolution of Objection of Department of Justice (FCC and DOE):

    i. *Proceeds From ABNT Sale*: Notwithstanding any provision of the Plan, this Confirmation Order, or any implementing or supplementing Plan Documents, the portion of the proceeds for the sale of the Pilot Plant representing the U.S Department of Energy's ("DOE") interest in the Pilot Plant shall not vest in the EPC Reorganizing Debtors nor shall they be distributed pursuant to the Plan until there is an agreement between the EPC Reorganizing Debtors and the DOE or a determination by this Court with respect to the U.S. Department of Energy's (DOE) interests, if any, in such proceeds.

    ii. *Proceeds From Robotic Arm Sale:* Notwithstanding any provision of the Plan, this Confirmation Order, or any implementing or supplementing Plan Documents, the proceeds from Abengoa Solar LLC's sale of the Kuka 150 KG Six Axis Foundry Rated Industrial Robot (Robotic Arm) pursuant to the Court's *Order Authorizing and Approving Procedures for the Sale, Transfer, or Abandonment of De Minimis Assets Free and Clear of Liens, Claims, Interests, and Encumbrances without Further Order of Court* [Docket No. 295] in the amount of $25,000 shall not vest in the Reorganizing Debtors. Such proceeds shall be remitted to the DOE on the Effective Date; *provided however*, that if Abengoa Solar LLC has not received those funds as of the Effective Date, then Abengoa Solar LLC shall only be obligated to remit such funds to the DOE within 5 business days after receipt. Abengoa Solar LLC also expressly reserves its rights of setoff, if any, with respect to those funds.

    iii. *Intellectual Property*: Notwithstanding any provision of the Plan, this Confirmation Order, or any implementing or supplementing Plan Documents, any rights of the Reorganized Debtors in intellectual property developed under DOE financial assistance awards shall be subject to the government-reserved rights and contractor commitments including, but not limited to, the U.S. Competitiveness Provision, set forth as subparagraph (t) in the applicable DOE patent waivers, or as otherwise required by federal law. Notwithstanding any provision of the Plan, this Confirmation Order, or any

implementing or supplementing Plan Documents, no rights in the intellectual property that is subject to patent application PCT/US2014/45980 shall vest in the Reorganized Debtors. For the avoidance of doubt, the United States' and the Reorganizing Debtors' interest in the intellectual property subject to patent application PCT/US2014/45980 and any related foreign patents thereto, included but not limited to who retains title, and whether the Reorganizing Debtors retain a license in that intellectual property, shall be governed by the terms of the financial assistance award DD-EE003596 and applicable nonbankruptcy law.

iv.  *FCC Licenses:* Nothing in the Plan, this Confirmation Order, or any implementing or supplementing Plan Documents relieves the EPC Reorganizing Debtors, the EPC Liquidating Debtors, the Bioenergy and Maple Liquidating Debtors, the Solar Reorganizing Debtor, the Responsible Person or the Liquidating Trustee from their obligations to comply with the Communications Act of 1934, as amended, and the rules, regulations and orders promulgated thereunder by the Federal Communications Commission ("FCC"). No transfer of control of a Licensee or transfer of a License or of any other federal license or authorization issued by the FCC shall take place prior to the issuance of FCC regulatory approval for such transfer of control or transfer of license or authorization pursuant to applicable FCC regulations. The FCC's rights and powers to take any action pursuant to its regulatory authority, including, but not limited to, imposing any regulatory conditions on such transfers, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority.

v.  *Setoff Language:* Notwithstanding any provision of the Plan, this Confirmation Order, or any implementing or supplementing Plan Documents, the United States' setoff rights under federal law as recognized in section 553 of the Bankruptcy Code, and recoupment rights, shall be preserved and are unaffected.

K.  Resolution of Limited Joinder of Veolia Water Technologies, Inc.: Notwithstanding any provision to the contrary in the Plan, this Confirmation Order, and any documents implementing the Plan, nothing shall affect, waive, release, diminish, or limit the rights of Veolia Water Technologies, Inc. to assert setoff and recoupment rights and such rights are expressly preserved.

L.  Resolution of Objection of MMC Contractors National, Inc.: Notwithstanding anything to the contrary in the Plan, all obligations and responsibilities that Abengoa S.A. has pursuant to the Parent Guaranty Agreement that it executed in favor of MMC Contractors National, Inc. shall remain in full force and effect and nothing in this Confirmation Order shall be deemed to impair or alter any of the contractual responsibilities under the Parent Guaranty Agreement that may exist

vis-à-vis MMC Contractors National, Inc. and Abengoa S.A. Furthermore, any and all claims or causes of action that MMC Contractors National, Inc. may have against Abengoa S.A. pursuant to the Parent Guaranty Agreement shall remain in full force and effect and shall not be deemed modified or altered in any way by this Confirmation Order.

The Court notes that creditor MMC Contractors National, Inc. voted against the Plan and made the Optional Release Election on each ballot that it submitted. The Court hereby finds and holds that, notwithstanding any provision in the Plan, every Person (including, but not limited to, MMC Contractors National, Inc.) that voted against the Plan and chose the Optional Release Election provision has not granted the releases contained in Article IX.B.2 of the Plan. Rather, each Person retains any and all claims or causes of action that they may have had against all non-Debtor entities and any such claim or cause of action that may exist shall remain in full force and effect and shall not be deemed or altered in any way by entry of this Confirmation Order.

To the extent there is any conflict between the terms of this Confirmation Order and the Plan, then the terms of this Confirmation Order shall control and wholly supersede any contradictory provision of the Plan.

M. <u>Resolution of Objections of Liberty Mutual Insurance Company and Zurich American Insurance Company</u>: Liberty Mutual Insurance Company ("<u>Liberty Mutual</u>") and Zurich American Insurance Company for itself and as and where appropriate, its subsidiary, Fidelity Deposit Company of Maryland (collectively, "<u>Zurich</u>" and with Liberty Mutual "<u>Liberty/Zurich</u>") withdraws its objection to the Plan and agrees that with respect to all proofs of claims it has filed against any of the Debtors and all amounts scheduled by any of the Debtors with respect to Liberty Mutual or Zurich, that Liberty Mutual and Zurich's claims will be divided into (i) those claims arising from the bonds it has issued with respect to the Carty Project for which Portland General Electric Company ("<u>PGE</u>") has asserted various claims (the "<u>PGE/Carty Claims</u>") and (ii) all losses on account of other bonds it has issued and for which Liberty Mutual and Zurich asserted in the proofs of claims filed in these Cases (the "<u>L/Z Bonding Claims</u>"); provided, however, that, with respect to Zurich, this Agreement only applies to Zurich claims set forth in proofs of claim nos. 486, 552, 561, 581, 588, 589, 591, 592, 593, 605, 607, 611, 622, 624, 642, 649, 653, 657, 658, 662, 668, 684, 691, 717, 747, 752, 764, 771, 786, 795, and 797 and any other claims of Zurich or its subsidiaries remain unaffected by this Agreement:

1. Liberty Mutual and Zurich accept the treatment as a Surety Reserve Beneficiary pursuant to Section 7(b)(1) of the Plan with respect to claims in the EPC Reorganizing Plan except with respect to claims arising from the PGE/Carty Claims.

2.  PGE/Carty Claims

    a.  PGE has filed lawsuits against Liberty/Zurich and Abeinsa Abener Teyma General Partnership and its partners ("AAT") in the U.S. District Court for the District of Oregon (Case Nos. 16-00495 and 16-02030, collectively the "Oregon Cases"). Liberty/Zurich shall have full control over the defense of AAT in the Oregon Cases in Liberty/Zurich's sole and absolute discretion  Liberty/Zurich shall negotiate in good faith with the Debtors, the Parent, and the Unsecured Creditors Committee to establish terms that will protect the Committee's constituents and the Parent, in the event of a settlement of the Oregon Cases, against PGE having an allowed claim or claims in the EPC Reorganizing case or otherwise against the Parent.

    b.  The Creditors Committee and AAT agree that all rights of AAT relating to the wrongful termination claim are irrevocably assigned to Liberty/Zurich and that Liberty/Zurich are authorized to settle that claim and the PGE claim in the sole and absolute discretion of Liberty/Zurich, even if such settlement provides no affirmative recovery to AAT; provided that such settlement shall be consistent with any terms established pursuant to Paragraph "a", above. In the event that the Oregon Cases result in a net recovery on AAT's wrongful termination claim in excess of all bond losses, including attorneys' fees and costs, incurred by Liberty/Zurich on the PGE/Carty Bond, such excess shall be deemed property of the Litigation Trust.

    c.  AAT, the Creditors Committee and Litigation Trust agree reasonably to cooperate with Liberty/Zurich in the litigation of the Oregon Cases, including the wrongful termination claim, including, but not limited to, providing witnesses and documentation.

    d.  Liberty/Zurich is currently prosecuting an appeal to the 9th Circuit regarding Liberty/Zurich's participation in an ICC Arbitration between Parent and PGE. Parent and AAT will continue to pursue the ICC arbitration and will cooperate in supporting Liberty/Zurich's participation in the ICC Arbitration unless otherwise agreed by the Parties.

    e.  Liberty/Zurich will have an Allowed Claim in Class 4 of the EPC Reorganizing Debtors in the amount of $100 million (the "Allowed EPC Claim"). If the PGE Claim is settled for a lesser amount (the "EPC Settled Claim"), the Allowed EPC Claim will be reduced to equal the sum of the EPC Settled Claim and all other surety loss, including attorneys' fees and litigation expenses. Any overpayment of Liberty/Zurich resulting from a reduction of the Allowed EPC

Claim shall be returned to the Litigation Trust to be distributed pro rata to claimholders entitled to distribution from the Litigation Trust, including Liberty/Zurich.

f.  Zurich will have an Allowed Claim in Class 4 of the Solar Reorganizing Debtor in the amount of $100 million (the "Allowed Solar Claim"), but agrees to modified treatment of such claim, to be limited to the following recovery only:

   i.  Zurich shall receive a $1 million distribution on the Effective Date from Solar Reorganizing Debtor.

   ii. Zurich shall receive a note from Solar Reorganizing Debtor for $3 million payable to Zurich in 3 years and which shall accrue simple interest at LIBOR, with no prepayment penalty.

g.  Liberty/Zurich shall have a $200 million "crystallized" claim (the "Crystallized Claim") against Parent on account of the PGE Claim and the L/Z Bonding Claims and shall accede to the Master Restructuring Agreement with respect thereto and will no longer challenge any aspect of that agreement. The Crystallized Claim shall be treated under the Alternative Restructuring Terms under the Master Restructuring Agreement without the requirement of issuing new bonds, which is not required under the Master Restructuring Agreement. The Parent shall notify counsel for Liberty/Zurich of the commencement of the Supplemental Accession Period to allow Liberty/Zurich to timely accede to the Master Restructuring Agreement and elect to receive the Alternative Restructuring Terms.

h.  Zurich's set off rights, if any, and the Parent's rights, if any, with respect to certain subguard insurance policies issued by subsidiaries of Zurich are hereby reserved for future determination.

i.  Liberty/Zurich's rights against all non-Debtor indemnitors are fully preserved and unimpaired; provided, however, that Liberty/Zurich agree to negotiate in good faith a resolution of such claims prior to the Effective Date.

3.  Liberty/Zurich have agreed to change their votes on account of their Claims to accept each applicable Plan in all applicable classes.

N.  Resolution of Objection of RLI Insurance Company: RLI Insurance Company ("RLI") withdraws its objection to the Plan and the Debtors and RLI agree that with respect to all proofs of claims RLI filed against any of the Debtors and all amounts scheduled by any of the Debtors with respect to RLI, RLI shall have Allowed Claims as follows: (i) a $3 million Allowed Claim in Class 4 of the Solar Reorganizing Debtor (the "RLI Solar Allowed Claim"), (ii) a $3 million Allowed Claim in Class 4 of the EPC Reorganizing Debtors, and (iii) a $3

million Allowed Claim in Class 3 of the EPC Liquidating Debtors (collectively, the "RLI Allowed Claims"). Each of the RLI Allowed Claims is independently entitled to a distribution under its respective Plan. For the sake of clarity, any RLI claim classified as Class 6 Debt Bonding Claims in the EPC Reorganizing Debtors Plan or the Solar Reorganizing Debtor's Plan shall not be entitled to receive any Distribution from the Surety Reserve.

RLI's Solar Allowed Claim shall be further compromised, in that RLI shall be paid only by RLI receiving: (i) a $1,000,000 Distribution paid from the Solar Reorganizing Debtor on the Effective Date, and (ii) $2,000,000 paid by delivery of a note that will be payable by the Solar Reorganized Debtor on December 6, 2019 (the "Due Date"), which shall accrue simple interest at LIBOR (the "Final Distribution"), with no prepayment penalty. If, as of the Due Date, RLI's total losses including bond payments, fees and expenses plus its remaining bond exposure are less than $3,000,000, (i) if the Final Distribution has not then been pre-paid, the amount of the Final Distribution will be reduced by the difference; but (ii) if the Final Distribution was prepaid, then RLI will promptly refund the excess with the amount pro-rated as between Solar Reorganizing Debtor, the EPC Reorganizing Debtor, and the EPC Liquidating Debtor, proportionally to the amounts each paid RLI.

RLI agrees that the RLI Allowed Claims shall be deemed to have been Claims voting to accept each applicable Plan; provided, however, that RLI shall be deemed to have made the release opt out election on the ballot. Nothing in this Resolution Agreement, RLI's deemed vote for this Plan, this Confirmation Order or the terms of the Plan and related documents is intended to or shall be deemed to waive, alter or impair RLI's rights or claims against any non-Debtor indemnitor under applicable indemnity agreements.

Nothing in this Resolution Agreement, RLI's deemed vote for this Plan, this Confirmation Order or the terms of the Plan and related documents is intended to or shall be deemed to waive, alter or impair any procedural or substantive right or claim that RLI may have with respect to its rights and claims against the foreign parents, including the right to challenge the homologation of the Master Restructuring Agreement (MRA) or the effect of any homologation order on its rights and claims. Nothing in this Resolution Agreement, RLI's deemed vote for this Plan, this Confirmation Order or the terms of the Plan and related documents is intended to or shall be deemed to constitute or reflect RLI's accession to or adherence to the MRA.

RLI and Debtors agree that this resolution is conditioned on confirmation of a Plan substantially similar to Debtors' Modified First Amended Plans of Reorganization and Liquidation filed December 2, 2016 (D.I. 941) with regard to its treatment of the RLI Allowed Claims, and such Plan becoming Effective.

O. <u>Resolution of Nationwide Mutual Insurance Company, Atlantic Specialty Insurance Company and its Affiliates OneBeacon Insurance Group and OneBeacon Surety:</u>

Notwithstanding anything to the contrary set forth in the Plan or this Confirmation Order, all of the rights and claims of Atlantic Specialty Insurance Company and its affiliates OneBeacon Insurance Group and OneBeacon Surety (collectively, "ASIC") and Nationwide Mutual Insurance Company ("Nationwide") against the Debtors in these Chapter 11 Cases, shall be treated as follows:

ASIC and Nationwide each accept treatment for their Claims by participating in the Surety Reserve established under Class 6 of EPC Reorganizing Debtors. The amounts of all such allowed claims shall be reconciled within 45 days of any proposed final distributions; provided, however, that any distribution from the Surety Reserve to Nationwide shall be reduced dollar for dollar by any distribution to Nationwide under the Solar Reorganizing Plan, and such amounts shall be returned by Nationwide to the Surety Reserve for redistribution to the remaining Surety Reserve Claimants as set forth herein;

ASIC's and Nationwide's claims shall not be subject to disallowance under 11 U.S.C. Sec. 502(e); provided, however, that the claims shall only be based on actual losses. ASIC and Nationwide shall have the absolute right to settle all bond claims arising under their bonds on any acceptable terms in their sole and absolute discretion and such claims shall be deemed Allowed Claims under the Plan;

Nationwide reserves all rights to assert a claim against the Solar Reorganizing Debtor, and the Solar Reorganizing Debtors shall reserve the right to object to Nationwide's claim against the Solar Reorganizing Debtor and to the extent the claim is allowed, it shall be entitled to treatment Class 4 of the Solar Reorganizing Plan.

ASIC and Nationwide each reserves its rights, claims, and remedies in connection with the Spanish Restructuring, including, but not limited to, any challenges to homologation of the Master Restructuring Agreement or the effects of any such approved homologation, and the right, but not the obligation, to elect Alternative Restructuring Terms. Nothing in the Plan shall impair ASIC's claims or rights against any of its non-Debtor indemnitors under applicable indemnity agreements. Nothing in this Confirmation Order regarding ASIC or Nationwide voting for this Plan or the terms of the Plan and related documents is intended to or shall be deemed to constitute or reflect ASIC's or Nationwide's accession to or adherence to the Master Restructuring Agreement; and

ASIC and Nationwide each withdraw its   objections to confirmation of the Plan and hereby changes all of its votes from "no" to "yes"; provided that ASIC and

Nationwide's opt out of the Releases provided for in Article IX of the Plan remains in full force and effect.

P.   <u>Resolution regarding Escrow Amount.</u> The amount maintained in the Escrow set forth in Article IV.E of the Plan shall not be reduced at any time unless the Escrow exceeds the remaining amount due on account of New Value Contributions and it may not be reduced below such remaining amounts due and owing of the New Value Contributions; *provided, however*, the Reorganizing Debtors may request a reduction of the Escrow necessary to fund operating costs from the Litigation Trustee who can agree in its sole discretion, which discretion shall be exercised reasonably, to such necessary reduction in agreement with the Reorganizing Debtors.

Q.   <u>Clarification Regarding Indenture Trustee Fees As Part of New Value Contribution.</u>  The fees that are part of the New Value Contribution (as defined in the Plan), shall include those unpaid fees and expenses of Deutsche Bank Trust Company Americas, Deutsche Trustee Company Limited, Deutsche Bank AG, London Branch, Deutsche Bank, S.A.E., and Deutsche Bank Luxembourg S.A., Deutsche Bank, and Société Générale S.A., as set forth, and upon the conditions, set forth in the Plan.

23.    <u>Modifications to the Plan Prior to the Confirmation Date</u>.  Any modifications to

the Plan since the commencement of solicitation of ballots, including, without limitation, those

modifications set forth herein and in the *Debtors' Modified First Amended Plans of

Reorganization and Liquidation* (collectively, the "<u>Modifications</u>"), constitute immaterial

modifications or do not adversely affect or change the treatment of any Claims or Equity

Interests.  Pursuant to section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019, the

Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or

the resolicitation of acceptances or rejections of the Plan under section 1126 of the Bankruptcy

Code, nor do they require that Holders of Claims against the Debtors be afforded an opportunity

to change previously cast acceptances or rejections of the Plan.  The filing of the Modifications

and the disclosure of the Modifications on the record at the Confirmation Hearing, constitute due

and sufficient notice thereof under the circumstances of the Chapter 11 Cases.  Accordingly, the

Plan (which consists of the Plan as modified by the Modifications) is properly before the

Bankruptcy Court, and all votes cast with respect to the Plan prior to the Modifications shall be binding and shall apply with respect to the Plan.

24.     <u>Modifications to the Plan After the Confirmation Date</u>.  Subject to any consents required under the Master Restructuring Agreement, the Plan may be amended, modified, or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, the Plan, and this Confirmation Order with the consent of the Committee, which consent shall not be unreasonably withheld.  In addition, after the Confirmation Date, the Debtors may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or this Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan.  Prior to the Effective Date, the Debtors may modify the Plan so as to withdraw, or seek to revoke this Confirmation Order as it pertains to, one or more of the EPC Reorganizing Plan, provided, however, that the Debtors have obtained the requisite consent for such action under the Master Restructuring Agreement, the EPC Liquidating Plan, Solar Reorganizing Plan and the Bioenergy and Maple Liquidating Plan.  Further, prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court.

25.     <u>Closing of Chapter 11 Cases</u>.  On or as soon as practicable after the Effective Date, the Debtors, the Responsible Person and the Liquidating Trustees, as applicable, are authorized to and shall submit an Order to the Bankruptcy Court in accordance with Bankruptcy Rule 1017-3 seeking to close the Chapter 11 Cases of all but one of each of the EPC Reorganizing Debtors, EPC Liquidating Debtors, and Bioenergy and Maple Liquidating Debtors.

As soon as practicable after the Effective Date, the Debtors, the Responsible Person and the Liquidating Trustees, as applicable, are authorized to and shall submit an Order to the Bankruptcy Court under certification of counsel that is in form and substance acceptable to the U.S. Trustee that closes each of the remaining Chapter 11 Cases.  Once the Plan has been fully administered, the reorganized EPC Reorganizing Debtors', Solar Reorganizing Debtor's, EPC Liquidating Debtors' and Bioenergy and Maple Liquidating Debtors shall file a final report and a motion seeking a final decree in accordance with the applicable Bankruptcy Rules.

26.     <u>Governing Law</u>.  Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflicts of law of such jurisdiction.

27.     <u>Applicable Non-Bankruptcy Law</u>.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan, the Master Restructuring Agreement and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

28.     <u>Documents and Instruments Filing/Recording</u>.     Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan and this Confirmation Order.

29.     <u>Governmental and Police and Regulatory</u>.  Nothing in this Confirmation Order or the Plan discharges, releases, precludes, or enjoins: (i) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) ("<u>Governmental Unit</u>") that is not a "claim" as defined in 11

U.S.C. § 101(5) ("Claim"); (ii) any Claim of a Governmental Unit arising on or after the Effective Date; (iii) any police power or regulatory liability to a Governmental Unit that any entity would be subject to as the owner or operator of property after the Effective Date; or (iv) any liability to a Governmental Unit on the part of any Person other than the Debtors or reorganized Debtors. Nor shall anything in this Confirmation Order or the Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence. Nothing in this Confirmation Order divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret this Confirmation Order or the Plan or to adjudicate any defense asserted under this Confirmation Order or the Plan.

30. <u>Governmental Approvals Not Required</u>. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other Governmental Unit with respect to the implementation or consummation of the Plan, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan.

31. For the avoidance of doubt, nothing in the Plan or this Confirmation Order shall impair the rights of any claimant to seek relief under section 502(c) of the Bankruptcy Code.

32. <u>Notice of Entry of Confirmation Order and Effective Date</u>. The form of notice of occurrence of the Effective Date and entry of the Confirmation Order, attached hereto as **Exhibit B** (the "<u>Effective Date Notice</u>"), provides adequate and reasonable notice and is hereby approved. On or within two (2) Business Days following the Effective Date, the Debtors shall file and serve the Effective Date Notice on the following parties: (i) all parties filing a notice of appearance and request for service pursuant to Bankruptcy Rule 2002 in the Chapter 11 Cases, (ii) state and local taxing authorities in which the Debtors did business, (iii) the Internal Revenue

Service, (iv) the Securities and Exchange Commission, (v) the United States Attorney for the District of Delaware, (vi) holders of Claims or Equity Interests, (vii) all counterparties to executory contracts and unexpired leases, (viii) the U.S. Trustee, and (ix) all persons or entities listed on the Debtors' creditor mailing matrix.

33.    Substantial Consummation.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

34.    Waiver of Stay.  The stay of this Confirmation Order provided by any Bankruptcy Rule (including, without limitation, Bankruptcy Rules 3020(e), 6004(h), and 6006(d)), whether for fourteen (14) days or otherwise, is hereby waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Bankruptcy Court.

35.    Inconsistency.   To the extent of any inconsistency between this Confirmation Order and the Plan, this Confirmation Order shall govern.

36.    No Waiver.  The failure to specifically include any particular provision of the Plan in this Confirmation Order shall not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by reference.

Nothing contained herein shall result in a waiver of any rights under the Master Restructuring Agreement by any party thereto and, for the avoidance of doubt, notwithstanding the entry of this Confirmation Order, the NM1 Committee, the Restructuring Committee, and the New Money Financing Anchor Funders (as defined in the Master Restructuring Agreement) retain all of their rights under the Master Restructuring Agreement, including, without limitation, any approval or consent rights with respect to the Compromise Documents (as defined in the

Master Restructuring Agreement), including the Plan and the Confirmation Order, and the Restructuring Documents (as defined in the Master Restructuring Agreement).

37.    Integration.  Each of the EPC Reorganizing Plan, the EPC Liquidating Plan, Solar Reorganizing Plan and the Bioenergy and Maple Liquidating Plan is a fully integrated agreement, all provisions of each such Plan are fully dependent upon all other provisions and no provision may be severed or not enforced without the Debtors', the Responsible Person's or the Liquidating Trustees', as applicable, express consent and as it relates to the EPC Reorganizing Plan, without the consent as required under the Master Restructuring Agreement.

Dated: December 15, 2016
        Wilmington, Delaware

THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT A

**Plan**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| ABEINSA HOLDING INC., *et al.*, | Case No. 16-10790 (KJC) |
| Debtors.[1] | (Jointly Administered) |

## DEBTORS' MODIFIED FIRST AMENDED PLANS OF REORGANIZATION AND LIQUIDATION

DLA PIPER LLP (US)
R. Craig Martin (DE 005032)
Maris J. Kandestin (DE005294)
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
E-mail: craig.martin@dlapiper.com
        maris.kandestin@dlapiper.com

Richard A. Chesley (admitted *pro hac vice*)
Oksana Koltko Rosaluk (Ill. Bar No. 6303739)
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601
Telephone: (312) 369-4000
Facsimile: (312) 236-7516
E-mail: richard.chesley@dlapiper.com

Jamila Justine Willis (N.Y. Bar No. 4918231)
1251 Avenue of the Americas, Floor 25
New York, New York 10020
Telephone: (212) 335-4500
E-mail: jamila.willis@dlapiper.com

December 6, 2016

---

[1]     The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Abeinsa Holding Inc. (9489); Abeinsa EPC LLC (1176); Abencor USA, LLC (0184); Abener Construction Services, LLC (0495); Abener North America Construction, LP (5989); Abengoa Solar, LLC (6696); Inabensa USA, LLC (2747); Nicsa Industrial Supplies LLC (9076); Teyma Construction USA, LLC (0362); Abeinsa Abener Teyma General Partnership (2513); Abener Teyma Mojave General Partnership (2353); Abener Teyma Hugoton General Partnership (7769); Abener Teyma Inabensa Mount Signal Joint Venture (9634); Teyma USA & Abener Engineering and Construction Services General Partnership (6534); Abengoa US Holding, LLC (6871); Abengoa US, LLC (9573); Abengoa US Operations, LLC (1268); Abengoa Bioenergy Hybrid of Kansas, LLC (9711); Abengoa Bioenergy Technology Holding, LLC (7434); Abengoa Bioenergy New Technologies, LLC (8466); Abengoa Bioenergy Holdco, Inc. (8864); and Abengoa Bioenergy Meramec Holding, Inc. (1803).

# TABLE OF CONTENTS

**Page**

ARTICLE I.    DEFINED TERMS AND RULES OF INTERPRETATION ......................................................1
    A.    Defined Terms ..........................................................................................................1
    B.    Rules of Interpretation..............................................................................................1
    C.    Exhibits ...................................................................................................................10

ARTICLE II.   ADMINISTRATIVE AND PRIORITY CLAIMS.....................................................10
    A.    Establishment of the Administrative Claims Bar Date............................................10
    B.    Administrative Claims.............................................................................................11
    C.    Professional Compensation and Reimbursement Claims .......................................11

ARTICLE III.  CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS.............11
    A.    Summary .................................................................................................................11
    B.    Classification and Treatment of Claims and Equity Interests for the EPC Reorganizing
        Debtors....................................................................................................................12
    C.    Classification and Treatment of Claims and Equity Interests for the Solar Reorganizing
        Debtor .....................................................................................................................16
    D.    Classification and Treatment of Claims and Equity Interests for EPC Liquidating Debtors ........18
    E.    Classification and Treatment of Claims and Equity Interests for Bioenergy and Maple
        Liquidating Debtors ................................................................................................20
    F.    Special Provision Governing Unimpaired Claims and Equity Interests ...................22

ARTICLE IV.   MEANS FOR IMPLEMENTATION OF THE PLAN.................................................22
    A.    The Master Restructuring Agreement .....................................................................22
    B.    The Responsible Person and Liquidating Trustee ...................................................22
    C.    The Litigation Trustee.............................................................................................23
    D.    Litigation Trust Proceeds........................................................................................23
    E.    Funding of Amounts Comprising Reorganization Distributions..............................23
    F.    Responsible Person to Effectuate Distributions ......................................................23
    G.    Sources of Consideration for Distributions Under the Plan of Reorganization.........24
    H.    Issuance of New Securities......................................................................................24
    I.     Securities Exemption ..............................................................................................24
    J.     Corporate Existence ................................................................................................25
    K.    Certificates of Incorporation and By-Laws or Certificates of Formation ................25
    L.    Vesting of Assets in the Reorganizing Debtors........................................................25
    M.    Funding of Litigation Fund......................................................................................25
    N.    Restructuring Transactions......................................................................................25
    O.    The Liquidating Trusts ............................................................................................25
    P.    Funding of Liquidating Trusts .................................................................................26
    Q.    Role of Liquidating Trustee .....................................................................................26
    R.    Role of the Responsible Person ...............................................................................26
    S.    Responsible Person's Tax Powers............................................................................27
    T.    The Litigation Trust ................................................................................................28
    U.    The Role of the Litigation Trustee ..........................................................................28
    V.    Cash .......................................................................................................................29
    W.    Costs and Expenses of the Responsible Person, the Liquidating Trustee, and the
        Litigation Trustee....................................................................................................29
    X.    Retention of Professionals by the Responsible Person, the Litigation Trustee, and
        Liquidating Trustee..................................................................................................29
    Y.    Tax Reporting..........................................................................................................29
    Z.    Dissolution..............................................................................................................29
    AA.   Indemnification of the Responsible Person, the Liquidating Trustee, and the Litigation
        Trustee....................................................................................................................30

# TABLE OF CONTENTS
(continued)

**Page**

BB.   Cancellation of Existing Securities and Agreements ................................................ 30
CC.   Operations of the Debtors Between the Confirmation Date and the Effective Date .... 30
DD.   Automatic Stay ....................................................................................................... 30
EE.   The Creditors' Committee ....................................................................................... 31
FF.   Books and Records .................................................................................................. 31
GG.   Corporate Action .................................................................................................... 31
HH.   Substantive Consolidation ...................................................................................... 31
II.   Allocation of Plan Distributions Between Principal and Interest .............................. 32

ARTICLE V.   PROVISIONS GOVERNING VOTING AND DISTRIBUTIONS ............................ 32
A.   Voting of Claims ..................................................................................................... 32
B.   Distribution Dates ................................................................................................... 32
C.   Disbursing Agents .................................................................................................. 32
D.   Record Date for Distributions ................................................................................. 32
E.   Delivery of Distributions ......................................................................................... 33
F.   Undeliverable and Unclaimed Distributions ............................................................ 33
G.   Manner of Cash Payments Under the Plan .............................................................. 33
H.   Compliance with Tax Requirements ........................................................................ 33
I.   No Payments of Fractional Dollars .......................................................................... 34
J.   Interest on Claims ................................................................................................... 34
K.   No Distribution in Excess of Allowed Amount of Claim .......................................... 34
L.   Setoff and Recoupment ........................................................................................... 34
M.   De Minimis Distributions; Charitable Donation ...................................................... 34
N.   U.S. Trustee Fees .................................................................................................... 34
O.   Withholding from Distributions ............................................................................... 35
P.   No Distributions on Late-Filed Claims .................................................................... 35
Q.   Nonconsensual Confirmation .................................................................................. 35

ARTICLE VI.   DISPUTED CLAIMS ............................................................................................. 35
A.   Disputed Claims Reserve ......................................................................................... 35
B.   Resolution of Disputed Claims ................................................................................ 35
C.   Objection Deadline ................................................................................................. 36
D.   Estimation of Claims ............................................................................................... 36
E.   No Distributions Pending Allowance ....................................................................... 36
F.   Resolution of Claims ............................................................................................... 37

ARTICLE VII.   TREATMENT OF EXECUTORY CONTRACTS .................................................. 37
A.   Assumption or Rejection of Executory Contracts and Unexpired Leases ................. 37
B.   Claims Based on Rejection of Executory Contracts and Unexpired Leases ............... 37
C.   Claims Based on Cure Amounts Related to Assumed Executory Contracts and Unexpired Leases ................................................................................................................... 37
D.   Indemnification and Reimbursement ....................................................................... 37
E.   Certain Insurance Policy Matters ............................................................................ 38

ARTICLE VIII.   CONDITIONS PRECEDENT ................................................................................. 38
A.   Conditions Precedent .............................................................................................. 38
B.   Waiver ................................................................................................................... 38
C.   Effect of Failure of Conditions ................................................................................ 39
D.   Substantial Consummation ...................................................................................... 39
E.   Notice of Effective Date .......................................................................................... 39

ARTICLE IX.   INDEMNIFICATION, RELEASE, INJUNCTIVE, AND RELATED PROVISIONS ............... 39

# TABLE OF CONTENTS
(continued)

|  |  | Page |
|---|---|---|
| A. | Compromise and Settlement | 39 |
| B. | Releases | 40 |
| C. | Exculpation | 41 |
| D. | Restrictions on Actions Against Go Forward Companies with Respect to Guarantees | 41 |
| E. | Preservation of Causes of Action | 41 |
| F. | Injunction | 41 |
| G. | Releases of Liens | 42 |
|  |  | 43 |
| ARTICLE X. | RETENTION OF JURISDICTION | 44 |
| ARTICLE XI. | MISCELLANEOUS PROVISIONS | 45 |
| A. | Modification of Plan | 45 |
| B. | Revocation of Plan | 45 |
| C. | Binding Effect | 45 |
| D. | Successors and Assigns | 45 |
| E. | Governing Law | 45 |
| F. | Reservation of Rights | 45 |
| G. | Article 1146 Exemption | 46 |
| H. | Section 1125(e) Good Faith Compliance | 46 |
| I. | Further Assurances | 46 |
| J. | Service of Documents | 46 |
| K. | Filing of Additional Documents | 46 |
| L. | No Stay of Confirmation Order | 48 |

The Debtors in the above-captioned cases hereby respectfully propose the following *Debtors' First Amended Plans of Reorganization and Liquidation* under chapter 11 of the Bankruptcy Code.[2]

## ARTICLE I.

## DEFINED TERMS AND RULES OF INTERPRETATION

**A.   Defined Terms**

Unless the context requires, the following terms shall have the following meanings when used in capitalized form in this Plan:

1.   "*ACIL*" means Abengoa Concessions Investments Limited, a company incorporated in England & Wales with company number 08818214, having its registered office at St Martin's House, 1 Lyric Square, London W6 0NB.

2.   "*ACIL CVA*" has the meaning given to it in the Master Restructuring Agreement.

3.   "*Accrued Professional Compensation*" means, at any given moment, all accrued and unpaid fees and expenses (including, without limitation, fees or expenses Allowed or awarded by a Final Order of the Bankruptcy Court) for legal, financial advisory, accounting, liquidation, and other professional services and reimbursement of expenses of Professionals that are awardable and allowable under sections 328, 330(a), or 331 of the Bankruptcy Code, or otherwise rendered prior to the Effective Date, including in connection with (a) applications filed in accordance with the Bankruptcy Code and Bankruptcy Rules; (b) motions seeking the enforcement of the provisions of the Plan or Confirmation Order, by all Professionals in the Chapter 11 Cases that the Bankruptcy Court has not denied by a Final Order, to the extent that any Allowed fees and expenses have not been paid previously, regardless of whether a fee application has been filed for any amount; and (c) applications for allowance of Administrative Claims arising under sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(6) of the Bankruptcy Code. To the extent the Bankruptcy Court or any higher court denies by a Final Order any amount of a Professional's fees or expenses, then those amounts shall no longer be Accrued Professional Compensation.

4.   "*Administrative Claims*" means Claims that have been filed timely and properly before the Administrative Claims Bar Date set forth in the Confirmation Order (except as otherwise provided by a separate order of the Bankruptcy Court), for costs and expenses of administration under sections 503(b), 507(b), or 1114(e)(2) of the Bankruptcy Code, including, without limitation:   the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries or commissions for services and payments for goods and other services and leased premises). Any fees or charges assessed against the Estates under section 1930 of chapter 123 of title 28 of the United States Code are excluded from the definition of Administrative Claims and shall be paid in accordance with Article V.N of the Plan. Notwithstanding anything to the contrary in this Plan, the filing of an Administrative Claim shall not be required in order to receive payment for any tax liability described in sections 503(b)(1)(B) and (C) in accordance with section 503(b)(1)(D) of the Bankruptcy Code.

5.   "*Administrative Claims Bar Date*" means the first Business Day that is thirty (30) days after the Effective Date and is the deadline for a Holder of an Administrative Claim to file a request with the Bankruptcy Court for payment of an Administrative Claim in the manner indicated in Article II of this Plan.

6.   "*Administration Costs*" shall have the meaning set forth in the Master Restructuring Agreement.

7.   "*Allowed*" means, with respect to any Claim against the Debtors, except as otherwise provided in this Plan: (a) a Claim that has been scheduled by the Debtors in their Schedules as other than Disputed, contingent, or unliquidated and as to which the Debtors or other parties-in-interest have not filed an objection by the Claims Objection Bar Date; (b) a Claim filed in the Chapter 11 Cases and that either is not Disputed or has been allowed by a

---

[2]   Capitalized terms used in this Plan that are not defined in Article I.A. of this Plan shall have the meanings given to them in the Master Restructuring Agreement.

1

Final Order; or (c) a Claim filed in the Chapter 11 Cases that is Allowed: (i) in any stipulation of amount and nature of Claim executed prior to the Effective Date and approved by the Bankruptcy Court; (ii) in any stipulation or written agreement with the Responsible Person, Litigation Trustee, or Liquidating Trustee, as applicable, of amount and nature of Claim executed on or after the Effective Date; or (iii) by any contract, instrument, or other agreement entered into or assumed in connection with this Plan; or (d) a Claim that is Allowed by this Plan; or (e) a Disputed Claim that the Debtors, Responsible Person, or the Liquidating Trustee (as applicable) ultimately determine will not be the subject of an objection; or (f) a Disputed Claim that was the subject of an objection but to which the Debtors, the Responsible Person, the Litigation Trustee, or the Liquidating Trustee, or any other party in interest (as applicable), withdrew such objection.

8. "*Alternative Restructuring Terms*" shall have the meaning given to it in the Master Restructuring Agreement.

9. "*Bankruptcy Code*" means sections 101 *et seq.* of title 11 of the United States Code and the applicable portions of titles 18 and 28 of the United States Code.

10. "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware, having jurisdiction over the Chapter 11 Cases and, to the extent of any withdrawal of the reference made pursuant to section 157 of title 28 of the United States Code, the unit of such District Court pursuant to section 151 of title 28 of the United States Code.

11. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, promulgated under section 2075 of title 28 of the United States Code, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware, and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Cases and as amended from time to time.

12. "*Bar Date Order*" means the order of the Bankruptcy Court dated July 28, 2016 [D.I. 443], establishing the General Bar Date, with only those exceptions permitted thereby.

13. "*Bioenergy and Maple Liquidating Debtors*" means Abengoa Bioenergy Hybrid of Kansas, LLC, Abengoa Bioenergy Technology Holding, LLC, Abengoa Bioenergy Meramec Holding, Inc., and Abengoa Bioenergy Holdco, Inc.

14. "*Bioenergy and Maple Liquidating Distribution*" means any remaining assets including Cash on hand and all Causes of Action except against the Go Forward Companies in the Bioenergy and Maple Liquidating Trust, plus $750,000 Cash to be funded to the Bioenergy and Maple Liquidating Trust by the Parent, and Equity Interest in Abengoa Bioenergy Meramec Renewable, LLC, the equity value in any U.S. non-debtor subsidiary, direct or indirect, of a Bioenergy and Maple Liquidating Debtor, and any Equity Interest in Abengoa Bioenergy Biomass of Kansas, LLC.

15. "*Bioenergy and Maple Liquidating Plan*" means this Plan for the Bioenergy and Maple Liquidating Debtors, described herein, including exhibits and supplements, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance herewith, with the Bankruptcy Code, or with the Bankruptcy Rules, which Plan is in form and substance acceptable to the Restructuring Committee and the NM1 Committee.

16. "*Bioenergy and Maple Liquidating Trust*" means the liquidating trust created under the Plan and the Liquidating Trust Agreement.

17. "*Bioenergy and Maple Liquidating Trustee*" means the Person or Persons designated by the Creditors' Committee of the Bioenergy and Maple Liquidating Debtors identified in the Plan Supplement and any successor to that Person.

18. "*Books and Records*" means, with respect to each Debtor, all available books and records of that Debtor, including, without limitation, all documents and communications of any kind, whether physical or electronic.

19. "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)).

20. "*Carty Litigation*" means that certain litigation described in the Disclosure Statement surrounding the Carty Project (as defined in the Disclosure Statement).

21. "*Cash*" means cash and cash equivalents in certified or immediately available U.S. funds, including, but not limited to, bank deposits, checks, and similar items.

22. "*Causes of Action*" means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of setoff, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims (including, without limitation, all claims and any avoidance, preference, recovery, subordination or other actions against insiders or any other Entities under the Bankruptcy Code) against any Person or Entity, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted through the Effective Date; *provided, however,* that the Causes of Action shall exclude any Claims and Causes of Action against any Go Forward Companies, the Restructuring Committee, the NM1 Committee, any Consenting Existing Creditor that is a Holder of Existing Notes, any Consenting Other Creditor that is a Holder of Existing Notes, any New Money Financing Providers, or any Causes of Action or Claims that are released hereunder.

23. "*Chapter 11 Cases*" means the chapter 11 cases commenced when the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the Bankruptcy Court.

24. "*Claim*" means (a) a right to payment, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, Disputed, undisputed, legal, equitable, secured, or unsecured; (b) a right to an equitable remedy for breach of performance if the breach gives rise to a right to payment, whether or not the equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, Disputed, undisputed, secured, or unsecured; or (c) any other claim, as defined in section 101(5) of the Bankruptcy Code.

25. "*Claims Agent*" means Prime Clerk, the Bankruptcy Court appointed claims and noticing agent in the Chapter 11 Cases.

26. "*Claims Objection Bar Date*" means the bar date for objecting to proofs of Claim, which shall be one hundred twenty (120) days after the Effective Date; *provided, however,* that the Debtors, the Responsible Person, or the Liquidating Trustee, as applicable, may seek additional extensions of this date from the Bankruptcy Court, with notice only to those parties entitled to notice in the Chapter 11 Cases under Bankruptcy Rule 2002. A party requesting to extend the Claims Objection Bar Date may specify which entities may benefit from the requested extension.

27. "*Class*" means a category of Holders of Claims or Equity Interests as set forth in Article IIIII in this Plan and under section 1122(a) of the Bankruptcy Code.

28. "*Compromised Debt*" has the meaning given to it in the Master Restructuring Agreement.

29. "*Confirmation Date*" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

30. "*Confirmation Order*" means the order of the Bankruptcy Court (including all exhibits and schedules thereto) confirming the Plan under section 1129 of the Bankruptcy Code in form and substance satisfactory to the Debtors, the Creditors' Committee, the Restructuring Committee, and the NM1 Committee.

31.    "*Consenting Existing Creditors*" has the meaning given to it in the Master Restructuring Agreement.

32.    "*Consenting Other Creditor*" has the meaning given to it in the Master Restructuring Agreement.

33.    "*Controlled Funds*" has the meaning given to it under Article IV.F.3. of this Plan, and, for the avoidance of doubt, shall not include the Professional Fee Reserve, the Reorganizing Post-Confirmation Reserves, or the Surety Reserve.

34.    "*Creditor*" has the meaning in section 101(10) of the Bankruptcy Code.

35.    "*Creditors' Committee*" means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases by the U.S. Trustee.

36.    "*Cure Amounts*" means amounts, if any, outstanding in connection with the Debtors' assumption of one or more executory contracts or unexpired leases approved by a prior, final order of the Bankruptcy Court or which are listed in the Plan Supplement and will be assumed on the Effective Date.

37.    "*Debt Bonding Claims*" means the debt arising from bonding lines described in Part C or D of the Schedule 6 of the Master Restructuring Agreement, which is comprised of bonding lines defined in the Master Restructuring Agreement as the "Uncalled Existing Bonding Facilities" and the "Called Existing Bonding Facilities" and such other bonding claims.

38.    "*Debtor Releasing Parties*" has the meaning given to it under Article IX.B.1 of this Plan.

39.    "*Debtors*" means collectively, the EPC Reorganizing Debtors, the Solar Reorganizing Debtor, the EPC Liquidating Debtors, and the Bioenergy and Maple Liquidating Debtors, and where applicable, the Estates thereof.

40.    "*Disbursement Request*" has the meaning given to it under Article IV.F.3. of this Plan.

41.    "*Disbursing Agent*" means the Person or Entity empowered and authorized to make all Distributions under this Plan.

42.    "*Disclosure Statement*" means that certain *Debtors' Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code*, including, without limitation, all exhibits and schedules thereto, as amended, supplemented or modified from time to time, filed on the date hereof, which was approved by Final Order of the Bankruptcy Court on October 31, 2016 [D.I. 746].

43.    "*Disputed*" means, with respect to any Claim: (a) listed on the Schedules as unliquidated, disputed, or contingent, unless a proof of Claim has been filed in a liquidated, non-contingent amount; (b) as to which the Debtors, the Responsible Person, the Litigation Trustee, the Liquidating Trustee, or any other party in interest, has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules; or (c) as otherwise disputed in accordance with applicable bankruptcy or insolvency law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

44.    "*Disputed Claims Reserve*" means the reserve funds created in compliance with Article VI.A. of this Plan.

45.    "*Distributions*" means the distributions of Cash to be made in accordance with the Plan.

46.    "*Effective Date*" means a Business Day selected by the Debtors that is on or after the date by which all conditions precedent specified in Article VIII of the Plan have been satisfied or waived. Within five (5) Business days of the Effective Date, notice of the Effective Date shall be filed in the Bankruptcy Court.

47.     "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code and shall include any Person as such term is defined in section 101(41) of the Bankruptcy Code.

48.     "*EPC*" means the reorganized companies that comprise the EPC Reorganizing Debtors.

49.     "*EPC Liquidating Debtors*" means Abencor USA LLC, Abener Teyma Inabensa Mount Signal Joint Venture, Inabensa USA, LLC, and Nicsa Industrial Supplies LLC.

50.     "*EPC Liquidating Distribution*" means any remaining assets in the EPC Liquidating Trust, including Cash on hand, accounts receivable, and all causes of action except against the Go Forward Companies, plus $1.75 million Cash to be funded to the EPC Liquidating Trust ($1 million of which will be funded from the Escrow Cash, and $750,000 of which will be funded by the Parent), and the equity value in any U.S. non-Debtor subsidiary, direct or indirect, of an EPC Liquidating Debtor.

51.     "*EPC Liquidating Plan*" means this Plan for the EPC Liquidating Debtors, described herein, including exhibits and supplements, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance herewith, or with the Bankruptcy Code or the Bankruptcy Rules, which Plan is in form and substance acceptable to the Restructuring Committee and the NM1 Committee.

52.     "*EPC Liquidating Trust*" means the liquidating trust created under the Plan and the Liquidating Trust Agreement.

53.     "*EPC Liquidating Trustee*" means the Person or Persons designated by the Creditors' Committee of the EPC Liquidating Debtors, identified in the Plan Supplement, and any successor to that Person.

54.     "*EPC Reorganizing Debtors*" means Abener Teyma Mojave General Partnership, Abener North America Construction, LP, Abeinsa Abener Teyma General Partnership, Teyma Construction USA, LLC, Teyma USA & Abener Engineering and Construction Services General Partnership, Abeinsa EPC LLC, Abeinsa Holding Inc., Abener Teyma Hugoton General Partnership, Abengoa Bioenergy New Technologies, LLC, Abener Construction Services, LLC, Abengoa US Holding, LLC, Abengoa US, LLC, and Abengoa US Operations, LLC.

55.     "*EPC Reorganizing Debtors' Responsible Person*" means the Person the EPC Reorganizing Debtors may choose in their sole discretion to serve in the capacity of Responsible Person for the EPC Reorganizing Debtors.

56.     "*EPC Reorganizing Plan*" means this Plan for the EPC Reorganizing Debtors, described herein, including exhibits and supplements, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance herewith, or with the Bankruptcy Code or the Bankruptcy Rules, which Plan is in form and substance acceptable to the Restructuring Committee and the NM1 Committee.

57.     "*EPC Reorganization Distribution*" means (a) $24 million of the New Value Contribution (of which $4 million shall be used to increase the funds in the Litigation Trust), (b) the Litigation Trust Proceeds (the prosecution of Litigation Trust Causes of Action are to be funded by the Litigation Fund and/or the Litigation Trust Proceeds, and such other new value that may be provided, (c) Cash on hand net of the Reorganizing Post-Confirmation Reserve with respect to the EPC Reorganizing Debtors, (d) the proceeds of inventory, (e) the Pilot Plant, (f) certain tax assets in connection with the California Board of Equalization, (g) the Tax Attribute Contribution, (h) twenty-five percent (25%) of the Fulcrum Asset, and (i) twenty-five percent (25%) of the gross recovery of the Teyma Receivable.

58.     "*Equity Interest*" means any equity interest in a Debtor that existed immediately prior to the Petition Date.

59.     "*Escrow*" shall have the meaning set forth in Article 60. IV.E. herein.

60.     "*Escrow Cash*" shall have the meaning set forth in Article IV.E herein.

61.    "*Estates*" means the Debtors' estates created under section 541 of the Bankruptcy Code upon the filing of the Chapter 11 Cases.

62.    "*Existing Creditors*" has the meaning given to it in the Master Restructuring Agreement.

63.    "*Existing Loans*" has the meaning given to it in the Master Restructuring Agreement.

64.    "*Existing Loans/Notes*" has the meaning given to it in the Master Restructuring Agreement.

65.    "*Existing Notes*" has the meaning given to it in the Master Restructuring Agreement.

66.    "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

67.    "*Final Order*" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to file an appeal, motion for reconsideration or rehearing, or request for a stay has expired with no appeal, motion for reconsideration or rehearing, or request for a stay having been timely filed.

68.    "*Fulcrum Asset*" means in the event of a sale or transfer of the interests after the initial transfer to a new company (the "**Fulcrum NewCo**"), the proceeds from such sale or transfer (conducted at arm's length and in good faith), or, in the event of a non-sale, a fair determination of net profits and the residual value in the Fulcrum Project. For the avoidance of doubt, such sale or transfer may only be conducted at arm's length and in good faith.

69.    "*Fulcrum Project*" means that certain facility that will operate Feedstock MSW to Syncrude Product processing in Reno, Nevada, as more fully described in the Disclosure Statement.

70.    "*General Bar Date*" means September 26, 2016, as established in the Bar Date Order.

71.    "*General Unsecured Claims*" means Claims against any Debtor that are not Administrative Claims, Accrued Professional Compensation Claims, Secured Claims, Priority Tax Claims, Other Priority Claims, MRA Affected Debt Claims, US Debt Claims, Litigation Claims, Debt Bonding Claims, Intercompany Claims By Non-Debtor Affiliates (as set forth below), Intercompany Claims By Debtor Affiliates (as set forth below), or Equity Interests.

72.    "*Global Restructuring*" has the meaning given to it in Article IV.A hereof.

73.    "*Go Forward Chapter 11 Companies*" has the meaning given to it in the Master Restructuring Agreement.

74.    "*Go Forward Companies*" has the meaning given to it in the Master Restructuring Agreement.

75.    "*Holder*" means an Entity holding a Claim or Equity Interest.

76.    "*Impaired*" means "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests.

77.    "*Indemnified Persons*" means the Responsible Person, the Litigation Trustee, and the Liquidating Trustee, and the Responsible Person's, the Litigation Trustee's, and Liquidating Trustee's employees, officers, directors, agents, Representatives, and Professionals, as the case may be.

78.    "*Initial Litigation Trust Term*" has the meaning given to it in Article IV.T hereof.

79.    "*Intercompany Claims*" means Claims relating to an intercompany transfer of value to a Debtor by an Affiliate of a Debtor.

80.  "*Intercompany Claims by Debtor Affiliates*" are Claims relating to an intercompany transfer of value to a Debtor by a Debtor Affiliate or Subsidiary of a Debtor.

81.  "*Intercompany Claims by Non-Debtor Affiliates*" means Claims relating to an intercompany transfer of value to a Debtor by a Non-Debtor Affiliate.

82.  "*Lien*" means any lien, mortgage, charge, security interest, pledge, or other encumbrance against or interest in property to secure payment or performance of a Claim, debt, or litigation.

83.  "*Liquidating Debtors*" means, collectively, the Bioenergy and Maple Liquidating Debtors and the EPC Liquidating Debtors.

84.  "*Liquidating Trust Agreements*" means the agreements establishing the Liquidating Trusts, dated as of the Effective Date, in form and substance acceptable to the applicable Debtors, the Creditors' Committee, the Restructuring Committee, and the NM1 Committee.  The Debtors will file the final executed versions with the Bankruptcy Court five (5) days prior to the anticipated occurrence of the Effective Date.

85.  "*Liquidating Trust Distributable Cash*" means the Cash and any other assets of the Liquidating Trusts reduced to Cash net of all expenses and costs of operating the Liquidating Trusts and establishing any reserves as the Liquidating Trustee may determine is necessary in its sole discretion under the terms of the Liquidating Trust Agreement.

86.  "*Liquidating Trustee*" means the Bioenergy and Maple Liquidating Trustee or the EPC Liquidating Trustee, as applicable.

87.  "*Liquidating Trusts*" means the EPC Liquidating Trust and the Bioenergy and Maple Liquidating Trust.

88.  "*Litigation Claims*" means those claims against the Debtors that the Reorganizing Debtors shall hold as of the Effective Date of the Plan, including, but not limited to, Claims arising out of the Carty Litigation.

89.  "*Litigation Fund*" means those funds in the aggregate amount of $4 million of the New Value Contribution set aside for the prosecution of the Litigation Trust Causes of Action.

90.  "*Litigation Trust*" means the trust to be created on the Effective Date in accordance with this Plan and the Litigation Trust Agreement, for the benefit of Holders of Allowed Claims entitled to a portion of the EPC Reorganization Distribution.

91.  "*Litigation Trust Agreement*" means the agreement establishing the Litigation Trust, dated as of the Effective Date, in form and substance acceptable to the applicable Debtors, the Creditors' Committee, the Restructuring Committee, and the NM1 Committee.  The Debtors will file the final executed version with the Bankruptcy Court five (5) days prior to the anticipated occurrence of the Effective Date.

92.  "*Litigation Trust Causes of Action*" means those Claims and Causes of Action in the Plan Supplement; *provided, however,* that the Litigation Trust Causes of Action shall exclude any Claims and Causes of Action against any Go Forward Companies, the Restructuring Committee, the NM1 Committee, any Consenting Existing Creditor that is a Holder of Existing Notes, any Consenting Other Creditor that is a Holder of Existing Notes, any New Money Financing Providers, or any Causes of Action or Claims that are released hereunder.

93.  "*Litigation Trust Proceeds*" means the recoveries and proceeds from the Litigation Trust Causes of Action prosecuted, resolved, or otherwise settled by the Litigation Trustee.

94.  "*Litigation Trustee*" means the Person or Persons designated by the Creditors' Committee of the EPC Reorganizing Debtors identified in the Plan Supplement and any successor to that Person.

95.     "*Master Restructuring Agreement*" means that certain agreement, dated as of September 24, 2016, as amended, supplemented, or modified from time to time, by and among Parent, certain subsidiaries of Parent listed on schedule 1 thereto, the Original Participating Creditors, as defined therein, the Original Intragroup Creditors, as defined therein, Global Loan Agency Services Limited, Lucid Issuer Services Limited, and all other parties who sign or accede thereto, a copy of which is attached to the Disclosure Statement as **Exhibit H**.

96.     "*MRA Affected Debt*" means Non-Spanish Debt to be Restructured and the Compromised Debt.

97.     "*MRA Affected Debt Claim*" means any Claim of a Holder of Existing Loans/Notes against an EPC Reorganizing Debtor arising from a guarantee provided by such Debtor in respect of such Existing Loans/Notes (excluding any Claim in respect of Administration Costs).

98.     "*New Money Financing Anchor Funders*" has the meaning given to it in the Master Restructuring Agreement.

99.     "*New Money Financing Providers*" has the meaning given to it in the Master Restructuring Agreement and, for the avoidance of doubt shall include the New Money Financing Anchor Funders.

100.    "*New Securities*" means the new Class A shares and Class B shares to be issued by Parent under and in accordance with the terms and conditions of the Master Restructuring Agreement.

101.    "*New Value Contribution*" means $38.0 million to be funded by the Parent or from the Escrow Cash, the Tax Attribute Contribution, the security provided by virtue of the Escrow Cash, subject to the terms herein, plus the payment of the fees and costs of Société Générale S.A., Deutsche Trustee Company Limited, and Deutsche Bank Trust Company Americas under the Notes (as defined in the Disclosure Statement) associated with the Chapter 11 Cases but only to the extent that such fees are not otherwise paid by the Parent, and such other amounts and value that may be provided.

102.    "*NM1 Committee*" has the meaning given to it in the Master Restructuring Agreement.

103.    "*Non-Compromised Debt*" has the meaning given to it in the Master Restructuring Agreement.

104.    "*Non-Debtor Affiliates*" shall mean all affiliates of the Debtors who are not debtors in these jointly administered Chapter 11 Cases.

105.    "*Non-Spanish Compromise Proceedings*" has the meaning given to it in the Master Restructuring Agreement.

106.    "*Non-Spanish Debt to be Restructured*" has the meaning given to it in the Master Restructuring Agreement.

107.    "*Note Agents*" means those Note Agents (as defined in the Master Restructuring Agreement) but in each case solely in their capacity as trustee, fiscal agent, paying agent, transfer agent, registrar, note custodian, depository, commissioner or legal owner (as applicable) in respect of the Existing Notes issued or guaranteed by any of the Debtors.

108.    "*Other Priority Claims*" means Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than Priority Tax Claims.

109.    "*Parent*" means Abengoa, S.A.

110.    "*Person*" means an individual, partnership, corporation, limited liability company, cooperative, trust, estate, unincorporated organization, association, joint venture, government unit or agency or political subdivision thereof, or any other form of legal entity or enterprise.

111.    "*Petition Date*" means (a) with respect to the EPC Liquidating Debtors, the Solar Reorganizing Debtor, Abeinsa Holding, Inc., Abeinsa EPC LLC, Abener Construction Services, LLC, Abener North America Construction, LP, Abeinsa Abener Teyma General Partnership, Abener Teyma Mojave General Partnership, Teyma USA & Abener Engineering and Construction Services General Partnership, and Teyma Construction USA, LLC, March 29, 2016, (b) with respect to Abener Teyma Hugoton General Partnership, Abengoa Bioenergy Hybrid of Kansas, LLC, Abengoa Bioenergy New Technologies, LLC, and Abengoa Bioenergy Technology Holding, LLC, April 6, 2016, (c) with respect to Abengoa US Holding, LLC, Abengoa US, LLC, and Abengoa US Operations, LLC, April 7, 2016, and (d) with respect to Abengoa Bioenergy Meramec Holding, Inc. and Abengoa Bioenergy Holdco, Inc., June 12, 2016.

112.    "*Pilot Plant*" means that certain pilot plant owned by Abengoa Bioenergy New Technologies, LLC in York, Nebraska.

113.    "*Plan*" means, collectively, the Plan of Liquidation and Plan of Reorganization.

114.    "*Plan of Liquidation*" means, collectively, the EPC Liquidating Plan and the Bioenergy and Maple Liquidating Plan.

115.    "*Plan of Reorganization*" means, collectively, the EPC Reorganizing Plan and the Solar Reorganizing Plan.

116.    "*Plan Supplement*" means one or more supplements to the Plan containing certain schedules, documents and/or forms of documents relevant to the implementation of the Plan including, without limitation, (i) the identity of the new members of the board of directors or managers, as applicable, for each of the EPC Reorganizing Debtors and the Solar Reorganizing Debtor, (ii) the identity and compensation for the officers of each of the EPC Reorganizing Debtors and the Solar Reorganizing Debtor, (iii) the identity of the Liquidating Trustee, (iv) the schedule of assumed executory contracts and unexpired leases, (v) the schedule containing the Litigation Trust Causes of Action, (vi) finalized financial projections, (vii) the Litigation Trust Agreement, (viii) the Liquidating Trust Agreements, and (ix) other schedules, documents and/or forms necessary to comply with sections 1123(a)(7) and 1129(a)(5) of the Bankruptcy Code filed by the Debtors no later than seven (7) days before the Voting Deadline, all of which are incorporated into the Plan as if set forth in full.

117.    "*Priority Tax Claims*" means Claims of governmental units of the kind specified in section 507(a)(8) of the Bankruptcy Code.

118.    "*Privileges*" has the meaning given to it in Article IV.T hereof.

119.    "*Pro Rata*" means the proportion that the amount of a Claim in a particular Class or Classes bears to the aggregate amount of all Claims (including Disputed Claims, but excluding disallowed Claims) in such Class or Classes, unless this Plan provides otherwise.

120.    "*Professionals*" means any Person employed in the Chapter 11 Cases by a Final Order in accordance with sections 327, 328, or 1103 of the Bankruptcy Code, and to be compensated for services rendered prior to the Effective Date under sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

121.    "*Professional Fee Reserve*" means the reserve funds created in compliance with Article IV.F.4. of this Plan.

122.    "*Quarterly Reports*" has the meaning given to it in Article IV.P hereof.

123.    "*Released Parties*" means, each of the following solely in its capacity as such, collectively and individually, the (a) Debtors and their Representatives, (b) the Parent and its Representatives, (c)(i) each of the Note Agents, (ii) the Creditors' Committee, (iii) each of the Creditors' Committee's members (solely in their capacity as members), (iv) the Restructuring Committee, (v) the NM1 Committee, (vi) each of the Consenting Existing Creditors, (viii) each of the New Money Financing Providers, (ix) each of the Consenting Other Creditors, and (x) with respect

to each of the foregoing Entities or Persons in clause (c), their respective Representatives, Professionals, affiliates, subsidiaries, principals, partners, limited partners, general partners, shareholders, members, managers, management companies, investment managers, managed funds, as applicable, together with their successors and assigns.

124.    "*Reorganization Distributions*" means, collectively, the EPC Reorganization Distribution and the Solar Reorganization Distribution.

125.    "*Reorganizing Debtors*" means, collectively, the EPC Reorganizing Debtors and the Solar Reorganizing Debtor.[3]

126.    "*Reorganizing Post-Confirmation Reserves*" means the funds created in compliance with Article IV.F.5 of this Plan.

127.    "*Replacement Guarantee*" means the guarantee by any of the Go Forward Chapter 11 Companies in respect of any Existing Loans/Notes as to which the Standard Restructuring Terms are applied pursuant to the Master Restructuring Agreement or any Non-Spanish Compromise Proceedings.

128.    "*Representatives*" means, with regard to an Entity (including the Debtors), any current or former officers, directors, employees, attorneys, advisors, other Professionals, accountants, investment bankers, financial advisors, consultants, agents and other representatives (including their respective officers, directors, employees, independent contractors, members and professionals).

129.    "*Responsible Person*" means, as applicable, the Person designated by the EPC Reorganizing Debtors as the EPC Reorganizing Debtors' Responsible Person and the Person designated by the Solar Reorganizing Debtors as the Solar Reorganizing Debtor's Responsible Person, or any other Person the Reorganizing Debtors may choose, in consultation with the Creditors' Committee, to serve in that capacity for the applicable Reorganizing Debtors. The Responsible Person shall cooperate with the Litigation Trustee and the Liquidating Trustee, including, without limitation, as set forth in the Litigation Trust and the Liquidating Trusts.

130.    "*Restructuring Committee*" has the meaning given to it in the Master Restructuring Agreement.

131.    "*Retained Claims*" means any Claim against any EPC Reorganizing Debtor held by an Entity (or its Affiliates) who is a defendant in a Litigation Trust Cause of Action, or as to whom notification has been provided by the Litigation Trust to the Responsible Person that a potential claim is being evaluated or contemplated by the Litigation Trust against such Entity, the adjudication of which rights shall be exercised by the Litigation Trustee in consultation with the EPC Reorganizing Debtors or the Responsible Person.

132.    "*Schedules*" mean the schedules of assets and liabilities, schedules of executory contracts and statements of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code, as may be amended, modified or supplemented from time to time.

133.    "*Secured Claims*" means Claim(s) against the Debtors that are secured by a Lien on property in which the Estates have an interest, which Liens are valid, perfected, and enforceable under applicable law or by reason of a Final Order, or that are subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the Estates' interest in such property or to the extent of the amount subject to setoff, as applicable, as determined under section 506(a) of the Bankruptcy Code.

134.    "*Solar*" means the reorganized entity Abengoa Solar, LLC.

135.    "*Solar Reorganizing Debtor*" means Abengoa Solar, LLC.

---

[3]    Each of the Debtors represents that each of the financial statements that it provided with respect to the EPC Reorganizing Debtors and the EPC Liquidating Debtors, as applicable, and its respective non-Debtor subsidiaries, are true and accurate to the best of each of the Debtors' knowledge and ability.

136.    "*Solar Reorganizing Debtor's Responsible Person*" means the Person the Solar Reorganizing Debtor may choose in its sole discretion to serve as the Responsible Person for the Solar Reorganizing Debtor.

137.    "*Solar Reorganizing Plan*" means the Plan for the Solar Reorganizing Debtor, described herein, including exhibits and supplements, either in its present form or as it may be altered, amended, modified or supplemented from time to time in accordance with the Bankruptcy Code or the Bankruptcy Rules.

138.    "*Solar Reorganization Distribution*" means Cash on hand of the Solar Reorganizing Debtors, net of the Reorganizing Post-Confirmation Reserves for the Solar Reorganizing Debtor.

139.    "*Solicitation Procedures Order*" means any order, including the exhibits and schedules thereto, entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan and approving the Disclosure Statement, which order shall be in form and substance acceptable to the Restructuring Committee and the NM1 Committee.

140.    "*Spanish Restructuring*" means the agreement reached by the Parties to the Master Restructuring Agreement for the overall restructuring of the Affected Debt and the Non-Spanish Debt to be Restructured, each as defined in the Master Restructuring Agreement, which is required in accordance with the Viability Plan, as defined in the Master Restructuring Agreement, for the continuity of the Group, as defined in the Master Restructuring Agreement, as a going concern.

141.    "*Standard Restructuring Terms*" has the meaning given to it in the Master Restructuring Agreement.

142.    "*Supplemental Litigation Trust Term*" has the meaning given to it in Article IV.T hereof.

143.    "*Sureties*" means Atlantic Specialty Insurance Company (a/k/a OneBeacon Insurance Group and OneBeacon Surety, and any other aliases thereof), Fidelity & Deposit Company of Maryland, Liberty Mutual Insurance Company, Zurich American Insurance Company (with respect to proofs of claim nos. 588, 561, 684, 662, 622, 752, 786, 649, 658, and 624 only), RLI Insurance Company, and Nationwide Mutual Insurance Company.

144.    "*Surety Reserve*" means $6.5 million from the funds being retained hereunder by Holders of Equity Interests in Solar Reorganizing Debtors Class 8 (Equity Interests), of which the Parent is the ultimate beneficiary, and which the Parent is gifting to Surety Reserve Beneficiaries.

145.    "*Surety Reserve Beneficiaries*" means the Sureties, except RLI Insurance Company.

146.    "*Tax Attribute Contribution*" means an amount equal to twenty-five percent (25%) of the cash tax savings (including, without limitation, any cash tax refunds) or other tax reductions (whether or not resulting in a cash item), plus applicable interest, actually received or realized (directly or indirectly) by the Parent or any of its current or future affiliates or any successors thereto (collectively, the "Parent Group") within three (3) years after the Effective Date attributable to any U.S. federal, state or local Tax Attribute (as defined in the immediately succeeding sentence) of any of the Debtors (the "Tax Benefit Amount"). "Tax Attribute" means any net operating loss ("NOL"), NOL carryforward, NOL carryback, capital loss ("CL"), CL carryforward, CL carryback or tax credit of any Debtor attributable to any taxable year ending prior to the fourth taxable year beginning after the Effective Date. The Tax Benefit Amount shall promptly be paid in cash in U.S. dollars to the Litigation Trustee as soon as practicable after receipt (if a cash tax refund or other cash item) or after the filing of the relevant tax return (if a non-cash item). For each taxable year for which a Tax Benefit Amount could be paid, Parent shall engage at its sole cost and expense a nationally recognized U.S. accounting firm to prepare a schedule, certified by the CFO or CEO of the applicable taxpayer, showing in reasonable detail the calculation of the Tax Benefit Amount (the "Tax Benefit Amount Schedule"). The Tax Benefit Amount Schedule shall be delivered to the Litigation Trustee (for its review and comments) no later than the due date (taking into account extensions) for the filing of the relevant tax returns for such year.

147.    "*Tax Code*" means the United States Internal Revenue Code of 1986, as amended.

148.    *"Tax Returns"* means all tax returns, reports, certificates, forms, or similar statements or documents, including amended tax returns or requests for refunds.

149.    *"Teyma Receivable"* means that certain $22.9 million contingent receivable held by Abener Teyma Mojave General Partnership against Mojave Solar LLC in the event Abener Teyma Mojave General Partnership recovers such receivable, which is comprised of subordinated debt, contributed by Abener Teyma Mojave General Partnership as delay damages under certain subordinated loan agreement dated on October 20, 2014, that would be recovered from excess production, from Mojave Solar LLC, in accordance with the terms of the subordinated Loan Agreement.

150.    *"US Debt Claim"* means any Claim of a Holder of Non-Spanish Debt to be Restructured under the Master Restructuring Agreement that is not in Class 3A of the EPC Reorganizing Plan or Class 6 of the EPC Reorganizing Plan or the Solar Reorganizing Plan; *provided*, that the Allowed amount of the US Debt Claims will be reduced by the write off afforded those Claims under and in accordance with the Master Restructuring Agreement.

151.    *"U.S. Trustee"* means the United States Trustee appointed under section 581 of title 28 of the United States Code to serve in the District of Delaware.

152.    *"Unimpaired"* means not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests.

153.    *"Voting Deadline"* means the date by which Creditors entitled to vote to accept or reject the Plan must submit their ballot(s) in accordance with the terms and instructions set forth in the Solicitation Procedures Order, which date shall be November 29, 2016 at 4:00 p.m. (prevailing Eastern Time), or such other date established by the Bankruptcy Court.

154.    *"Voting Record Date"* is November 24, 2016.

**B.    Rules of Interpretation**

1.    For purposes of this Plan:  (a) in the appropriate context, each term, whether stated in the singular or the plural, includes both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender include the masculine, feminine and the neutral gender; (b) any reference in this Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference in this Plan to an existing document or exhibit having been filed or to be filed means that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references in this Plan to "Articles" are references to Articles hereof or hereto; (e) the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.    The provisions of Federal Rule of Bankruptcy Procedure 9006(a) shall apply in computing any period of time prescribed or Allowed hereby.

3.    All references in this Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

**C.    Exhibits**

All exhibits and schedules, if any, to the Plan, including the Plan Supplement, are incorporated into and are part of the Plan as if set forth here.  All exhibits and schedules to the Plan shall be filed with the Clerk of the Bankruptcy Court no later than at least seven (7) days before the Voting Deadline.  The public may inspect these

exhibits at the office of the Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court. The Debtors will also post the exhibits on the Debtors' Claims Agent's website at https://cases.primeclerk.com/abeinsa. Holders of Claims or Equity Interests may also request a copy of the exhibits, once filed, from the Debtors' Claims Agent by a written request sent to the following address:

Abeinsa Holding Inc. Claims Processing Center
c/o Prime Clerk LLC
830 Third Avenue, 3rd Floor
New York, NY 10022

## ARTICLE II.

## ADMINISTRATIVE AND PRIORITY CLAIMS

A.    **Establishment of the Administrative Claims Bar Date**

1.    Except as otherwise provided, by 5:00 p.m., prevailing Eastern time, on the Administrative Claims Bar Date, any Person or Entity that seeks allowance of an Administrative Claim shall file with the Bankruptcy Court and serve on counsel for (i) the Debtors, (ii) the Creditors' Committee, and (iii) the Responsible Person, any request for payment of an Administrative Claim. Requests for payment of an Administrative Claim must include at a minimum: (i) the name of the Holder seeking allowance of an Administrative Claim; (ii) the amount of the Administrative Claim sought; (iii) the basis asserted for allowance of the Administrative Claim; and (iv) all supporting documentation that justify allowance of the Administrative Claim asserted.

2.    The request for payment of an Administrative Claim will be considered timely filed only if it is filed with the Bankruptcy Court and *actually received* by parties identified in Article II.A.1 by 5:00 p.m., prevailing Eastern time, on the Administrative Claims Bar Date. Requests for payment of Administrative Claims may **not** be delivered by facsimiles, telecopy, or electronic mail transmission.

3.    Notwithstanding anything in the Plan, the Debtors' and the Creditors' Committee's Professionals shall not be required to file a request for payment of any Administrative Claim by the Administrative Claims Bar Date for fees and expenses arising under sections 330, 331, or 503(b)(2-5) of the Bankruptcy Code, because Professionals will instead file final fee applications as required by the Bankruptcy Code, Bankruptcy Rules, and the Confirmation Order.

B.    **Administrative Claims**

In full and final satisfaction, settlement, release, and discharge of each Allowed Administrative Claim, except to the extent that a Holder of an Allowed Administrative Claim and the Responsible Person or the Liquidating Trustee, as applicable, agree in writing to less favorable treatment for such Administrative Claim, the Responsible Person or Liquidating Trustee, as applicable, shall pay in Cash, from the assets of the applicable Debtor's Estate, each Holder of an Allowed Administrative Claim an unpaid amount of that Allowed Administrative Claim as follows: (1) on the Effective Date or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as practicable thereafter); (2) if such Claim is Allowed after the Effective Date, on the date the Claim is Allowed or as soon as practicable after it is Allowed (or, if not then due, when due, or as soon as reasonably practicable); (3) when and upon terms as may be agreed upon by the Holder of the Allowed Administrative Claim and the Responsible Person; or (4) in accordance with any Final Order of the Bankruptcy Court; provided, however, that Administrative Claims will not include Administrative Claims filed after the Administrative Claims Bar Date or Administrative Claims filed or asserted under section 503(b)(9) of the Bankruptcy Code after the General Bar Date, unless the Responsible Person, in its discretion, chooses to treat those Claims as Administrative Claims.

## C.     Professional Compensation and Reimbursement Claims

The deadline for submission by Professionals for Bankruptcy Court approval of Accrued Professional Compensation shall be sixty (60) days after the Effective Date. Any Professional or other Person or Entity that is required to file and serve a request for approval of Accrued Professional Compensation that fails to file and serve a timely request will be forever barred, estopped, and enjoined from asserting any request for payment of Accrued Professional Compensation or participating in Distributions under the Plan on account thereof. All Professionals employed by the Debtors or the Creditors' Committee, shall provide to the Debtors an estimate of their Accrued Professional Compensation through the Effective Date (including an estimate for fees and expenses expected to be incurred after the Effective Date to prepare and prosecute allowance of final fee applications) within fifteen (15) days after entry of the Confirmation Order. Thereafter, but in any event no later than the Effective Date, the Debtors or the Parent shall fully fund an escrow account to provide for the payment of Professional Compensation such that the condition precedent in Article VIII.A.8 herein shall be deemed satisfied.

## ARTICLE III.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### A.     Summary

1.     The Plan is premised upon the separate substantive consolidation of the (a) EPC Reorganizing Debtors, (b) EPC Liquidating Debtors and (c) Bioenergy and Maple Liquidating Debtors, as set forth in more detail below, for the purposes of determining which Claims and Equity Interests will be entitled to vote to accept or reject the Plan, confirmation of the Plan, and the resultant treatment of and cancellation of Claims and Equity Interests and distribution of assets, interests, and other property under the terms of this Plan. Accordingly, the Plan shall serve as a motion of the Debtors seeking entry of a Bankruptcy Court order approving the substantive consolidation of the Debtors as provided for in this Plan.

2.     In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims and the Plan describes their treatment under this Plan in Article II hereof.

3.     The following tables classify Claims against and Equity Interests in the Debtors for all purposes, including voting, confirmation, and Distribution under this Plan and in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of a Claim or Equity Interest qualifies within the description of a different Class. A Claim or Equity Interest is in a particular Class only if the Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date. Each Class set forth below is treated under this Plan as a distinct Class for voting and Distribution purposes.

### B.     Classification and Treatment of Claims and Equity Interests for the EPC Reorganizing Debtors

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| EPC Reorganizing 1 | Secured Claims | Unimpaired | Deemed to Accept |
| EPC Reorganizing 2A | Priority Tax Claims | Unimpaired | Deemed to Accept |
| EPC Reorganizing 2B | Other Priority Claims | Unimpaired | Deemed to Accept |
| EPC Reorganizing 3A | MRA Affected Debt Claims | Impaired | Entitled to Vote |
| EPC Reorganizing 3B | US Debt Claims | Impaired | Entitled to Vote |

| EPC Reorganizing 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| EPC Reorganizing 5 | Litigation Claims | Impaired | Entitled to Vote |
| EPC Reorganizing 6 | Debt Bonding Claims | Impaired | Entitled to Vote |
| EPC Reorganizing 7A | Intercompany Claims By Non-Debtor Affiliates | Impaired | Deemed to Accept |
| EPC Reorganizing 7B | Intercompany Claims By Debtor Affiliates | Impaired | Deemed to Reject |
| EPC Reorganizing 8 | Equity Interests | Unimpaired | Deemed to Accept |

2.   Secured Claims (EPC Reorganizing Class 1)

(a)   **Classification**: Class 1 consists of Secured Claims against the EPC Reorganizing Debtors to the extent that any exist.

(b)   **Treatment**: In full and final satisfaction, settlement, release, and discharge of each Allowed Secured Claim in Class 1, except to the extent that a Holder of an Allowed Secured Claim and the applicable Debtor or the Responsible Person agree in writing to a less favorable treatment for such Allowed Secured Claim, on or as soon as practicable after the Effective Date, to the extent any Secured Claims exist, such Holder of an Allowed Secured Claim in Class 1 will either be paid in full or will receive the Debtors' assets in which the Holder of a Secured Claim has an interest.

(c)   **Voting**: Class 1 is Unimpaired and, therefore, Holders of Secured Claims in Class 1 are not entitled to vote to accept or reject the Plan.

3.   Priority Tax Claims (EPC Reorganizing Class 2A)

(a)   **Classification**: Class 2A consists of Priority Tax Claims against the EPC Reorganizing Debtors.

(b)   **Treatment**: In full and final satisfaction, settlement, release, and discharge, each Allowed Priority Tax Claim will be paid in full on or as soon as practicable after the Effective Date, except to the extent that a Holder of an Allowed Priority Tax Claim and the applicable Debtor or the Responsible Person agree in writing to a less favorable treatment for such Allowed Priority Tax Claim.

(c)   **Voting**: Class 2A is Unimpaired and, therefore, Holders of Priority Tax Claims in Class 2A are not entitled to vote to accept or reject the Plan.

4.   Other Priority Claims (EPC Reorganizing Class 2B)

(a)   **Classification**: Class 2B consists of Other Priority Claims against the EPC Reorganizing Debtors.

(b)   **Treatment**: In full and final satisfaction, settlement, release, and discharge, each Allowed Other Priority Claim will be paid in full on or as soon as practicable after the Effective Date, except to the extent that a Holder of an Allowed Other Priority Claim and the applicable Debtor or the Responsible Person agree in writing to a less favorable treatment for such Allowed Other Priority Claim.

(c)     **Voting**: Class 2B is Unimpaired and, therefore, Holders of Other Priority Claims in Class 2B are not entitled to vote to accept or reject the Plan.

5.     MRA Affected Debt Claims (EPC Reorganizing Class 3A)

(a)     **Classification**: Class 3A consists of MRA Affected Debt Claims against the EPC Reorganizing Debtors.

(b)     **Treatment**: On or as soon as practicable after the Effective Date, each Holder of an MRA Affected Debt Claim will receive (i) a Replacement Guarantee based upon the application pursuant to the Master Restructuring Agreement of the Standard Restructuring Terms to the Existing Notes/ Loans in respect of which the guarantee obligation of the relevant Debtor arose, or (ii) such other treatment as agreed upon in writing by the Holder of the MRA Affected Debt Claim and the applicable EPC Reorganizing Debtor or Responsible Person.

(c)     **Voting**: Class 3A is Impaired and, therefore, Holders of MRA Affected Debt Claims in Class 3A are entitled to vote to accept or reject the Plan.

6.     US Debt Claims (EPC Reorganizing Class 3B)

(a)     **Classification**: Class 3B consists of US Debt Claims against the EPC Reorganizing Debtors.

(b)     **Treatment**: In full and final satisfaction, settlement, release, and discharge, each Holder of an Allowed US Debt Claim, on or as soon as practicable after the Effective Date, will receive a Pro Rata share of the EPC Reorganization Distribution, or such less favorable treatment as agreed upon in writing by the Holder of the US Debt Claim and the applicable Debtor or the Responsible Person.

(c)     **Voting**: Class 3B is Impaired and, therefore, Holders of US Debt Claims in Class 3A are entitled to vote to accept or reject the Plan.

7.     General Unsecured Claims (EPC Reorganizing Class 4)

(a)     **Classification**:   Class 4 consists of General Unsecured Claims against the EPC Reorganizing Debtors.

(b)     **Treatment**: In full and final satisfaction, settlement, release, and discharge, each Holder of an Allowed General Unsecured Claim, on or as soon as practicable after the Effective Date, shall receive its Pro Rata share of the EPC Reorganization Distribution, or  such less favorable treatment as the applicable Debtor or the Responsible Person and the Holder of an Allowed General Unsecured Claim may agree to in writing.

(c)     **Voting**: Class 4 is Impaired and, therefore, Holders of General Unsecured Claims in Class 4 are entitled to vote to accept or reject the Plan.

8.     Litigation Claims (EPC Reorganizing Class 5)

(a)     **Classification**:   Class 5 consists of Litigation Claims against the EPC Reorganizing Debtors.

(b)     **Treatment**:  In full and final satisfaction, settlement, release, and discharge, each Holder of an Allowed Litigation Claim, on or as practicable after the Effective Date, shall receive its Pro Rata share of the EPC Reorganization Distribution, or such less favorable treatment as the applicable Debtor or the Responsible Person and the Holder of an Allowed Litigation Claim may agree to in writing.

(c)     **Voting**: Class 5 is Impaired and, therefore, Holders of Litigation Claims in Class 5 are entitled to vote to accept or reject the Plan.

9.     Debt Bonding Claims (EPC Reorganizing Class 6)

(a)     **Classification**: Class 6 consists of Debt Bonding Claims against the EPC Reorganizing Debtors.

(b)     **Treatment**: In full and final satisfaction, settlement, release, and discharge, each Surety Reserve Beneficiary shall receive the greater of (a) its Pro Rata share of the Surety Reserve up to sixteen percent (16%) of its Allowed Claim(s), or (b) the percentage of the Distribution with respect to Allowed Claims of General Unsecured Creditors in Class 4.    If the Surety Reserve Beneficiaries' aggregate Distributions from the Surety Reserve under the Plan do not amount to $6.5 million, the difference between such aggregate amounts and $6.5 million shall be distributed to the EPC Reorganizing Debtors for purposes of effectuating the EPC Reorganizing Distribution under this Plan.    Each Surety Reserve Beneficiary shall have the right to settle all bond claims that are the basis for its Claim in this Class in its sole discretion and its Claims shall be Allowed in the amount of actual losses sustained on the basis thereof.

(c)     **Voting**: Class 6 is Impaired and, therefore, Holders of Debt Bonding Claims in Class 6 are entitled to vote to accept or reject the Plan.

10.     Intercompany Claims By Non-Debtor Affiliates (EPC Reorganizing Class 7A)

(a)     **Classification**:    Class 7A consists of Intercompany Claims By Non-Debtor Affiliates against the EPC Reorganizing Debtors.

(b)     **Treatment**: In full and final satisfaction, settlement, release, and discharge, each Holder of an Allowed Intercompany Claim By Non-Debtor Affiliates, on or as soon as practicable after the Effective Date, shall receive the Standard Restructuring Terms, or such other less favorable treatment as agreed upon in writing by the Holder of an Allowed Intercompany Claim by Non-Debtor Affiliates and the applicable Debtor or the Responsible Person.

(c)     **Voting**: Class 7A is Impaired and, therefore, Holders of Intercompany Claims By Non-Debtor Affiliates in Class 7A are Impaired and are deemed to have accepted the Plan and are not entitled to vote on the Plan to accept or reject the Plan.

11.     Intercompany Claims By Debtor Affiliates (EPC Reorganizing Class 7B)

(a)     **Classification**: Class 7B consists of Intercompany Claims By Debtor Affiliates against the EPC Reorganizing Debtors.

(b)     **Treatment**:    Holders of Intercompany Claims By Debtor Affiliates will receive no distribution under the Plan.

(c)     **Voting**: Class 7B is Impaired and, therefore, Holders of Intercompany Claims By Debtor Affiliates in Class 7B are deemed to have rejected the Plan and are not entitled to vote on the Plan to accept or reject the Plan.

12.     Equity Interests (EPC Reorganizing Class 8)

(a)     **Classification**: Class 8 consists of Equity Interests in the EPC Reorganizing Debtors.

(b)     **Treatment**:    Holders of Equity Interests in the EPC Reorganizing Debtors shall have their Equity Interests retained or reinstated.

(c)    **Voting**: Class 8 is Unimpaired and, therefore, Holders of Equity Interests in Class 8 are deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

C.    **Classification and Treatment of Claims and Equity Interests for the Solar Reorganizing Debtor**

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| Solar Reorganizing 1 | Secured Claims | Unimpaired | Deemed to Accept |
| Solar Reorganizing 2A | Priority Tax Claims | Unimpaired | Deemed to Accept |
| Solar Reorganizing 2B | Other Priority Claims | Unimpaired | Deemed to Accept |
| Solar Reorganizing 3 | US Debt Claims | Impaired | Entitled to Vote |
| Solar Reorganizing 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| Solar Reorganizing 5 | Litigation Claims | Impaired | Entitled to Vote |
| Solar Reorganizing 6 | Debt Bonding Claims | Impaired | Entitled to Vote |
| Solar Reorganizing 7A | Intercompany Claims By Non-Debtor Affiliates | Impaired | Deemed to Accept |
| Solar Reorganizing 7B | Intercompany Claims By Debtor Affiliates | Impaired | Deemed to Reject |
| Solar Reorganizing 8 | Equity Interests | Unimpaired | Deemed to Accept |

1.    Secured Claims (Solar Class 1)

(a)    **Classification**: Class 1 consists of Secured Claims against the Solar Reorganizing Debtor to the extent that any exist.

(b)    **Treatment**: In full and final satisfaction, settlement, release, and discharge of each Allowed Secured Claim in Class 1, except to the extent that a Holder of an Allowed Secured Claim and the Debtor or the Responsible Person agree in writing to a less favorable treatment for such Allowed Secured Claim, on or as soon as practicable after the Effective Date, to the extent any Secured Claims exist, such Allowed Secured Claim will either be paid in full or will receive the Debtors' assets in which the Holder of a Secured Claim has an interest.

(c)    **Voting**: Class 1 is Unimpaired and, therefore, Holders of Secured Claims in Class 1 are not entitled to vote to accept or reject the Plan.

2.    Priority Tax Claims (Solar Class 2A)

(a)    **Classification**: Class 2A consists of Priority Tax Claims against the Solar Reorganizing Debtor.

**(b)** **Treatment**: In full and final satisfaction, settlement, release, and discharge, each Allowed Priority Tax Claim will be paid in full on or as soon as practicable after the Effective Date, except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtor or the Responsible Person agree in writing to a less favorable treatment for such Allowed Priority Tax Claim.

**(c)** **Voting**: Class 2A is Unimpaired and, therefore, Holders of Priority Tax Claims in Class 2A are not entitled to vote to accept or reject the Plan.

3.    Other Priority Claims (Solar Class 2B)

**(a)** **Classification**: Class 2B consists of Other Priority Claims against the Solar Reorganizing Debtor.

**(b)** **Treatment**: In full and final satisfaction, settlement, release, and discharge, each Holder of an Allowed Other Priority Claim will be paid in full on or as soon as practicable after the Effective Date, except to the extent that a Holder of an Allowed Other Priority Claim and the Debtor or the Responsible Person agree in writing to a less favorable treatment for such Allowed Other Priority Claim.

**(c)** **Voting**: Class 2B is Unimpaired and, therefore, Holders of Other Priority Claims in Class 2B are not entitled to vote to accept or reject the Plan.

4.    US Debt Claims (Solar Class 3)

**(a)** **Classification**: Class 3 consists of US Debt Claims against the Solar Reorganizing Debtor.

**(b)** **Treatment**: In full and final satisfaction, release, and discharge, on or as soon as practicable after the Effective Date, each Holder of an Allowed US Debt Claim will receive a Pro Rata share of the Solar Reorganization Distribution, or such other lesser treatment as agreed upon in writing by the Holder of the Allowed US Debt Claim and the Debtor or the Responsible Person.

**(c)** **Voting**: Class 3 is Impaired and, therefore, Holders of US Debt Claims in Class 3 are entitled to vote to accept or reject the Plan.

5.    General Unsecured Claims (Solar Class 4)

**(a)** **Classification**:   Class 4 consists of General Unsecured Claims against the Solar Reorganizing Debtor.

**(b)** **Treatment**: In full and final satisfaction, settlement, release, and discharge of each Allowed General Unsecured Claim, on or as soon as practicable after the Effective Date, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the Solar Reorganization Distribution, or such less favorable treatment as the Debtor or the Responsible Person and the Holder of an Allowed General Unsecured Claim may agree to in writing.

**(c)** **Voting**: Class 4 is Impaired and, therefore, Holders of General Unsecured Claims in Class 4 are entitled to vote to accept or reject the Plan.

6.    Litigation Claims (Solar Class 5)

**(a)** **Classification**:   Class 5 consists of Litigation Claims against the Solar Reorganizing Debtor.

**(b)** **Treatment**: In full and final satisfaction, settlement, release, and discharge,  on or as soon as practicable after the Effective Date, each Holder of an Allowed Litigation Claim shall receive its Pro Rata

share of the Solar Reorganization Distribution, or such less favorable treatment as the Debtor or the Responsible Person and the Holder of an Allowed Litigation Claim may agree to in writing.

    **(c)**    **Voting**: Class 5 is Impaired and, therefore, Holders of Litigation Claims in Class 5 are entitled to vote to accept or reject the Plan.

7.    Debt Bonding Claims (Solar Class 6)

    **(a)**    **Classification**: Class 6 consists of Debt Bonding Claims against the Solar Reorganizing Debtor.

    **(b)**    **Treatment**: In full and final satisfaction, settlement, release, and discharge, each Holder of an Allowed Debt Bonding Claim, if any, shall, unless such Debt Bonding Claim has received alternative treatment under the Plan or the Confirmation Order, receive a Pro Rata share of the Solar Reorganizing Distribution or such less favorable treatment as agreed upon in writing by the Holder of an Allowed Debt Bonding Claim and the applicable Debtor or the Responsible Person.

    **(c)**    **Voting**: Class 6 is Impaired and, therefore, Holders of Debt Bonding Claims in Class 6 are entitled to vote to accept or reject the Plan.

8.    Intercompany Claims By Non-Debtor Affiliates (Solar Class 7A)

    **(a)**    **Classification**: Class 7A consists of Intercompany Claims By Non-Debtor Affiliates against the Solar Reorganizing Debtor.

    **(b)**    **Treatment**: In full and final satisfaction, settlement, release, and discharge of each Allowed Intercompany Claim By Non-Debtor Affiliates, on or as soon as practicable after the Effective Date, shall receive the Standard Restructuring Terms, or such other less favorable treatment as agreed upon in writing by the Holder of an Allowed Intercompany Claim by Non-Debtor Affiliates and the applicable Debtor or the Responsible Person.

    **(c)**    **Voting**: Holders of Intercompany Claims By Non-Debtor Affiliates are Impaired and, therefore, Holders of Intercompany Claims By Non-Debtor Affiliates in Class 7A are deemed to have accepted the Plan and are not entitled to vote on the Plan to accept or reject the Plan.

9.    Intercompany Claims By Debtor Affiliates (Solar Class 7B)

    **(a)**    **Classification**: Class 7B consists of Intercompany Claims By Debtor Affiliates against the Solar Reorganizing Debtor.

    **(b)**    **Treatment**: Holders of Intercompany Claims By Debtor Affiliates will receive no distribution under the Plan.

    **(c)**    **Voting**: Holders of Intercompany Claims By Debtor Affiliates in Class 7B are deemed to have rejected the Plan and are not entitled to vote on the Plan to accept or reject the Plan.

10.    Equity Interests (Solar Class 8)

    **(a)**    **Classification**: Class 8 consists of Equity Interests in the Solar Reorganizing Debtor.

    **(b)**    **Treatment**: Holders of Equity Interests in the Solar Reorganizing Debtor shall have their Equity Interests retained or reinstated.

    **(c)**    **Voting**: Holders of Equity Interests in Class 8 are deemed to have accepted the Plan and are not entitled to vote on the Plan to accept or reject the Plan.

**D.**     **Classification and Treatment of Claims and Equity Interests for EPC Liquidating Debtors.**

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| EPC Liquidating 1 | Secured Claims | Unimpaired | Deemed to Accept |
| EPC Liquidating 2A | Priority Tax Claims | Unimpaired | Deemed to Accept |
| EPC Liquidating 2B | Other Priority Claims | Unimpaired | Deemed to Accept |
| EPC Liquidating 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| EPC Liquidating 3A | US Debt Claims | Impaired | Entitled to Vote |
| EPC Liquidating 4 | Intercompany Claims | Impaired | Deemed to Reject |
| EPC Liquidating 5 | Equity Interests | Impaired and No Distribution | Deemed to Reject |

1.     Secured Claims (EPC Liquidating Class 1)

(a)     **Classification**: Class 1 consists of Secured Claims in the EPC Liquidating Debtors to the extent than any exist.

(b)     **Treatment**: In full and final satisfaction, on or as soon as practicable after the Effective Date, to the extent any Secured Claims exist, those Allowed Secured Claims will receive the collateral in which they hold an interest.

(c)     **Voting**: Class 1 is Unimpaired and, therefore, Holders of Secured Claims in Class 1 are not entitled to vote to accept or reject the Plan.

2.     Priority Tax Claims (EPC Liquidating Class 2A)

(a)     **Classification**: Class 2A consists of Priority Tax Claims in the EPC Liquidating Debtors.

(b)     **Treatment**:  In full and final satisfaction, on or as soon as practicable after the Effective Date, to the extent any Allowed Priority Tax Claims exist, they will be paid in full or in such lesser amount as the applicable Debtor or the Liquidating Trustee and the Holder of an Allowed Priority Tax Claim may agree to in writing.

(c)     **Voting**: Class 2A is Unimpaired and, therefore, Holders of Priority Tax Claims in Class 2 are not entitled to vote to accept or reject the Plan.

3.     Other Priority Claims (EPC Liquidating Class 2B)

(a)     **Classification**: Class 2B consists of Other Priority Claims in the EPC Liquidating Debtors.

(b)    **Treatment**: In full and final satisfaction, on or as soon as practicable after the Effective Date, to the extent any Allowed Other Priority Claims exist, they will be paid in full or in such lesser amount as the applicable Debtor or the Liquidating Trustee and the Holder of an Allowed Other Priority Claim may agree to in writing.

(c)    **Voting**: Class 2B is Unimpaired and, therefore, Holders of Other Priority Claims in Class 2B are not entitled to vote to accept or reject the Plan.

4.    General Unsecured Claims (EPC Liquidating Class 3)

(a)    **Classification**: Class 3 consists of General Unsecured Claims against the EPC Liquidating Debtors.

(b)    **Treatment**: In full and final satisfaction, on or as soon as practicable after the Effective Date, each Holder of an Allowed General Unsecured Claim shall receive (i) its Pro Rata share to be paid out of the EPC Liquidating Distribution, or (ii) such lesser amount as the applicable Debtor or the Liquidating Trustee and the Holder of an Allowed General Unsecured Claim may agree to in writing. With respect to Allowed Claims of the Sureties that are General Unsecured Creditors under the Plan of the EPC Liquidating Debtors, such Sureties may elect the Alternative Surety Treatment, as set forth herein.

(c)    **Voting**: Class 3 is Impaired and, therefore, Holders of General Unsecured Claims in Class 3 are entitled to vote to accept or reject the Plan.

5.    US Debt Claims (EPC Liquidating Class 3A)

(a)    **Classification**: Class 3A consists of US Debt Claims against the EPC Liquidating Debtors.

(b)    **Treatment**: In full and final satisfaction, on or as soon as practicable after the Effective Date, each Holder of an Allowed US Debt Claim will receive (i) a Pro Rata share of the EPC Liquidating Distribution, or (ii) such lesser amount as the applicable Debtor or the Liquidating Trustee and the Holder of an Allowed US Debt Claim may agree to in writing.

(c)    **Voting**: Class 3A is Impaired and, therefore, Holders of US Debt Claims in Class 3A are entitled to vote to accept or reject the Plan.

6.    Intercompany Claims (EPC Liquidating Class 4)

(a)    **Classification**:   Class 4 consists of Intercompany Claims against the EPC Liquidating Debtors.

(b)    **Treatment**: Holders of Intercompany Claims will receive no distribution under the Plan.

(c)    **Voting**: Class 4 is Impaired and, therefore, Holders of Intercompany Claims in Class 4 are deemed to have rejected the Plan and are not entitled to vote on the Plan to accept or reject the Plan.

7.    Equity Interests (EPC Liquidating Class 5)

(a)    **Classification**: Class 5 consists of Equity Interests in the EPC Liquidating Debtors.

(b)    **Treatment**:  Class 5 is Impaired and will receive no Distribution under the Plan.

(c)    **Voting**:   Class 5 is Impaired and therefore, Holders of Equity Interests in Class 5 are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

E.    **Classification and Treatment of Claims and Equity Interests for Bioenergy and Maple Liquidating Debtors.**

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| Bioenergy and Maple 1 | Secured Claims | Unimpaired | Deemed to Accept |
| Bioenergy and Maple 2A | Priority Tax Claims | Unimpaired | Deemed to Accept |
| Bioenergy and Maple 2B | Other Priority Claims | Unimpaired | Deemed to Accept |
| Bioenergy and Maple 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| Bioenergy and Maple 3A | US Debt Claims | Impaired | Entitled to Vote |
| Bioenergy and Maple 4 | Intercompany Claims | Impaired | Deemed to Reject |
| Bioenergy and Maple 5 | Equity Interests | Impaired and No Distribution | Deemed to Reject |

1.    Secured Claims (Bioenergy and Maple Class 1)

(a)    **Classification**: Class 1 consists of Secured Claims against the Bioenergy and Maple Liquidating Debtors to the extent that any exist.

(b)    **Treatment**: In full and final satisfaction, on or as soon as practicable after the Effective Date, to the extent any Secured Claims exist, those Allowed Secured Claims will receive the collateral in which they hold an interest.

(c)    **Voting**: Class 1 is Unimpaired and, therefore, Holders of Secured Claims in Class 1 are not entitled to vote to accept or reject the Plan.

2.    Priority Tax Claims (Bioenergy and Maple Class 2A)

(a)    **Classification**: Class 2A consists of Priority Tax Claims against the Bioenergy and Maple Liquidating Debtors.

(b)    **Treatment**: In full and final satisfaction, on or as soon as practicable after the Effective Date, to the extent any Allowed Priority Tax Claims exist, they will be paid in full or in such lesser amount as the applicable Debtor or the Liquidating Trustee and the Holder of an Allowed Priority Tax Claim may agree to in writing.

(c)    **Voting**: Class 2A is Unimpaired and, therefore, Holders of Priority Claims in Class 2A are not entitled to vote to accept or reject the Plan.

3.    Other Priority Claims (Bioenergy and Maple Class 2B)

(a)    **Classification**: Class 2B consists of Other Priority Claims against the Bioenergy and Maple Liquidating Debtors.

(b)    **Treatment**: In full and final satisfaction, on or as soon as practicable after the Effective Date, to the extent any Allowed Priority Claims exist, they will be paid in full or in such lesser amount as the

applicable Debtor or the Liquidating Trustee and the Holder of an Allowed Other Priority Claim may agree to in writing.

  **(c)**  **Voting**: Class 2B is Unimpaired and, therefore, Holders of Priority Claims in Class 2B are not entitled to vote to accept or reject the Plan.

  4.  General Unsecured Claims (Bioenergy and Maple Class 3)

  **(a)**  **Classification**: Class 3 consists of General Unsecured Claims against the Bioenergy and Maple Liquidating Debtors.

  **(b)**  **Treatment**: In full and final satisfaction, on or as soon as practicable after the Effective Date, each Holder of an Allowed General Unsecured Claim shall receive (i) its Pro Rata share to be paid out of the Bioenergy and Maple Liquidating Distribution, or (ii) such lesser amount as the applicable Debtor or the Liquidating Trustee and the Holder of an Allowed General Unsecured Claim may agree to in writing.

  **(c)**  **Voting**: Class 3 is Impaired and, therefore, Holders of General Unsecured Claims in Class 3 are entitled to vote to accept or reject the Plan.

  5.  US Debt Claims (Bioenergy and Maple Liquidating Class 3A)

  **(a)**  **Classification**: Class 3A consists of US Debt Claims against the Bioenergy and Maple Liquidating Debtors.

  **(b)**  **Treatment**: In full and final satisfaction, on or as soon as practicable after the Effective Date, each Holder of an Allowed US Debt Claim will receive (i) a Pro Rata share of the Bioenergy and Maple Liquidating Distribution, or (ii) such lesser amount as the applicable Debtor or the Liquidating Trustee and the Holder of an Allowed US Debt Claim may agree to in writing.

  **(c)**  **Voting**: Class 3A is Impaired and, therefore, Holders of US Debt Claims in Class 3A are entitled to vote to accept or reject the Plan.

  6.  Intercompany Claims (Bioenergy and Maple Class 4)

  **(a)**  **Classification**: Class 4 consists of Intercompany Claims against the Bioenergy and Maple Liquidating Debtors.

  **(b)**  **Treatment**: Holders of Intercompany Claims will receive no distribution under the Plan; *provided, however* that nothing herein shall affect, impair, eliminate, or otherwise impact the claim of Abengoa Bioenergy Company, LLC against Abengoa Bioenergy Hybrid of Kansas, LLC.

  **(c)**  **Voting**: Class 4 is Impaired, and therefore, Holders of Intercompany Claims in Class 4 are deemed to have rejected the Plan and are not entitled to vote on the Plan to accept or reject the Plan.

  7.  Equity Interests (Bioenergy and Maple Class 5)

  **(a)**  **Classification**: Class 5 consists of Equity Interests in the Bioenergy and Maple Liquidating Debtors.

  **(b)**  **Treatment**: Class 5 is Impaired and will receive no Distribution under the Plan.

  **(c)**  **Voting**: Class 5 will receive no Distribution under the Plan and therefore, Holders of Equity Interests in Class 5 are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

F.    **Special Provision Governing Unimpaired Claims and Equity Interests**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights with respect to any Unimpaired Claim, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any Unimpaired Claim.

## ARTICLE IV.

## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    **The Master Restructuring Agreement**

The Plan is sponsored by the Parent and is part of an integrated global restructuring (the "Global Restructuring") in which the Parent has negotiated with certain Holders of Affected Debt and Non-Spanish Debt to be Restructured and others for the compromise of their claims in exchange for the treatment provided to them and others under the Master Restructuring Agreement, namely, either the Standard Restructuring Terms, which is the treatment afforded to the Holders of MRA Affected Debt Claims and Holders of Intercompany Claims by Non-Debtor Affiliates under this Plan, or the Alternative Restructuring Terms, which the Existing Creditors may elect outside of and in addition to the provisions of this Plan. As a matter of private contract law, Existing Creditors may accede to the Master Restructuring Agreement and elect the Alternative Restructuring Terms or the Standard Restructuring Terms. This Plan has not proposed and does not provide the Alternative Restructuring Terms; rather, as a means of implementing the Global Restructuring, the Go Forward Chapter 11 Companies will provide the Replacement Guarantees.

The Master Restructuring Agreement, as sponsored by Parent, has provided for appropriate treatment under US law while at the same time facilitating the framework of the Spanish Restructuring to occur under and in accordance with Spanish law. The Debtors do not seek approval of the Master Restructuring Agreement or any of its terms; however, the Global Restructuring is closely integrated with the Chapter 11 Cases and creditors voting in favor of the Plan will be deemed to have accepted the treatment under this Plan notwithstanding any treatment that may be available to them under the Master Restructuring Agreement; *provided, however,* that Holders of Claims in Classes 3A, 3B, and 6 of the EPC Reorganizing Plan and Classes 3 and 6 of the Solar Reorganizing Plan may be entitled to participate in the Alternative Restructuring Terms under the Master Restructuring Agreement. The Go Forward Chapter 11 Companies are authorized under this Plan to facilitate the implementation of the Master Restructuring Agreement, and the Confirmation Order will provide them with the authority to do so, and may provide certain additional terms and protections to the Parent and other of its affiliates to further facilitate the Master Restructuring Agreement, including, but not limited to, providing for application of the exemption under section 1145 of the Bankruptcy Code from the registration requirements under section 5 of the Securities Act of 1933, as amended, in respect of the issuance to Consenting Existing Creditors, as defined in the Master Restructuring Agreement, by the Parent as a sponsor of the Plan of New Securities.

B.    **The Responsible Person and Liquidating Trustee**

The Responsible Person and Liquidating Trustee shall be deemed to have been appointed as the respective Estates' representative by the Bankruptcy Court under section 1123(b)(3)(B) of the Bankruptcy Code. The Responsible Person may be a Person in the employ of one of the Debtors. The Responsible Person shall represent the Estates of the Reorganizing Debtors and the Liquidating Trustee shall represent the Estates of the Liquidating Debtors. Each of the Responsible Person and Liquidating Trustee shall be entitled to retain counsel and other professionals to carry out their respective duties, including, but not limited to, pursuing the applicable Causes of Action transferred to them, whether known or unknown as of the Effective Date and irrespective of whether those Causes of Action have been identified or disclosed; *provided, however,* that with respect to the EPC Reorganizing Debtors, the Litigation Trustee will prosecute all Litigation Trust Causes of Action and adjudicate all Retained Claims and have other rights, duties, and powers set forth in this Plan, the Confirmation Order, and the Litigation Trust Agreement.

## C.    The Litigation Trustee

The Litigation Trustee shall be deemed to have been appointed as the representative of the EPC Reorganizing Debtors' Estates by the Bankruptcy Court under section 1123(b)(3)(B) of the Bankruptcy Code solely for the purpose of pursuing the Litigation Trust Causes of Action. The Litigation Trustee shall represent the Estates of the EPC Reorganizing Debtors solely with respect to the prosecution of Litigation Trust Causes of Action. The Litigation Trustee shall be entitled to retain counsel and other professionals to carry out its respective duties, including, but not limited to, pursuing the Litigation Trust Causes of Action transferred to them.

## D.    Litigation Trust Proceeds

Except as otherwise set forth herein, the Litigation Trust Proceeds shall be distributed to Holders of Allowed Claims against the EPC Reorganizing Debtors. Three million dollars ($3,000,000) of the Litigation Trust Proceeds shall revert back to the Parent only at such time as the Litigation Trust has obtained a net recovery on the Litigation Trust Causes of Action of more than twenty-eight million dollars ($28,000,000). Thereafter, all net proceeds from the Litigation Trust Causes of Action shall be divided equally between the Litigation Trust and the Reorganized Debtors until such time as the EPC Reorganizing Debtors have received three million dollars ($3,000,000). Thereafter, the remainder of the Litigation Trust Proceeds shall be distributable on account of Allowed Claims against the EPC Reorganizing Debtors and the Parent shall not be entitled to receive any further Litigation Trust Proceeds or other amounts or property from the Litigation Trust. All Litigation Trust Proceeds (other than the $3,000,000 that reverts to the Parent) shall, once transferred from the Litigation Trust to the Responsible Person for Distribution to the Holders of Allowed Claims against the EPC Reorganization Distribution, shall be held in trust by the Responsible Person solely for the benefit of such Holders and shall be distributed only to such Holders (or other Debtor groups as applicable).

## E.    Funding of Certain Amounts Comprising the New Value Contribution

As part of the Master Restructuring Agreement and in order to continue with the global restructuring and facilitate the Debtors' exit from Chapter 11, the Parent is proposing to fund the Plan for the restructuring and/or liquidation, as applicable, of the Debtors.

Commencing on, and in accordance with the schedule set forth below, the Parent, directly or from the Escrow Cash, shall starting making the following contributions: (i) $20 million from the Parent for the EPC Reorganizing Plan, (ii) $6.5 million from the Escrow Cash, which amount comprises the Surety Reserve, and (iii) $4 million from the Parent or from the Escrow Cash for the EPC Reorganizing Plan.

Within thirty (30) days after the Effective Date, the Parent shall fund (i) $3 million for the Litigation Trust related to the EPC Reorganizing Debtors, (ii) $1.75 million to the EPC Liquidating Plan ($1 million of which funds shall come from the Escrow Cash), and $750,000 from the Parent to the Bioenergy and Maple Liquidating Plan.

On the Effective Date, the following amounts shall be paid (i) $1 million in the aggregate for Zurich American Insurance Company from the Escrow Cash,  and (ii) $1 million for RLI Insurance Company from the Escrow Cash.

The Parent is not currently aware of any impediments to funding the foregoing amounts.

In addition, the proceeds from the sale of the Ashalim Project (as defined in the Disclosure Statement) held by Solar (net of amounts necessary to pay the estimated distributions to Holders of Allowed Claims in the Chapter 11 Case of the Solar Reorganizing Debtor, the Reorganizing Post-Confirmation Reserves for the Solar Reorganizing Debtor and fifty percent (50%) (which amounts to $2.5 million) of the reasonable and necessary costs to operate Solar and EPC) (the "**Escrow Cash**"), in an initial amount of no less than $24 million (which, for the avoidance of doubt, includes the aggregate $2 million payable to Zurich American Insurance Company and RLI Insurance Company referenced above in this Article IV.E) will be held in an escrow account (the "**Escrow**") until such time as all Cash contributions under the Plan from the Parent and Solar are paid, which amounts may be reduced as Cash contributions under the Plan from the Parent and Solar are made. In addition, the Escrow shall be reduced on a dollar-for-dollar basis as Cash contributions are made under this Plan by the Parent directly or from the Escrow Cash, subject to the obligations set forth in this Section IV.E above. The amount in the Escrow shall be no greater at

any given time than the amounts that are owed and unpaid by the Parent or Solar under the Plan. The amounts withheld from the Escrow to pay the estimated distribution to Holders of Allowed Claims in the Chapter 11 Case of the Solar Reorganizing Debtor shall only be used for such purpose, and to the extent any excess amounts are available and the amount in the Escrow is less than the amounts that are owed and unpaid by the Parent and Solar under the Plan, they shall be put into the Escrow.

The Cash consideration comprising the New Value Contribution to be made directly by the Parent and allocated to the EPC Reorganizing Debtors will be distributed as follows: (a) no later than fifteen (15) days following the Effective Date, an amount equal to thirty percent (30%) of such Cash component; (b) no later than sixty (60) days following the Effective Date, an amount equal to twenty-five percent (25%) of such Cash component; (c) no later than one hundred and twenty (120) days following the Effective Date, an amount equal to twenty-five percent (25%) of such Cash component; and (d) no later than one hundred and eighty (180) days after the Effective Date, an amount equal twenty percent (20%) of such Cash component.

The Liquidating Trust for the EPC Liquidating Debtors, the Liquidating Trust for the Bioenergy and Maple Debtors, and the Litigation Trust related to the EPC Reorganizing Debtors shall be funded by the Parent within thirty (30) days of the Effective Date for an amount equal to $1.75 million for the EPC Liquidating Trust, $750,000 for the Bioenergy and Maple Liquidating Trust, and $3 million to fund the Litigation Trust. The EPC Liquidating Trust shall also be funded with all Cash on hand of the EPC Liquidating Debtors on the Confirmation Date and all of the other assets of the EPC Liquidating Debtors of any type or nature, including, without limitation, all accounts receivable and rights to tax refunds, whether contingent, disputed, unliquidated or in the possession or under the control of a third party on the Confirmation Date. The Bioenergy and Maple Liquidating Trust shall also be funded with all Cash on hand of the Bioenergy and Maple Liquidating Debtors on the Confirmation Date and all of the other assets of the Bioenergy and Maple Liquidating Debtors of any type or nature, including, without limitation, all accounts receivable and rights to tax refunds, whether contingent, disputed, unliquidated or in the possession or under the control of a third party on the Confirmation Date.

## F.    Responsible Person to Effectuate Distributions

Subject to any modifications to the Litigation Trust Agreement or the Liquidating Trust Agreements made prior to filing of the execution versions of such agreements:

1.    The Responsible Person shall be appointed for the sole purpose of liquidating and distributing the applicable Reorganizing Debtors' assets and with no objective to continue or engage in the conduct of a trade or business, which trade or business with respect to the Reorganizing Debtors will be carried out by the applicable Responsible Person's management. For the avoidance of doubt, notwithstanding the fact that the Litigation Trustee is responsible for prosecuting, resolving, or otherwise settling Litigation Trust Causes of Action and Retained Claims, all EPC Reorganization Distributions and Solar Reorganization Distributions shall be made by the Responsible Person in accordance with the provisions of this Plan, including, without limitation, Articles IV(F)(2) and (3) of this Plan with respect to the Responsible Person for the Reorganizing Debtors.

2.    Notwithstanding anything herein to the contrary, the EPC Reorganizing Debtors and the Responsible Person shall not adjudicate, object to, settle, compromise, liquidate, or Allow, in whole or part, any Retained Claims.

3.    In addition, unless otherwise provided herein, the EPC Reorganizing Distribution and all proceeds thereof (whether now existing or existing from time to time hereafter, including funds derived from the liquidation by the Responsible Person or any other Entity of any non-Cash portion thereof (collectively, the "Controlled Funds"), shall be promptly and fully (without any setoff or deduction) delivered, or caused to be delivered, from time to time by the EPC Reorganizing Debtors, the Parent, the Responsible Person or such other Entity who may hold or possess the same from time to time, to the Litigation Trustee who shall hold such funds in one or more segregated accounts, to be determined in the reasonable discretion of the Litigation Trustee, in trust for the benefit of the applicable Entity as set forth in this Plan and the Confirmation Order. The Responsible Person (in its capacity as such or as Disbursing Agent for the EPC Reorganizing Debtors) may from time to time deliver to the Litigation

Trustee a written request for a disbursement of Controlled Funds for use in accordance with the provisions of this Plan and the Confirmation Order ("Disbursement Request"). Each Disbursement Request shall include the amount requested, the date the Responsible Person (in its capacity as such or as Disbursing Agent for the EPC Reorganizing Debtors) wants to receive the requested Controlled Funds (which shall not be less than two (2) Business Days after the date of delivery of the Disbursement Request to the Litigation Trustee), the account where the Controlled Funds should be transferred, and a reasonably detailed description of the uses of the requested Controlled Funds. The Litigation Trustee may, in its reasonable discretion, request additional information from the Responsible Person (in its capacity as such or as Disbursing Agent for the EPC Reorganizing Debtors), and must consent prior to making any transfer of Controlled Funds to the Responsible Person. The Litigation Trustee and Responsible Person (in its capacity or such as Disbursing Agent for the EPC Reorganizing Debtors) are hereby authorized to agree on, and implement, such additional or other mechanisms and procedures concerning the Controlled Funds that are not inconsistent with the provisions of this Plan or the Confirmation Order.   The Bankruptcy Court shall resolve any dispute between the Litigation Trustee and the Responsible Person (in its capacity or such as Disbursing Agent for the EPC Reorganizing Debtors) relating hereto.

4.   The Responsible Person shall maintain a Professional Fee Reserve, which reserve shall be funded on the Effective Date, and shall be a subset of the Reorganizing Post-Confirmation Reserves.   The Professional Fee Reserve may be increased in the discretion of the Responsible Person, as necessary. Any excess funds in either of such reserve shall be turned over to the control of the Responsible Person as part of the EPC Reorganizing Distribution or the Solar Reorganizing Distribution, as applicable, but shall remain segregated in an escrow account and shall be utilized to pay professional fees related to the Reorganizing Debtors.

5.   Effective upon the Effective Date, the EPC Reorganizing Debtors and the Solar Reorganizing Debtor shall each establish and fund a reserve in the amount of $3,850,000 from Cash on hand at the EPC Reorganizing Debtors and $1,500,000 from Cash at the Solar Reorganizing Debtor, to fund the fees and costs anticipated to be incurred following the Confirmation Date through the completion of the Responsible Person's duties under the Plan (the "Reorganizing Post-Confirmation Reserves"), which Reorganizing Post-Confirmation Reserves may be increased, as necessary, by the Responsible Person after the Effective Date. Each such reserve shall be used to pay, among other things, the costs of the reconciliation of and objections to Claims, ordinary course Allowed Administrative Claims, including the Administrative Claims and estimated Administrative Claims to be incurred through to the Effective Date. Any excess funds in either of such reserves shall be turned over to the control of the Responsible Person promptly following the effectiveness of his appointment, but shall remain segregated and shall be utilized for such purposes. Prior to the Effective Date, the Responsible Person and the Litigation Trustee shall agree to a budget with respect to the proposed the Reorganizing Post-Confirmation Reserves. The Responsible Person shall provide reports of disbursements from the Reorganizing Post-Confirmation Reserves to the Litigation Trustee every thirty (30) days until such reserves are exhausted. The Litigation Trustee shall have leave to seek relief from the Bankruptcy Court with respect to objections, if any, to the disbursements set forth in such reports.

6.   For the avoidance of doubt, the Professional Fee Reserve, the Reorganizing Post-Confirmation Reserves, and the Surety Reserve are not Controlled Funds.

## G.   Sources of Consideration for Distributions Under the Plan of Reorganization

All Distributions shall be funded by existing Cash on hand with the Debtors or Reorganizing Debtors, as applicable, as of the Effective Date, including any proceeds from the sales of assets of the Debtors and litigation of affirmative claims by the Debtors prior to or after the Effective Date or the New Value Contribution made by the Parent in accordance with the provisions in Article IV.E hereto.

**H.    Issuance of New Securities**

The Master Restructuring Agreement provides for the issuance of New Securities; however, with respect to the Reorganizing Debtors, the equity owned by the Parent, either directly or indirectly, will be reinstated and any of the Reorganizing Debtors is authorized, without the need for any further corporate action or without any further action by a Holder of Claims or Equity Interests, to take any corporate action necessary to facilitate the Parent's issuance of any security.

**I.    Securities Exemption**

As permitted by section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of any New Securities by the Parent contemplated by the Master Restructuring Agreement and all agreements related thereto shall be exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration before the offering, issuance, distribution, or sale of securities. In addition, under section 1145 of the Bankruptcy Code, any New Securities contemplated by the Master Restructuring Agreement and any and all agreements incorporated therein will be freely tradable by the recipients thereof, subject to (1) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act; (2) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of securities or instruments; (3) the restrictions on the transferability of securities and instruments; and (4) applicable regulatory approval.

**J.    Corporate Existence**

Each of the Reorganizing Debtors shall continue to exist after the Effective Date as separate corporate entities, limited liability companies, partnerships, or other forms, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, under applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and subject to the respective certificate of incorporation and bylaws (or other formation documents) in effect before the Effective Date, unless amended by the Plan of Reorganization or otherwise, and to the extent such documents are amended, those documents are deemed to be amended by the Plan of Reorganization and the applicable Debtor is not required to take any further action or seek any further approval (other than any requisite filings required under applicable state law).

Notwithstanding the foregoing, on or as of the Effective Date or as soon as practicable thereafter and without need for any further action, the Reorganizing Debtors or the Responsible Person may: (1) cause any or all of the Reorganizing Debtors to be merged into one or more of the Reorganizing Debtors, dissolved or otherwise consolidated; (2) cause the transfer of assets between or among the Reorganizing Debtors; or (3) engage in any other transaction in furtherance of the Plan of Reorganization.

**K.    Certificates of Incorporation and By-Laws or Certificates of Formation**

On or immediately before the Effective Date, the Reorganizing Debtors may either continue to operate under their existing corporate, limited liability company or partnership documents or they may file their respective new Certificates of Incorporation, Certificates of Formation or comparable constituent documents with the applicable Secretaries of State and/or other applicable authorities in their respective states of formation in accordance with the corporate, limited liability company or partnership laws (as the case may be) of the respective states of formation. After the Effective Date, the Reorganizing Debtors or the Responsible Person may amend and restate their respective new Certificates of Incorporation and new by-laws or comparable constituent documents as permitted by the laws of their respective states of formation and their respective new Certificates of Incorporation and new by-laws or comparable constituent documents.

**L.    Vesting of Assets**

All property in the Estates of the Reorganizing Debtors, all Causes of Action, and any property acquired by any of the Reorganizing Debtors, the Litigation Trustee, or the Liquidating Trustee under or through the Plan, shall vest in each respective Reorganizing Debtor, the Litigation Trustee, the Bioenergy and Maple Liquidating Trust and the EPC Liquidating Trust, as applicable, free and clear of all Liens, Claims, charges, or other encumbrances on the

Effective Date. On and after the Effective Date, except as otherwise provided in the applicable Plan of Reorganization, each Reorganizing Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Equity Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**M.      Funding of Litigation Fund**

Within thirty (30) days of the Effective Date, the Parent shall fund the Litigation Fund.

**N.      Restructuring Transactions**

On the Effective Date or as soon as reasonably practicable thereafter, the applicable Reorganizing Debtors and/or the Responsible Person may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan of Reorganization, including: (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the terms of the Plan of Reorganization and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan of Reorganization and the Master Restructuring Agreement and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion or dissolution as required by applicable state law; and (4) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

**O.      The Liquidating Trusts**

The provisions set forth herein with respect to the Liquidating Trusts are subject to any modifications to the Liquidating Trust Agreements made prior to filing of the execution versions of such agreements.

The EPC Liquidating Debtors and the Bioenergy and Maple Liquidating Debtors, on their own behalf and on behalf of the beneficiaries, shall execute the respective Liquidating Trust Agreements, in a form reasonably acceptable to the Creditors' Committee, and all other necessary steps shall be taken to establish the Liquidating Trusts. As set forth more fully in the Liquidating Trusts, the Liquidating Trusts shall be established for the sole purpose of (a) administering the Liquidating Trust Assets (as defined in the Liquidating Trusts); (b) adjudicating General Unsecured Claims against the Liquidating Debtors and US Debt Claims against the Liquidating Debtors; (c) prosecuting, compromising, and resolving the Retained Causes of Action (as defined in the Liquidating Trusts), but in any event shall not include any Claims or Causes of Action against any Go Forward Companies, the Restructuring Committee, the NM1 Committee, any Consenting Existing Creditor that is a Holder of Existing Notes, any Consenting Other Creditor that is a Holder of Existing Notes, any New Money Financing Providers, or any Causes of Action or Claims that are released hereunder; (d) defending compromising, and resolving the Causes of Action against the Liquidating Debtors; (e) distributing the Liquidating Trusts' assets for the benefit of the Beneficiaries provided for under the Plan; (f) performing the general powers set forth in Paragraph Q below; and (g) performing all other duties, obligations, rights, and benefits reasonably necessary to accomplish the purpose of the Liquidating Trust under the Plan, the Confirmation Order, the Liquidating Trust Agreements, and any other agreement entered into pursuant to or in connection with the Plan. with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to and consistent with the liquidating purpose of the Liquidating Trusts and the Plan. As set forth more fully in the Liquidating Trusts, the Liquidating Trusts shall be deemed to be a party in interest for purposes of contesting, settling or compromising objections to General Unsecured Claims against the Liquidating Debtors, US Debt Claims against the Liquidating Debtors or Causes of Action of or against the Liquidating Debtors. The Liquidating Trusts shall be vested with all the powers and authority set forth in this Plan and the Liquidating Trust Agreements. As set forth more fully in the Liquidating Trusts. the Liquidating Trustee shall be the sole entity responsible for reconciling and objecting to General Unsecured Claims against the Liquidating Debtors and US Debt Claims against the Liquidating Debtors, and making Distributions to Allowed General Unsecured Claims against the Liquidating Debtors and Allowed US Debt Claims against the Liquidating Debtors.

**P.    Funding of Liquidating Trusts**

The Liquidating Trusts shall be funded within thirty (30) days of the Effective Date and shall include the EPC Liquidating Distribution and the Bioenergy and Maple Distribution, as applicable, including the $2.5 million Cash component, of which amount $1.75 million shall be funded to the EPC Liquidating Trust and $750,000 shall be funded to the Bioenergy and Maple Liquidating Trust. The Liquidating Trusts, and the assets of the Liquidating Trust, are for the benefit of Holders of Allowed General Unsecured Claims and Allowed US Debt Claims against the Liquidating Debtors. The Liquidating Trusts shall handle reconciliation of Claims for General Unsecured Claims and US Debt Claims against the Liquidating Debtors only and pursue Causes of Action as set forth herein and in the Liquidating Trusts, with the Liquidating Trustee selected by the Creditors' Committee.

**Q.    Role of Liquidating Trustee**

The respective rights, duties and powers of each Liquidating Trustee shall be set forth in the respective Liquidating Trust Agreement. The Liquidating Trustee shall be entitled to receive reasonable compensation and reimbursement of its reasonable out-of-pocket expenses for the performance of its duties after the Effective Date on terms and conditions to be agreed upon between the Committee and Liquidating Trustee prior to the Effective Date and filed with the Bankruptcy Court.

**R.    Role of the Responsible Person**

1.    In furtherance of and consistent with the purpose of the Plan, the Responsible Person shall, among other things, have the rights, powers and duties, subject to the limitations set forth in this Plan, including, without limitation, those set forth in Article IV(F)(2) and (3):  (i) to hold, manage, dispose of, sell, convert to Cash, and distribute the Reorganizing Debtors' assets, including the proceeds of any Causes of Action of the Reorganizing Debtors; (ii) to hold the Reorganizing Debtors' assets for the benefit of the Creditors that are entitled to a Reorganization Distribution therefrom under the Plan, whether their Claims are Allowed on or after the Effective Date; (iii) in the Responsible Person's reasonable business judgment, to investigate, prosecute, settle, liquidate, dispose of, or abandon the Reorganizing Debtors' assets; *provided, however,* that with respect to the Litigation Trust Causes of Action, the Litigation Trustee is responsible for the investigation, prosecution, settlement, liquidation, or disposal of the Litigation Trust Causes of Action and Retained Claims; (iv) to monitor and enforce the implementation of the Plan; (v) to file all tax and regulatory forms, returns, reports and other documents and financial information required with respect to the Reorganizing Debtors; (vi) in the Responsible Person's reasonable business judgment, to reconcile and object to Claims and Equity Interests, and manage, control, prosecute and/or settle on behalf of the Estates objections to Claims and Equity Interests on account of which the Responsible Person (as Disbursing Agent) will be responsible (if Allowed) for making the Reorganization Distributions under the Plan; (vii) to take all actions necessary, and create any documents necessary, to wind up the affairs and effect a dissolution of the Reorganizing Debtors and implement the Plan; (viii) to hold, manage, and distribute the Reorganizing Debtors' assets obtained through the exercise of its power and authority, including, without limitation, to satisfy the costs and expenses of the Reorganizing Debtors; (ix) to act as a signatory of the Reorganizing Debtors and for all purposes, including those associated with the novation of contracts or other obligations arising out of the sales of any remaining assets; (x) to dispose of the Books and Records transferred to the Responsible Person in a manner deemed appropriate by the Responsible Person; provided, however, that the Responsible Person shall not dispose of any Books and Records that are reasonably likely to pertain to any Litigation Causes of Action or any pending litigation in which the Reorganizing Debtors or their current or former officers or directors are a party or that may pertain to General Unsecured Claims without the prior written consent of the Litigation Trustee, but in any event, without further order of the Bankruptcy Court; (xi) to take all necessary action and file all appropriate motions to obtain an order and a Final Decree closing the Chapter 11 Cases; (xii) to enter into and exercise rights under contracts that are necessary or desirable to the administration of the Reorganizing Debtors and execute any documents or pleadings related to the liquidation of the assets; (xiii) to establish and maintain bank accounts and terminate such accounts as the Responsible Person deems appropriate; (xiv) to bring suits or defend itself against such suits, if any, as the Responsible Person determines in connection with any matter arising from or related to the Plan that affects in any way the rights or obligations of Creditors of or Holders of Equity Interests in the Reorganizing Debtors; *provided, however,* that, for the avoidance of doubt, the Litigation Trustee has sole responsibility with respect to matters arising from the Litigation Trust Causes of Action and the Retained Claims; (xv) procure, and prepay for, a tail director's and officer's insurance policy; *provided, however,* that in the event such policy is purchased before the Effective Date, the

Reorganizing Debtors shall procure, and prepay for, such policy; and (xvi) to take such other and further actions as are permitted by the Plan and are not inconsistent with the Plan. In all circumstances, the Responsible Person shall use reasonable best efforts to maximize the value of the assets of the Reorganizing Debtors' Estates in the best interests of all Creditors of the Reorganizing Debtors.

2.      The Responsible Person shall be entitled to receive reasonable compensation and reimbursement of its reasonable out-of-pocket expenses for the performance of its duties after the Effective Date.

3.      The Responsible Person may resign by giving at least thirty (30) days prior written notice thereof to the Bankruptcy Court. Such resignation shall become effective on the later to occur of (i) the date specified in such written notice and (ii) the effective date of the appointment of a successor Responsible Person in accordance with the terms hereof and such successor's acceptance of such appointment in accordance with the terms hereof.

4.      The Responsible Person may be removed, with cause, and replaced by the Bankruptcy Court upon motion by any Holder of an Allowed Claim duly noticed to the Responsible Person and all Holders of Claims, who shall have the right to appear and be heard with respect to such motion. Such removal shall become effective on the date specified in such action by the Bankruptcy Court.

5.      The resignation, removal, incompetency, bankruptcy or insolvency of the Responsible Person shall not operate to revoke any existing agency created by the Plan, or the Confirmation Order or invalidate any action theretofore taken by the Responsible Person. All fees and expenses incurred by the Responsible Person prior to the resignation, incompetency or removal shall be paid from the assets, unless such fees and expenses are Disputed by the successor Responsible Person, in which case the Bankruptcy Court shall resolve the dispute and any disputed fees and expenses of the predecessor Responsible Person that are subsequently Allowed by the Bankruptcy Court shall be paid from the assets. In the event of the resignation or removal of the Responsible Person, Responsible Person shall: (a) promptly execute and deliver such documents, instruments and other writings as may be reasonably requested by the successor Responsible Person or directed by the Bankruptcy Court to effect the termination of such Responsible Person's capacity under the Plan and Confirmation Order; (b) promptly deliver to the successor Responsible Person all documents, instruments, records and other writings related to the administration of the assets as may be in the possession of such Responsible Person; provided, however, that such Responsible Person may retain one copy of each of such documents for its purposes, subject to the terms of any joint prosecution and common interest agreement to which the Responsible Person is party; and (c) otherwise assist and cooperate in effecting the assumption of its obligations and functions by such successor Responsible Person.

6.      Any successor Responsible Person appointed hereunder shall execute an instrument accepting its appointment and shall deliver one counterpart thereof to the Bankruptcy Court for filing and, in case of the Responsible Person's resignation, to the resigning Responsible Person. Thereupon, such successor Responsible Person shall, without any further act, become vested with all the liabilities, duties, powers, rights, title, discretion and privileges of its predecessor with like effect as if originally named Responsible Person and shall be deemed appointed under Bankruptcy Code section 1123(b)(3)(B). The resigning or removed Responsible Person shall duly assign, transfer and deliver to such successor Responsible Person all property and money held by such resigning or removed Responsible Person hereunder and shall, as directed by the Bankruptcy Court or reasonably requested by such successor Responsible Person, execute and deliver an instrument or instruments conveying and transferring to such successor Responsible Person, all the liabilities, duties, powers, rights, title, discretion and privileges of such resigning or removed Responsible Person.

S.      **Responsible Person's Tax Powers**

1.      Following the Effective Date, the Responsible Person shall prepare and file (or cause to be prepared and filed), on behalf of the Reorganizing Debtors, all Tax Returns required to be filed or that the Responsible Person otherwise deems appropriate, including the filing of amended Tax Returns or requests for refunds.

2.      The Responsible Person and the Reorganizing Debtors shall reasonably cooperate with each other, and shall cause their respective officers, employees, agents, auditors and other Representatives to reasonably cooperate, in preparing and filing all Tax Returns (including amended Tax Returns and claims for refunds) and in resolving all disputes and audits with respect to all taxable periods relating to the Reorganizing Debtors. Any

information obtained under this Article shall be kept confidential, except as may be otherwise necessary in connection with the filing of Tax Returns or claims for refunds or in conducting an audit or other proceeding.

## T.    The Litigation Trust

Effective as of the Effective Date, the EPC Reorganizing Debtors, on their own behalf and on behalf of the beneficiaries, shall execute the Litigation Trust Agreement, in a form reasonably acceptable to the Creditors' Committee, and all other necessary steps shall be taken to establish the Litigation Trust. The Litigation Trust shall be established for the sole purpose of prosecuting, compromising, and resolving the Litigation Trust Causes of Action. The Litigation Trust shall be vested with all the powers and authority granted to it pursuant to this Plan and the Litigation Trust Agreement.

On the Effective Date or such other date as agreed by the Litigation Trustee, the EPC Reorganizing Debtors shall transfer to the Litigation Trust, the Litigation Trust Causes of Action and all Controlled Funds. In connection with the transfer of the Litigation Trust Causes of Action, any attorney-client privilege, work-product privilege, or other privilege or immunity (collectively, "Privileges") attaching to any documents or communications (whether written or oral) shall have been transferred to the Litigation Trust and shall vest in the Litigation Trustee and its representatives.

The Creditors' Committee and its advisors, notwithstanding the Creditor Committee's dissolution following the Effective Date, shall be permitted to share any discovery obtained relating to the Debtors and/or Litigation Trust Assets with the Litigation Trustee without waiver of any Privileges. In addition, notwithstanding the Creditor Committee's dissolution following the Effective Date, all rights of the Creditors' Committee in connection with all Rule 2004 examinations, orders, and agreements related thereto concerning the Debtors or their Affiliates shall vest in the Litigation Trustee and its representatives, and the Creditors' Committee and Litigation Trustee are authorized to take all necessary actions to effectuate the transfer of such rights and privileges.

The Litigation Trust shall commence on the Effective Date and end no later than the fifth (5th) anniversary of the Effective Date (the "Initial Litigation Trust Term"); *provided, however*, that the Litigation Trustee may, subject to the further provisions of this Section, extend the term of the Litigation Trust for such additional period of time as is necessary to facilitate or complete the recovery and liquidation of the Litigation Trust Assets as follows: within the three (3) month period prior to the termination of the Initial Litigation Trust Term, the Litigation Trustee may file a notice of intent to extend the term of the Litigation Trust with the Bankruptcy Court and, upon approval of the Bankruptcy Court of such extension request following notice and a hearing, the term of the Litigation Trust shall be so extended. The Litigation Trust may file one or more such extension notices, each notice to be filed within the three (3) month period prior to the termination of the extended term of the Litigation Trust (all such extensions are referred to herein in the aggregate as the "Supplemental Litigation Trust Term"). Notwithstanding anything to the contrary, however, the Supplemental Litigation Trust Term may not, in the aggregate, exceed three (3) years without a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the Litigation Trust as a qualified settlement fund (or a qualified settlement fund treated as a grantor trust pursuant to the QSF Regulations) for federal income tax purposes. In addition, the provisions of this Section shall be without prejudice to the right of any party in interest under Section 1109 of the Bankruptcy Code to petition the Bankruptcy Court, for cause shown, to shorten the Supplemental Litigation Trust Term. The Litigation Trust may be terminated earlier than its scheduled termination if (i) the Bankruptcy Court has entered a Final Decree closing all of or the last of the Chapter 11 Cases of the EPC Reorganizing Debtors, and (ii) the Litigation Trustee has administered all Litigation Trust Assets and materially performed all duties required by the Plan, the Confirmation Order, and the Litigation Trust Agreement.

The Reorganized Debtors will provide the Litigation Trustee with all of the reasonable financial information necessary requested by the Litigation Trustee in connection with the Fulcrum Project.

## U.    The Role of the Litigation Trustee

The Litigation Trustee shall be the sole party responsible for the investigation, prosecution, settlement, liquidation, or disposal of the Litigation Trust Causes of Action. In addition, the Litigation Trustee shall represent the Estates of the EPC Reorganizing Debtors solely with respect (a) adjudicating the Retained Claims, and (b)

subject to the provisions of the Plan, delivering the Litigation Trust Proceeds to the Responsible Person for Distribution to the Holders of Allowed Claims entitled to a portion of the EPC Reorganization Distribution. The foregoing shall be without limitation to the other rights, duties and powers of the Litigation Trustee set forth in this Plan, the Confirmation Order and the Litigation Trust Agreement.

The Litigation Trustee shall be entitled to receive reasonable compensation and reimbursement of its reasonable out-of-pocket expenses for the performance of its duties after the Effective Date on terms and conditions to be agreed upon between the Creditors' Committee and Litigation Trustee prior to the Effective Date and filed with the Bankruptcy Court.

## V.    Cash

The Responsible Person and Liquidating Trustee may invest Cash (including any earnings thereon or proceeds therefrom) in any manner permitted to be made by a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable Internal Revenue Service guidelines, rulings, or other controlling authorities.

## W.    Costs and Expenses of the Responsible Person, the Liquidating Trustee, and the Litigation Trustee

The costs and expenses of the Responsible Person shall be paid from the applicable Reorganizing Debtors, the Litigation Trustee shall be paid from the Litigation Fund, and expenses of the Liquidating Trustee shall be paid from the assets of the applicable Liquidating Debtors.

## X.    Retention of Professionals by the Responsible Person, the Litigation Trustee, and Liquidating Trustee

The Responsible Person, the Litigation Trustee, and Liquidating Trustee may each retain and compensate attorneys and other professionals to assist in their duties on such terms (including on a contingency or hourly basis) as they deem reasonable and appropriate without Bankruptcy Court approval.

## Y.    Tax Reporting

1.    The Responsible Person and the Liquidating Trustee, as applicable, shall file (or cause to be filed) any statements, returns or disclosures relating to the applicable Debtors that are required by any governmental unit.

2.    The Responsible Person and the Liquidating Trustee, as applicable, shall be responsible for payment, out of the applicable Debtors' assets, of any taxes imposed on the applicable Debtors or their respective assets, including the applicable Disputed Claims reserve.  In the event, and to the extent, any Cash retained on account of Disputed Claims in the applicable Disputed Claims reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such taxes shall be (i) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (ii) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts otherwise distributable by the Responsible Person (as applicable) as a result of the resolution of such Disputed Claims.

## Z.    Dissolution

With respect to each Liquidating Trust, the term of the Liquidating Trust shall end no later than the fifth (5th) anniversary of the Effective Date (the "Initial Liquidating Trust Term"); provided, however, that the Liquidating Trustee may, subject to the further provisions hereof, extend the term of the Liquidating Trust for such additional period of time as is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets as follows: within the three (3) month period prior to the termination of the Initial Liquidating Trust Term, the Liquidating Trustee may file a notice of intent to extend the term of the Liquidating Trust with the Bankruptcy Court and, upon approval of the Bankruptcy Court of such extension request following notice and a hearing, the term of the Liquidating Trust shall be so extended. The Liquidating Trust may file one or more such extension notices, each notice to be filed within the three (3) month period prior to the termination of the extended term of the Liquidating Trust (all such extensions are referred to herein in the aggregate as the "Supplemental

Liquidating Trust Term"). Notwithstanding anything to the contrary in this Section, however, the Supplemental Liquidating Trust Term may not, in the aggregate, exceed three (3) years without a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the Liquidating Trust as a liquidating trust for federal income tax purposes. In addition, the provisions of this Section shall be without prejudice to the right of any party in interest under Section 1109 of the Bankruptcy Code to petition the Bankruptcy Court, for cause shown, to shorten the Supplemental Liquidating Trust Term. The Liquidating Debtors shall be dissolved following and in connection with the termination of the applicable Liquidating Trust.

## AA. Indemnification of the Responsible Person, the Liquidating Trustee, and the Litigation Trustee

The Indemnified Persons shall be held harmless and shall not be liable for actions taken or omitted in their capacity as, or on behalf of, the Responsible Person, the Litigation Trustee, or the Liquidating Trustee (as applicable), except those acts that are determined by Final Order of the Bankruptcy Court to have arisen out of their own intentional fraud, willful misconduct, or gross negligence, and each shall be entitled to be indemnified, held harmless, and entitled to advancement (and indemnification for the same amounts if the Indemnified Persons do not seek or receive advancement) for fees and expenses including, without limitation, reasonable attorney's fees, which such Persons and Entities may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such Persons or Entities in respect of that Person's or Entity's or the Responsible Person's, the Litigation Trustee's, or Liquidating Trustee's actions or inactions regarding the implementation or administration of this Plan, or the discharge of their duties hereunder, as applicable, except for any actions or inactions that are determined by Final Order of the Bankruptcy Court to have arisen from intentional fraud, willful misconduct or gross negligence of any of the Indemnified Persons. Subject to the limitations set forth in the preceding sentence, any Claim of the Indemnified Persons to be indemnified, held harmless, advanced, or reimbursed shall be satisfied, in the first instance, from any applicable insurance coverage, and any remaining amounts from the applicable Debtors' assets.

## BB. Cancellation of Existing Securities and Agreements

Except for purposes of evidencing a right to Distributions under the Plan or as otherwise provided hereunder or in the Master Restructuring Agreement, on the Effective Date, all agreements and other documents evidencing Claims or rights of any Holder of a Claim or Equity Interest against any of the Debtors, including, but not limited to, all indentures, notes, bonds and share certificates evidencing such Claims and Equity Interests and any agreements or guarantees related thereto shall be cancelled, terminated, deemed null and void and satisfied, as against the Debtors but not as against any other Person; *provided, however*, that the Existing Notes and the Existing Loans (in each case, as to which the Standard Restructuring Terms are applied pursuant to the Master Restructuring Agreement) and all indentures, notes, bonds, loans, agreements, guarantees, or other documents related thereto shall not be cancelled or terminated but shall remain in full force and effect, except to the extent modified by the Master Restructuring Agreement, the Plan, and/or the Confirmation Order, as applicable.

For the avoidance of doubt, all rights, indemnities, powers, and protections of each of the Note Agents under the indentures, fiscal agency agreements or other appointment agreements in relation to the Note Agents (as applicable) to which they are a party in connection with the Existing Notes shall continue and remain in full force and effect, and such rights, indemnities, powers, and protections (except with respect to indemnification obligations of the Go Forward Chapter 11 Companies that arise after the Restructuring Effective Date (as defined in the Master Restructuring Agreement) with respect to or in connection with any of the Liquidating Entities (as defined in the Master Restructuring Agreement)) shall not be affected in any way by the terms of the Plan, the Confirmation Order, or any other Restructuring Document (as defined in the Master Restructuring Agreement), or the transactions contemplated herein or therein.

## CC. Operations of the Debtors Between the Confirmation Date and the Effective Date

The Debtors shall continue to operate as debtors in possession during the period from the Confirmation Date through and until the Effective Date, and thereafter, the Liquidating Debtors will operate as liquidating estates on and after the Effective Date and the Reorganizing Debtors will continue to operate under and in accordance with governing law as reorganized entities. The retention and employment of the Professionals retained by the Debtors shall terminate as of the Effective Date, *provided, however*, that the Debtors shall exist, and their Professionals shall

-35-

be retained, after such date with respect to (a) applications filed under sections 330 and 331 of the Bankruptcy Code, (b) motions seeking the enforcement of the provisions of the Plan or the Confirmation Order and (c) such other matters as may be determined by the Debtors or Responsible Person, including without limitation, the filing and prosecuting of objections to Claims.

### DD.    Automatic Stay

The automatic stay provided for under section 362 of the Bankruptcy Code shall remain in effect in the Chapter 11 Cases until the Effective Date.

### EE.    The Creditors' Committee

Upon the Effective Date, the Creditors' Committee shall dissolve, and their members shall be released and discharged from all further authority, duties, responsibilities, and obligations relating to and arising from the Chapter 11 Cases. The retention and employment of the Professionals retained by the Creditors' Committee shall terminate as of the Effective Date, *provided, however,* that the Creditors' Committee shall exist, and their Professionals shall be retained, after such date with respect to applications filed under sections 330 and 331 of the Bankruptcy Code and motions seeking the enforcement of the provisions of the Plan or the Confirmation Order.

### FF.    Books and Records

2.    As part of the appointment of any Liquidating Trustee, to the extent not already transferred (the following provisions apply to the respective Liquidating Debtors, Liquidating Trusts, and Liquidating Trustees):

(a)    On the Effective Date, the Liquidating Debtors shall transfer and assign to the Liquidating Trust full title to, and the Liquidating Trust shall be authorized to take possession of, all of the Books and Records of the Liquidating Debtors. The Liquidating Trust shall have the responsibility of physically taking possession of (with the Liquidating Debtors' reasonable cooperation), storing and maintaining Books and Records transferred hereunder subject to clause (c) below.

(b)    The Liquidating Trustee also shall maintain in respect of the Liquidating Trust and the beneficiaries thereof books and records relating to the Liquidating Trust Assets and the payment of expenses of and claims against or assumed by the Liquidating Trust in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof as required under the Plan, Confirmation Order or the Liquidating Trust Agreement. Except as expressly provided in the Liquidating Trust Agreement, the Plan, or the Confirmation Order, or as may be required by applicable law (including securities law), nothing in the Liquidating Trust Agreement is intended to require the Liquidating Trust to file any accounting or seek approval of any court with respect to the administration of the Liquidating Trust, or as a condition for making any payment or distribution out of the Liquidating Trust Assets. Beneficiaries of the Liquidating Trust shall have the right upon ten (10) days' prior written notice delivered to the Liquidating Trustee to inspect the Books and Records and the Liquidating Trust's books and records, including the Register, provided such beneficiary shall have entered into a confidentiality agreement in form and substance reasonably satisfactory to the Liquidating Trustee. Satisfaction of the foregoing condition notwithstanding, if (a) the Liquidating Trustee determines in good faith that the inspection of the Books and Records or the Liquidating Trust's books and records, including the Register, by any beneficiary would be detrimental to the Liquidating Trust or (b) such beneficiary is a defendant (or potential defendant) in a pending (or potential) action brought by the Liquidating Trust, the Liquidating Trust may deny such request for inspection. The Bankruptcy Court shall resolve any dispute between any beneficiary and the Liquidating Trustee relating hereto.

(c)    The Liquidating Trustee may abandon any of the Books and Records on or after one hundred and twenty (120) days from the Effective Date unless the Responsible Person makes a request for a further extension (the terms of which shall be determined at that time between the Liquidating Trustee and Responsible Person); provided, however, that the Liquidating Trustee shall not dispose or abandon any Books and Records that are reasonably likely to pertain to pending litigation in which the Debtors or their current or former officers or directors are a party or that pertain to General Unsecured Claims without further order of the Bankruptcy Court. As permitted by Section 554 of the Bankruptcy Code, this Section shall constitute a motion and notice, so that no further notice or

Bankruptcy Court filings are required to effectuate the aforementioned abandonment of the Books and Records of the Debtors.

2.       As part of the appointment of any Litigation Trustee, the provisions set forth in Article V of the Litigation Trust shall apply.

## GG.      Corporate Action

Each of the matters provided for by the Plans involving the corporate structure of the Debtors or corporate or related actions to be taken by or required of the Reorganizing Debtors shall, as of the Effective Date, be deemed to have occurred and be effective as provided in the Plan (except to the extent otherwise indicated), and shall be authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without any requirement of further action by Holders of Claims or Equity Interests, directors of the Debtors, or any other Entity.

## HH.      Substantive Consolidation

The Plan shall serve as a motion of the Reorganizing Debtors seeking entry of a Bankruptcy Court order approving the separate substantive consolidation of each of the following Debtor groups: (a) EPC Reorganizing Debtors, (b) EPC Liquidating Debtors, and (c) Bioenergy and Maple Liquidating Debtors. As such, upon the Effective Date, without the need for further order of the Bankruptcy Court or motion of, or notice from, the Debtors, the Responsible Person, or the Liquidating Trustee, the Chapter 11 Cases of (a) each of the EPC Reorganizing Debtors shall be deemed closed as of the Effective Date without prejudice to the rights of any party in interest to seek to reopen any of the Chapter 11 Cases under section 350(b) of the Bankruptcy Code; *provided, however*, that the following cases shall remain open until the applicable Debtor files a motion seeking entry of a final decree closing the cases: *Abeinsa Holding, Inc.; Abengoa Solar, LLC; Abencor USA LLC; Abengoa Bioenergy Holdco, Inc.*; (b) each of the EPC Liquidating Debtors shall be deemed closed as of the Effective Date without prejudice to the rights of any party in interest to seek to reopen such cases under section 350(b) of the Bankruptcy Code, and (c) each of the Bioenergy and Maple Liquidating Debtors shall be deemed closed as of the Effective Date without prejudice to the rights of any party in interest to seek to reopen such cases under section 350(b) of the Bankruptcy Code. Furthermore, (i) all motions, contested matters, adversary proceedings and other matters with respect to those closed cases and those Debtors shall be administered in the respective remaining open cases, without prejudice to the rights of any party in interest, (ii) the caption of each remaining open case shall be amended to reflect that it is the only remaining open case for each of the respective Debtor groups, and (iii) a docket entry shall be made in each of the closed cases that reflects their closure pursuant hereto.

## II.       Allocation of Plan Distributions Between Principal and Interest

To the extent that any Claim entitled to a distribution under the Plan consists of indebtedness and accrued but unpaid interest thereon, such distributions shall, for all income tax purposes, be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, the portion of such Claim representing accrued but unpaid interest.

## ARTICLE V.

## PROVISIONS GOVERNING VOTING AND DISTRIBUTIONS

### A.      Voting of Claims

Each Holder of an Allowed Claim in an Impaired Class of Claims that is entitled to vote on the Plan is entitled to vote separately to accept or reject the Plan, as provided in the Solicitation Procedures Order or any other order of the Bankruptcy Court.

### B.      Distribution Dates

Distributions to Holders of Claims shall be made as provided in Articles II and III of the Plan. The Liquidating Trustee or Responsible Person, as applicable, to the extent practicable, shall make an initial Distribution

not later than the first full quarter ended after the Effective Date and quarterly thereafter, unless the Liquidating Trustee or Responsible Person, as applicable, determines in the exercise of their reasonable discretion that there are not sufficient available proceeds to fund a Distribution.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

The Litigation Trustee shall disburse from the Litigation Trust (i) to the DB Entities assets in an amount not less than $1.4 million on account of the unpaid fees and expenses of Deutsche Bank Trust Company Americas, Deutsche Trustee Company Limited, Deutsche Bank AG, London Branch, Deutsche Bank, S.A.E. and Deutsche Bank Luxembourg S.A. (collectively, the "**DB Entities**") and (ii) to Société Générale S.A. ("**Soc Gen**") other assets in an amount to be agreed by the Litigation Trustee and, on account of the unpaid fees and expenses of Soc Gen (in each case in connection with these Chapter 11 Cases), solely to the extent such amounts are not paid by the Parent. If the Litigation Trustee makes such payment, and the Master Restructuring Agreement provides for such payment as Administrative Costs, the DB Entities and Soc Gen shall assign to the Litigation Trust all rights and remedies, if any, under the Master Restructuring Agreement with respect thereto.

### C.      Disbursing Agents

All Distributions under the Plan by the Responsible Person or Liquidating Trustee shall be made by the Responsible Person or Liquidating Trustee as Disbursing Agent or such other entity designated by the Responsible Person or Liquidating Trustee as Disbursing Agent.

The Disbursing Agent shall be empowered to (a) effect all actions and execute all agreements, instruments and other documents necessary to perform their duties under the Plan, (b) make all Distributions contemplated by the Plan, (c) employ professionals to represent them with respect to their responsibilities, and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, this Plan, or deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan; *provided, however,* the powers, rights and duties of the Responsible Person and Disbursing Agent for the EPC Reorganizing Debtors shall be subject to Article IV(F)(2) and (3) of this Plan.

The Disbursing Agent shall only be required to act and make Distributions in accordance with the terms of the Plan and shall have no (x) liability for actions taken in accordance with the Plan or in reliance upon information provided to them in accordance with the Plan or (y) obligation or liability for Distributions under the Plan to any party who does not hold an Allowed Claim at the time of Distribution or who does not otherwise comply with the terms of the Plan.

Except as otherwise ordered by the Bankruptcy Court, any reasonable fees and expenses incurred by the Responsible Person acting as the Disbursing Agent (including, without limitation, reasonable attorneys' fees and expenses) on or after the Effective Date shall be paid in Cash by the Reorganizing Debtors in the ordinary course of business. Except as otherwise ordered by the Bankruptcy Court, any reasonable fees and expenses incurred by the Liquidating Trustee acting as the Disbursing Agent (including, without limitation, reasonable attorneys' fees and expenses) on or after the Effective Date shall be paid in Cash by the Liquidating Trust in the ordinary course of business.

### D.      Record Date for Distributions

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred under Bankruptcy Rule 3001 on or prior to the Voting Record Date will be treated as the Holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Record Date. The Responsible Person and the Liquidating Trustee (as applicable) shall have no obligation to recognize any transfer of any Claim occurring after the Voting Record Date. In making any Distribution with respect to any Claim, the Responsible Person and the Liquidating Trustee (as applicable) shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of Claim filed with respect thereto or on the Schedules as the Holder thereof as of the close of business on the Voting Record Date and upon such other evidence or record of transfer or assignment that was

known to the Debtors as of the Voting Record Date and is available to the Responsible Person and the Liquidating Trustee (as applicable). Notwithstanding anything herein to the contrary, for purposes of implementing the treatment of MRA Affected Debt Claims under the Plan, the Voting Record Date shall not be applicable to holders of MRA Affected Debt Claims that arise from Existing Notes that are publicly held securities.

### E.    Delivery of Distributions

Subject to Bankruptcy Rule 9010 and except as otherwise provided in this Plan, Distributions to the Holders of Allowed Claims shall be made by the Disbursing Agent at (a) the address of each Holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim filed by such Holder or (b) the last known address of such Holder if no proof of Claim is filed or if the Responsible Person and the Liquidating Trustee (as applicable) have been notified in writing of a change of address.

### F.    Undeliverable and Unclaimed Distributions

(1)    In the event that any Distribution to any Holder of an Allowed Claim made by the Responsible Person is returned as undeliverable, the Disbursing Agent shall use commercially reasonable efforts to determine the current address of each Holder, but no Distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then current address of such Holder; provided, however, that all Distributions to Holders of Allowed Claims made by the Responsible Person that are unclaimed for a period of one (1) year after Distribution thereof (including checks that are not negotiated) shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and revested in the Reorganizing Debtors' Estates and any entitlement of any Holder of any Claims to such Distributions shall be extinguished and forever barred. The Responsible Person shall have no further obligation to make any Distribution to the Holder of such Claim on account of such Claim, and any entitlement of any Holder of such Claim to any such Distributions shall be extinguished and forever barred; provided, however, that the Holder of such Claim may receive future Distributions on account of such Claim by contacting the Responsible Person or the prior to the final Distribution. All funds or other property that vests or revests in the Reorganizing Debtors' Estates pursuant hereto shall be used to pay any fees and expenses of the Responsible Person in accordance with this Plan with any balance to be distributed to other Holders of Allowed Claims against the Reorganizing Debtors' in the same Class as part of the final Distribution to Holders of Allowed Claims against the Reorganizing Debtors in that Class. No such funds or other property shall escheat to any federal, state, or local government or other entity for any reason.

(2)    In the event that any Distribution to any Holder of an Allowed Claim against the Liquidating Debtors is returned as undeliverable to the Disbursing Agent, the Disbursing Agent shall use commercially reasonable efforts to determine the current address of such Holder, but no Distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then current address of such Holder. All Distributions to Holders of Allowed Claims against the Liquidating Debtors that are unclaimed (including checks that are not negotiated) for a period of for a period of ninety (90) days after any interim Distribution or forty-five (45) days after the final Distribution shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code and revested in the Liquidating Trust. After such time period, any entitlement of the applicable Holder of an Allowed Claim against the Liquidating Debtors to such Distribution shall be extinguished and forever barred and the Liquidating Trustee shall have no further obligation to make any Distribution to such Holder of any unclaimed Distribution on account of such Allowed Claim against the Liquidating Debtors; provided, however, that the Holder of such Allowed Claim may receive future Distributions on account of such Claim by contacting the Liquidating Trustee or Disbursing Agent not later than thirty (30) days prior to the final Distribution. All funds or other property that vests or revests in the Liquidating Trust pursuant to this Section shall be used to pay any fees and expenses of the Liquidating Trust in accordance with the Liquidating Trust Agreement with any balance to be distributed to other Holders of Allowed Claims in the same Class as part of the final Distribution to Holders of Allowed Claims in that Class. No such funds or other property shall escheat to any federal, state, or local government or other entity for any reason.

### G.    Manner of Cash Payments Under the Plan

Except as otherwise provided in this Plan, Cash payments made under the Plan shall be in United States dollars by checks drawn on a domestic bank or by wire transfer from a domestic bank, at the option of the Responsible Person and the Liquidating Trustee (as applicable).

### H.    Compliance with Tax Requirements

The Disbursing Agent may withhold and pay to the appropriate taxing authority all amounts required to be withheld under the Tax Code or any provision of any foreign, state or local tax law with respect to any payment or Distribution on account of Claims. All such amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to the applicable Holders of the Claims. The Disbursing Agent shall be authorized to collect such tax information from the applicable Holders of Claims (including social security numbers or other tax identification numbers) as it in its sole discretion deems necessary to effectuate the Plan. In order to receive Distributions under the Plan, all Holders of Claims that are entitled to receive Distributions under the Plan will need to identify themselves to the Disbursing Agent and provide tax information to the extent the Disbursing Agent deems appropriate (including completing the appropriate Form W-8 or Form W-9, as applicable to each Holder). The Disbursing Agent may refuse to make a Distribution to any Holder of a Claim is entitled to receive a Distribution but that fails to furnish such information within the time period specified by the Disbursing Agent and such Distribution shall be deemed an unclaimed Distribution under the Plan, and, *provided further* that, if the Disbursing Agent fails to withhold in respect of amounts received or distributable with respect to any such Holder and such Disbursing Agent is later held liable for the amount of such withholding, such Holder shall reimburse the Disbursing Agent for such liability.

### I.    No Payments of Fractional Dollars

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made under the Plan. Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

### J.    Interest on Claims

Except as specifically provided for in this Plan, the Confirmation Order, or the Master Restructuring Agreement, or required by the Bankruptcy Code, interest shall not accrue on Claims and no Holder of a Claim shall be entitled to interest on any Claim accruing on or after the Petition Date. Interest shall not accrue on any General Unsecured Claim that is a Disputed Claim in respect of the period from the Effective Date to the date a final Distribution is made thereon if and after that Disputed Claim becomes an Allowed Claim. Except as expressly provided in this Plan or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be Allowed to the extent that it is for postpetition interest or similar charges.

### K.    No Distribution in Excess of Allowed Amount of Claim

Notwithstanding anything to the contrary contained in the Plan, no Holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of such Claim.

### L.    Setoff and Recoupment

The Responsible Person, the Litigation Trustee and the Liquidating Trustee (as applicable) may, but shall not be required to, set off against, or recoup from, any Claim and the Distributions to be made under the Plan in respect thereof, any Claims or defenses of any nature whatsoever that any of the Debtors, their Estates, the Litigation Trust and/or the Liquidating Trusts may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtors, the Estates, the Responsible Person, the Litigation Trustee or the Liquidating Trustee of any Claim, claim, defense, right of setoff, or recoupment that any of them may have against the Holder of any Claim. Any such setoffs or recoupments may be challenged in Bankruptcy Court.

## M.    De Minimis Distributions; Charitable Donation

Notwithstanding anything to the contrary therein, the Responsible Person and the Liquidating Trustee (as applicable) shall not be required to make a Distribution to any Creditor if the dollar amount of the Distribution is less than $25 or otherwise so small that the cost of making that Distribution exceeds the dollar amount of such Distribution. On or about the time that the final Distribution is made, the Responsible Person and the Liquidating Trustee (as applicable) may make a charitable donation with undistributed funds if, in the reasonable judgment of the Responsible Person and the Liquidating Trustee (as applicable), the cost of calculating and making the final Distribution of the remaining funds is excessive in relation to the benefits to the Holders of Claims who would otherwise be entitled to such Distributions, and such charitable donation is provided to an entity not otherwise related to the Debtors, the Responsible Person, and/or the Liquidating Trustee (as applicable).

## N.    U.S. Trustee Fees

All fees due and payable under section 1930 of Title 28 of the U.S. Code prior to the Effective Date shall be paid by the Debtors. On and after the Effective Date, the Responsible Person on behalf of the Reorganizing Debtors shall pay any and all such fees payable by the Reorganizing Debtors, when due and payable, and shall file with the Bankruptcy Court quarterly reports for each of the Reorganizing Debtors, in a form reasonably acceptable to the U.S. Trustee. On or after the Effective Date, the Liquidating Trustee on behalf of the Liquidating Debtors shall pay any and all such fees payable by the Liquidating Debtors, when due and payable, and shall file with the Bankruptcy Court quarterly reports for each of the Liquidating Debtors, in a form reasonably acceptable to the U.S. Trustee. Each of the Reorganizing Debtors and the Liquidating Debtors shall remain obligated to pay quarterly fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code.

## O.    Withholding from Distributions

Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from Distributions under the Plan. The Responsible Person and the Liquidating Trustee (as applicable) may withhold from amounts distributable under the Plan to any Person or Entity any and all amounts, determined in the sole and reasonable discretion of the Responsible Person and the Liquidating Trustee (as applicable), required to be withheld by any law, regulation, rule, ruling, directive, or other governmental requirement.

## P.    No Distributions on Late-Filed Claims

Except as otherwise provided in a Final Order of the Bankruptcy Court, any Claim as to which a proof of Claim was required to be filed and was first filed after the applicable bar date in the Chapter 11 Cases established by the Bar Date Order or any other applicable Final Order of the Bankruptcy Court which may have modified the deadlines set forth in the Bar Date Order, including, without limitation, the General Bar Date and any bar date established herein or in the Confirmation Order, shall (a) be forever barred, estopped, and enjoined from asserting such Claim against such Debtor, and such Debtor and its property, shall upon entry of the Confirmation Order, be forever discharged from all such indebtedness and liability with respect to such claim, and (b) shall not receive or be entitled to receive any payment or distribution from the Debtors or their successors or assigns with respect to such claim; *provided, however,* that notwithstanding the foregoing, the Liquidating Debtors shall not be entitled to a discharge.

## Q.    Nonconsensual Confirmation

If any Impaired Class of Claims entitled to vote does not accept the Plan by the requisite statutory majority provided in section 1126 of the Bankruptcy Code, the Debtors reserve the right to amend the Plan, to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code, or both. With respect to Impaired Classes that are deemed to reject the Plan, the Debtors intend to request that the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code notwithstanding the deemed rejection of the Plan by those Classes.

# ARTICLE VI.

## DISPUTED CLAIMS

### A.    Disputed Claims Reserve

After the Effective Date, separate Disputed Claims reserves shall be created for each of the following: (i) the EPC Reorganizing Debtors; (ii) the Solar Reorganizing Debtor; (iii) the Bioenergy and Maple Liquidating Debtors; and (iv) the EPC Liquidating Debtors.  The Disputed Claims reserves for the EPC Reorganizing Debtors shall be managed by the respective EPC Reorganizing Debtors or Responsible Person (subject to Article IV e(F)(2) and (3) of this Plan), as applicable, and the Disputed Claims reserves for the Liquidating Debtors shall be managed by the applicable Liquidating Trustee and Disputed Claims Reserves for the EPC Reorganizing Debtors shall be managed by the Litigation Trustee, each pursuant to the terms set forth in the respective Liquidating Trust Agreement or Litigation Trust Agreement, as applicable.   The Disputed Claims Reserve for the Solar Reorganizing Debtor shall be maintained by the Responsible Person.

Solely with respect to the  Disputed Claims reserves for the Reorganizing Debtors:

(a)    On each date Distributions are to be made under the Plan to Holders of Allowed Claims against the EPC Reorganizing Debtors, the Litigation Trustee shall retain on account of Disputed Claims an amount the Responsible Person reasonably estimates is necessary to fund the Pro Rata share of such Distributions to Holders of Disputed Claims if such Claims were Allowed (or such lesser amount as may be estimated in accordance with Article VI(D) of the Plan), with any Disputed Claims that are unliquidated or contingent being reserved in an amount reasonably determined by the Responsible Person.

(b)    Cash retained on account of such Disputed Claims shall be retained in the respective Disputed Claims Reserve for the benefit of the Holder of such Disputed Claim pending a determination of their entitlement thereto under the terms hereof and the Plan. To the extent that the property placed in a Disputed Reserve consists of Cash, that Cash shall be deposited in an interest-bearing account at a qualified institution.

(c)    If any Disputed Claim is disallowed or Allowed in an amount that is lower than the aggregate assets retained in Disputed Claims Reserve on account of such Disputed Claim, then within fifteen (15) days after such a determination, such funds in the Disputed Claims Reserve shall revest in the EPC Reorganizing Debtors and thereafter shall be used to pay any fees and expenses of the Responsible Person in accordance with this Plan with any balance to be distributed to other Holders of Allowed Claims in the same Class as part of the final Distribution to Holders of Allowed Claims in that Class. Such funds shall not escheat to any federal, state, or local government or other Entity for any reason.

(d)    Payments on any Disputed Claim that becomes an Allowed Claim shall be distributed by the Responsible Person from the Disputed Claims Reserve on the next scheduled Distribution date after the Claim is Allowed. Distributions shall be made only to the extent of the aggregate distributions that the Holder of any such Allowed Claim would have received had such Claim been Allowed as of the Effective Date (less any taxes paid with respect to amounts held in the Disputed Claims Reserve). Distributions to each Holder of a Disputed Claim that has become an Allowed Claim (and to the extent that the Holder of the Disputed Claim has not received prior distributions on account of that Claim) shall be made in accordance with the provisions of the Plan.

(e)    Subject to clauses Article IV(F)(2) and (3) of this Plan, the Disputed Claims Reserve shall be closed and extinguished by the Responsible Person when all Distributions and other dispositions of Cash or other property required to be made therefrom under the Plan.

### B.    Resolution of Disputed Claims

The respective Responsible Person, in the case of all Claims in the Plan of Reorganization other than the Retained Claims, the Litigation Trustee in the case of all Retained Claims, and the respective Liquidating Trustee in the Plan of Liquidation, shall have the right to make and file objections to Claims in the Bankruptcy Court.  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, all Disputed Claims shall be subject to the exclusive jurisdiction of the Bankruptcy Court.

C.      **Objection Deadline**

All objections to Disputed Claims shall be filed no later than the Claims Objection Bar Date, unless otherwise ordered by the Bankruptcy Court after notice and a hearing, with notice only to those parties entitled to notice in the Chapter 11 Cases under Bankruptcy Rule 2002.

D.      **Estimation of Claims**

At any time, the respective Responsible Person, in the case of all Claims in the Plan of Reorganization other than Retained Claims, the Litigation Trustee in the case of all Retained Claims, and the respective Liquidating Trustee in the Plan of Liquidation, may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code regardless of whether the Responsible Person, the Litigation Trustee, the Liquidating Trustee, or the Debtors (as applicable) have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection. If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the Claim, the Responsible Person or the Liquidating Trustee (as applicable) may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

E.      **No Distributions Pending Allowance**

Notwithstanding any other provision in the Plan, if any portion of a Claim is Disputed, no payment or Distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. Upon allowance, a Holder of the Allowed Disputed Claim shall receive any Distributions that would have been made up to the date of allowance to such Holder under the Plan had the Disputed Claim been Allowed on the Effective Date.

F.      **Resolution of Claims**

On and after the Effective Date, subject to Article IV.F.2 and 3 of this Plan, the respective Responsible Person, in the case of all Claims in the Plan of Reorganization other than the Retained Claims, the Litigation Trustee in the case of all Retained Claims, and the respective Liquidating Trustee in the Plan of Liquidation, shall have the authority to compromise, settle, otherwise resolve or withdraw any objections to Claims, and to compromise, settle, or otherwise resolve any Disputed Claims without approval of the Bankruptcy Court.

## ARTICLE VII.

## TREATMENT OF EXECUTORY CONTRACTS

A.      **Assumption or Rejection of Executory Contracts and Unexpired Leases**

In accordance with sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that exist between the Debtors and any Person or Entity shall be deemed rejected by the Debtors as of the Effective Date, except for (a) any executory contract or unexpired leases (i) that has been assumed or rejected by an order of the Bankruptcy Court entered prior to the Effective Date or (ii) as to which a motion for approval of

the assumption of such executory contract or unexpired lease has been filed and served prior to the Effective Date, and (b) any insurance contract (consistent with Article VII.E hereof), unless otherwise rejected by separate order of the Bankruptcy Court. Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute approval of rejection under section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejection is in the best interests of the Debtors, their Estates, and all parties in interest in the Chapter 11 Cases. Notwithstanding anything to the contrary in this Article VII.A, any Reorganizing Debtor may identify any contract to be assumed, together with a proposed cure amount, if any, in the Plan Supplement, and any objection with respect to assumption and cure by the respective Reorganizing Debtor must be filed by the Voting Deadline.

**B.  Claims Based on Rejection of Executory Contracts and Unexpired Leases**

Claims created by the rejection of executory contracts and unexpired leases under this Plan, must be filed with the Bankruptcy Court and served on the Debtors, the Responsible Person, and the Liquidating Trustee no later than thirty (30) days after service of notice of the Effective Date. Any Claims arising from the rejection of an executory contract or unexpired lease under this Plan for which proofs of Claim are not timely filed within that time period will be forever barred from assertion against the Debtors, the Estates, the Responsible Person, the Liquidating Trustee, their successors and assigns, and their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein. All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Article IX.F herein. Unless otherwise set forth herein or ordered by the Bankruptcy Court, all such Claims that are timely filed as provided herein shall be treated as General Unsecured Claims under the Plan and shall be subject to the provisions of Article III herein.

**C.  Claims Based on Cure Amounts Related to Assumed Executory Contracts and Unexpired Leases**

To the extent not already paid in full, outstanding Cure Amounts, if any, related to any executory contract or unexpired lease assumed by the Debtors and approved by a prior, final order of the Bankruptcy Court, shall be paid on or before the Effective Date of the Plan. To the extent that an executory contract or unexpired lease is assumed, as of the Effective Date, by virtue of being listed in the Plan Supplement, Cure Amounts, if any, shall be paid by the Responsible Person on or before the Effective Date.

**D.  Indemnification and Reimbursement**

Subject to the occurrence of the Effective Date, all Allowed Claims against the Debtors for indemnification, defense, reimbursement, or limitation of liability of current or former directors, officers, or employees of the Debtors against any Claims, costs, liabilities or causes of action as provided in the Debtors' articles of organization, certificates of incorporation, bylaws, other organizational documents, or applicable law, shall, to the extent such indemnification, defense, reimbursement, or limitation is owed in connection with one or more events or omissions occurring before the Petition Date, be (i) paid only to the extent of any applicable insurance coverage, and (ii) to the extent a Claim is Allowed, treated as Allowed General Unsecured Claims to the extent such Claims are not covered by any applicable insurance, including deductibles. Nothing contained herein shall affect the rights of directors, officers, or employees under any insurance policy or coverage with respect to such Claims, costs, liabilities, or Causes of Action or limit the rights of the Debtors, the Responsible Person, the Litigation Trustee, the Liquidating Trustee, or the Debtors' Estates to object to, seek to subordinate or otherwise contest or challenge Claims or rights asserted by any current or former officer, director or employee of the Debtors.

**E.  Certain Insurance Policy Matters**

Nothing in the Disclosure Statement, the Plan, the Confirmation Order, any exhibit to the Plan or any other Plan document (including any provision that purports to be preemptory or supervening), shall in any way operate to, or have the effect of, impairing in any respect the legal, equitable, or contractual rights and defenses, if any, of the insureds, the Debtors or any insurer with respect to any insurance policies or related agreements. The rights and obligations of the insureds, the Debtors, the Responsible Person, the Litigation Trustee, the Liquidating Trustee, and insurers shall be determined under the insurance policies or related agreements, including all terms, conditions, limitations and exclusions thereof, which shall remain in full force and effect, and under applicable non-bankruptcy law. Nothing in the Disclosure Statement, the Plan, the Confirmation Order, any exhibit to the Plan or any other

Plan document (including any provision that purports to be preemptory or supervening), shall in any way (i) limit a Debtor, the Responsible Person, the Litigation Trustee, the Liquidating Trustee, or their successors or assignees from asserting a right or claim to the proceeds of any insurance policy that insures any such Debtor, was issued to any such Debtor, or was transferred to a Reorganizing Debtor or the Liquidating Trustee by operation of the Plan or (ii) limit any right of any other party to challenge their right or claim.

## ARTICLE VIII.

## CONDITIONS PRECEDENT

### A.    Conditions Precedent

The following are conditions precedent to the Effective Date that must be satisfied or waived:

1.    The Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to the Debtors and the Restructuring Committee and the NM1 Committee.

2.    There shall be no stay, injunction, or appeal in effect with respect to the Confirmation Order, which such Confirmation Order shall contain approval of the releases provided for herein.

3.    The order approving the applicable Debtors' entry into the Master Restructuring Agreement shall have been entered and not have been stayed or vacated on appeal.

4.    The Master Restructuring Agreement shall not have been terminated as to all parties thereto.

5.    All statutory fees and obligations then due and payable to the Office of the U.S. Trustee shall have been paid and satisfied.

6.    All governmental, regulatory or third party approvals, authorizations, rulings, consents or documents (if any) that are necessary in connection with the transactions contemplated by the Plan or the Plan effectiveness shall have been obtained, not be subject to unfulfilled conditions, be and in full force and effect.

7.    The appointment of the Responsible Person, the Litigation Trustee, and the Liquidating Trustee shall have been confirmed by order of the Bankruptcy Court.

8.    All invoiced and unpaid fees and expenses of Professionals have been paid in full in Cash from the Debtors' assets, which condition shall be satisfied by virtue of the Professional Fee Reserve.

9.    All agreements and instruments that are exhibits to the Plan shall be in a form reasonably acceptable to the Debtors, the Creditors' Committee, the Restructuring Committee, and the NM1 Committee, and have been duly executed and delivered; *provided, however,* that no party to any such agreements and instruments may unreasonably withhold its execution and delivery of such documents to prevent this condition precedent from occurring.

10.    Each of the Restructuring Effective Date and Restructuring Steps Commencement Date, each as defined in the Master Restructuring Agreement, shall have occurred.

11.    The Restructuring Completion Date, as defined in the Master Restructuring Agreement, shall have occurred.

### B.    Waiver

Notwithstanding the foregoing conditions in Article VIII.A, the Debtors, subject to the consent of the Restructuring Committee and the NM1 Committee, may waive, in writing, the occurrence of any condition precedent or to modify any of the foregoing conditions precedent; *provided, however,* that the conditions precedent to the Restructuring Effective Date, Restructuring Steps Commencement Date, and the Restructuring Completion

Date may only be waived in accordance with the Master Restructuring Agreement. Any such written waiver of a condition precedent set forth in Article VIII.A may be effected at any time, without notice, without leave or order of the Bankruptcy Court or without any other formal action other than proceeding to consummate the Plan, provided, however, that such waiver will be reflected in the notice of occurrence of the Effective Date filed pursuant to Article VIII.E. Any actions required to be taken on the Effective Date or Confirmation Date (as applicable) shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

## C.    Effect of Failure of Conditions

In the event the Effective Date does not occur: (a) the Confirmation Order shall be vacated, (b) no Distributions under the Plan shall be made, (c) the Debtors and all Holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and (d) the Debtors' obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained in the Plan shall constitute or be deemed a waiver or release of any Claims or Equity Interests by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors unless extended by Bankruptcy Court order.

## D.    Substantial Consummation

"Substantial Consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

## E.    Notice of Effective Date

The Debtors shall file with the Bankruptcy Court a notice of occurrence of the Effective Date within five (5) days after the conditions in Article VIII have been satisfied or waived pursuant to Article VIII.B.

## ARTICLE IX.

### INDEMNIFICATION, RELEASE, INJUNCTIVE, AND RELATED PROVISIONS

## A.    Compromise and Settlement

Under section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided by the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and Equity Interests. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims and Equity Interests, as well as a finding by the Bankruptcy Court that such compromise or settlement is fair, equitable, reasonable, and in the best interests of the Debtors, the Estates, and Holders of Claims and Equity Interests.

As part of the foregoing compromise and settlement, the Debtors represent and warrant that Abacus Project Management Inc., Abengoa Water USA, LLC, Abengoa Transmission & Infrastructure, LLC, Abeima USA, LLC, and Abeinsa Abeima Teyma GP have no material equity value as of the date hereof. With respect to Abengoa Vista Ridge, LLC, Abengoa US Operations, LLC represents and warrants that it has no material equity value as of the date hereof. The Litigation Trustee shall have the right to request reasonable information to confirm the foregoing representation and warranty. Before the Effective Date the Debtors will provide financial statements for Abener North America Construction Services, Power Structure, LLC and Abeinsa Business Development, LLC.

## B.    Releases

1.    <u>Releases by the Debtors and their Estates</u>.  Notwithstanding anything contained in the Plan to the contrary, as of the Effective Date, and to the fullest extent permitted by applicable law, the adequacy of which is

hereby confirmed, for the good and valuable consideration provided by each of the Released Parties, each of the Debtors, the Estates, the Parent, and each of the Debtors', Estates', and Parent's current and former affiliates and Representatives (collectively, the "Debtor Releasing Parties") shall be deemed to have provided a full, complete, unconditional, and irrevocable release to the Released Parties (and each such Released Party so released shall be deemed released by the Debtor Releasing Parties, and the Creditors' Committee and its members but solely in their capacity as members of the Creditors' Committee and not in their individual capacities), from any and all Causes of Action and any other debts, obligations, rights, suits, judgments, damages, actions, remedies and liabilities whatsoever, whether accrued or unaccrued, whether known or unknown, foreseen or unforeseen, existing before the Effective Date, as of the Effective Date or arising thereafter, in law, at equity, whether for tort, contract, violations of statutes (including but not limited to the federal or state securities laws), or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors, including, without limitation, those that any of the Debtors would have been legally entitled to assert or that any Holder of a Claim or Equity Interest or other Entity would have been legally entitled to assert for or on behalf of any of the Debtors or the Estates, including those in any way related to the Chapter 11 Cases, the Plan, the Debtors' restructuring, the Master Restructuring Agreement and the transactions contemplated therein and herein, the Plan Supplement, the Disclosure Statement, and any related agreements, instruments or documents; *provided, however,* that the foregoing release shall not prohibit the Responsible Person or Liquidating Trust from asserting any and all defenses and counterclaims in respect of any Disputed Claim asserted by any Released Party; *provided further* that the Released Parties shall not be released from any act or omission that constitutes actual fraud, gross negligence, willful misconduct, or a criminal act as determined by a Final Order. Notwithstanding the above, the Releases by the Debtor Releasing Parties provided pursuant to this Article IX.B.1 (a) shall not affect any independent claims of third parties unrelated to the Debtors or their Estates, and (b) shall not affect any Causes of Action and any other debts, obligations, rights, suits, judgments, damages, actions, remedies and liabilities arising after the Effective Date and based on any act or omission, transaction, or other occurrence or circumstances taking place after the Effective Date; *provided, however,* that nothing set forth in the preceding provision shall in any way limit the provisions of IX.C of the Plan.

2.    Releases by Holders of Claims.  Except as otherwise provided in Article IX.B of the Plan, each Person, other than any of the Debtors, who votes to accept the Plan and does not mark such ballot to indicate their refusal to grant the release provided for in this paragraph, to the fullest extent permitted by applicable law, the adequacy of which is hereby confirmed, shall be deemed to fully, completely, unconditionally, irrevocably, and forever release the Released Parties of and from any and all Causes of Action and any other debts, obligations, rights, suits, judgments, damages, actions, remedies and liabilities whatsoever, whether accrued or unaccrued, whether known or unknown, foreseen or unforeseen, existing before the Effective Date, as of the Effective Date or arising thereafter, in law, at equity, whether for tort, contract, violations of statutes (including but not limited to the federal or state securities laws), or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way to the Debtors, including, without limitation, those that any Holder of a Claim would have been legally entitled to assert or that any Released Party or other Entity would have been legally entitled to assert for or on behalf of any Holders of a Claim, including those in any way related to the Chapter 11 Cases, the Plan, the Debtors' restructuring, the Master Restructuring Agreement and the transactions contemplated therein or herein, the Plan Supplement, the Disclosure Statement, and any related agreements, instruments or documents, *provided further* that the Released Parties shall not be released from any act or omission that constitutes actual fraud, gross negligence, willful misconduct, or a criminal act as determined by a Final Order. For the avoidance of doubt, nothing contained in this section shall release a Claim of any Entity or Person against any of the Debtors in the Chapter 11 Cases and preclude such Party or Entity entitled to receive a Distribution or other treatment afforded to such Claim under the Plan from receiving such Distribution or such other treatment. Notwithstanding the above, the Releases by Holders of Claims provided pursuant to this Article IX.B.2 shall not affect any independent claims of third parties unrelated to the Debtors or their Estates.

3.    For the avoidance of doubt, the releases set forth in this Article IX shall not affect or diminish the valid setoff or recoupment rights of the Debtors, Solar, EPC, the Litigation Trustee, the Liquidation Trustees, or any Creditor of the Debtors, and all such rights are hereby preserved.

4.    In the event that the Parent does not timely fund the New Value Contribution in accordance with Article IV.E. then the releases granted in Article IX to the Parent and any affiliates, except as to the Debtors' officers

and directors, will be void *ab initio* as to the Litigation Trust, Liquidating Trusts, and the Responsible Person after written notice and a three Business Days' cure period; provided, however, that after the first payment due under the second to last paragraph of Article IV.E hereof, the cure period may be extended one time to be 15 days.

5.      Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases set forth in this Article IX.B under Bankruptcy Rule 9019 and its finding that they are: (a) in exchange for good and valuable consideration, representing a good faith settlement and compromise of the Claims and Causes of Action released by this Plan; (b) in the best interests of the Debtors and all Holders of Claims and Equity Interests; (c) fair, equitable and reasonable; (d) approved after due notice and opportunity for hearing; and (e) a bar to the assertion of any Claim or Cause of Action thereby released.

## C.      Exculpation

Notwithstanding anything contained in the Plan to the contrary, the Debtors, the Debtors' officers, managers, directors, employees, and Professionals, the Creditors' Committee, the Creditors' Committee's members (solely in their capacity as members), and the Creditors' Committee's Professionals shall neither have nor incur any liability to any Entity for any act or omission arising after the Petition Date and through the Effective Date, in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, the Disclosure Statement, or any other contract, instrument, release, other agreement or document created or entered into in connection with the Plan, or any other post-petition act taken or omitted to be taken in connection with the Chapter 11 Cases; *provided, however,* that the foregoing provisions of this Article IX.C shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted actual fraud, gross negligence, willful misconduct, or criminal act.

## D.      Restrictions on Actions Against Go Forward Companies with Respect to Guarantees

Upon the Effective Date, except to the extent otherwise provided herein, the Holders of MRA Affected Debt Claims shall not make any demand under, bring any claim, or take (or vote in favor of) any Enforcement Action (as defined in the Master Restructuring Agreement) in any jurisdiction whatsoever in respect of any guarantee granted by any Go Forward Company in a manner inconsistent with the amendments to the terms of the principal obligations owed to such Holders under the applicable debt instruments pursuant to the terms of the Master Restructuring Agreement or support any person in taking such action. If a decision to enforce a guarantee or to take any action or to pursue a demand or claim in respect of a guarantee granted by a Go Forward Company needs the approval of a majority of creditors, each Holder of an MRA Affected Debt Claim entitled to vote in respect of such decision shall cast a valid vote against such enforcement and/or action if such enforcement and/or action is inconsistent with the amendments to the terms of the principal obligations owed to such Holder pursuant to the terms of the Master Restructuring Agreement.

## E.      Preservation of Causes of Action

1.   Vesting of Causes of Action

(a)      Except as otherwise provided in the Plan or Confirmation Order, in accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtors and the Estates may hold against any Entity shall remain with the Debtors and the Estates on and after the Effective Date, the Litigation Trust and the Liquidating Trust, as applicable.

(b)      Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Litigation Trustee as it relates to Causes of Action of the EPC Reorganizing Debtors to the extent not released hereunder, and the Liquidating Trustee as it relates to causes of action of the Liquidating Debtors, shall have the exclusive right to institute, prosecute, abandon, settle or compromise, in their respective sole discretion and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases.

(c)      Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Responsible Person for the Solar Reorganizing Debtors shall have the exclusive right to institute, prosecute, abandon, settle or compromise any Causes of Action that were held by the Solar Reorganizing Debtor and its Estate, in its sole discretion and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases.

2.    Preservation of All Causes of Action Not Expressly Settled or Released

(a)      Unless a Cause of Action against a Holder or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including the Confirmation Order) of the Bankruptcy Court, the Debtors and their Estates expressly reserve such Cause of Action for later adjudication or administration as set forth in this Plan (including, without limitation, Causes of Action not specifically identified or described in the Plan or elsewhere or of which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances which may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise), or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan, or Confirmation Order, except where such Causes of Action have been released in the Plan (including, without limitation, and for the avoidance of doubt, the releases contained in Article IX.B.1) or any other Final Order (including the Confirmation Order). In addition, the Debtors and their Estates expressly reserve the right of the Responsible Person or the Liquidation Trustee (as applicable) to pursue or adopt any claims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

(b)      Subject to the immediately preceding paragraph, any Entity to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors should assume that any such obligation, transfer, or transaction may be reviewed by the Responsible Person, the Litigation Trustee, or the Liquidation Trustee (as applicable) subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether: (i) such Entity has filed a proof of Claim against the Debtors in the Chapter 11 Cases; (ii) the Debtors have Allowed or objected to any such Entity's proof of Claim; (iii) any such Entity's Claim was included in the Schedules; (iv) the Debtors have objected to any such Entity's scheduled Claim; or (v) any such Entity's scheduled Claim has been identified by the Debtors as disputed, contingent or unliquidated.

3.    **Discharge**

Upon the Effective Date and in consideration of the rights afforded in the Plan and the payments and distributions to be made in the Plan, except as otherwise provided in the Plan or in the Confirmation Order, each Holder (as well as any trustees and agents on behalf of each Holder) of a Claim or Equity Interest and any affiliate of such Holder will be deemed to have forever waived, released, and discharged the Debtors and the Reorganizing Debtors, of and from any and all Liens, Claims, Equity Interests, liabilities, encumbrances, rights, and liabilities that arose prior to the Effective Date of any kind, nature, or description whatsoever, including any accrued interest, which Holder, in exchange for the treatment afforded to such Claims and Equity Interests under the Plan, will be deemed to have granted, and shall grant to the Debtors the waiver, release and discharge described in the Plan; *provided, however* that the Liquidating Debtors shall not receive a discharge under the Plan. Except as otherwise provided in the Plan or the Confirmation Order, upon the Effective Date, all such holders of Liens, Claims, liabilities, encumbrances and Equity Interests and their affiliates shall be forever precluded and enjoined, pursuant to sections 105, 524, 1141 of the Bankruptcy Code, from prosecuting or asserting any discharged Lien, Claim, liability or encumbrance against or terminated Equity Interest in the Debtors or the Reorganizing Debtors, as appropriate, or against any of their assets or properties, any other or further Claim, liabilities, encumbrances or Equity Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim or proof of Equity Interest.

4.      **Term of Pre-Confirmation Injunctions or Stays**

Unless otherwise provided in the Plan, the Confirmation Order, or a separate order from the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases in accordance with sections 105 or 362 of the Bankruptcy Code, or otherwise (excluding any injunctions or stays contained in the Plan or the Conformation Order), and in existence on the Confirmation Date shall remain in full force and effect until the later of the Effective Date and the date indicated in such applicable order.

5.      **Injunction Against Interference with Plan**

Upon the entry of the Confirmation Order, all Holders of Claims and Equity Interests and other parties in interest, along with their respective present or former affiliates, employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

**F.      Injunction**

1.      Except as otherwise expressly provided for in the Plan or in obligations issued under the Plan, from and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against the Debtors, the Estates, the Creditors' Committee, the Liquidating Trusts, the Liquidating Trustee, the Litigation Trust, the Litigation Trustee, the Responsible Person, the Parent, their successors and assigns, and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim or Equity Interest, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or satisfied or to be released or satisfied under the Plan or the Confirmation Order.

2.      Except as otherwise expressly provided for in the Plan or in obligations issued under the Plan, from and after the Effective Date, all Entities shall be precluded from asserting against the Debtors, the Estates, the Creditors' Committee, the Liquidating Trust, the Liquidating Trustee, the Litigation Trust, the Litigation Trustee, the Responsible Person, the Parent, or their successors and assigns and their assets and properties, any other Claims or Equity Interests based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, solely to the extent that (a) such Claims or Equity Interests have been released or satisfied under this Plan or the Confirmation Order or (b) such Claims, Equity Interests, actions or assertions of Liens relate to property that will be distributed under this Plan or the Confirmation Order.

3.      Except as otherwise expressly provided for in the Plan or in obligations issued under the Plan, the rights afforded in the Plan and the treatment of all Claims and Equity Interests in the Plan shall be in exchange for and in complete satisfaction of Claims and Equity Interests against the Debtors or any of their assets or properties solely to the extent that (a) such Claims or Equity Interests have been released or satisfied under this Plan or the Confirmation Order or (b) such Claims, Equity Interests, actions, or assertions of Liens relate to property that will be distributed under this Plan or the Confirmation Order.  On the Effective Date, all such Claims against, and Equity Interests in, the Debtors shall be satisfied and released in full.

4.      Except as otherwise expressly provided for in the Plan or in obligations issued under the Plan, all Persons and Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest satisfied and released under the Plan or Confirmation Order, from:

**(a)**      commencing or continuing in any manner any action or other proceeding of any kind against any Debtor, the Creditors' Committee, the Liquidating Trusts, the Liquidating Trustee, the Litigation Trust, the Litigation Trustee, the Responsible Person, the Parent, their successors and assigns, and their assets and properties;

**(b)**      enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against any Debtor, the Creditors' Committee, the Liquidating Trusts, the Liquidating Trustee, the Litigation Trust, the Litigation Trustee, the Responsible Person, the Parent, their successors and assigns, and their assets and properties;

(c)     creating, perfecting or enforcing any encumbrance of any kind against any Debtor, or the property or estate of any Debtor, the Creditors' Committee, the Liquidating Trustee, the Litigation Trust, the Litigation Trustee, the Responsible Person, or the Parent;

(d)     commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Equity Interest or Cause of Action released or settled hereunder; and

(e)     taking any action inconsistent with Article IX of the Plan.

5.     For the avoidance of doubt, nothing contained in this section F shall enjoin any Entity or Person from pursuing its Claim in the Chapter 11 Cases and receiving Distributions (to the extent such Entity or Person is entitled to a Distribution) or such other treatment afforded to such Claim under the Plan on account thereof.

## G.     Releases of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created under the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against property of the Estates distributed under the Plan shall be fully released and discharged and all of the right, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interest shall revert to the Debtors.

## ARTICLE X.

## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Cases and all Entities with respect to all matters related to the Chapter 11 Cases, the Debtors, the Parent, and the Plan, including, without limitation, the Litigation Trust and Liquidating Trusts, as is legally permissible, including, without limitation, jurisdiction to:

1.     allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest against the Debtors, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims;

2.     grant, deny or otherwise resolve any and all applications of Professionals or Persons retained in the Chapter 11 Cases by the Debtors or the Creditors' Committee for allowance of compensation or reimbursement of expenses authorized by the Bankruptcy Code or the Plan, for periods ending by the Effective Date;

3.     resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired leases to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

4.     ensure that Distributions to Holders of Allowed Claims are accomplished under the provisions of the Plan, including by resolving any disputes regarding the entitlement of the Debtors, the Responsible Person, the Litigation Trust, the Litigation Trustee, the Liquidation Trusts, or the Liquidating Trustee to recover assets held by third parties;

5.     decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving a Debtor that may be pending on the Effective Date or instituted by the Responsible Person, the Litigation Trustee, or the Liquidating Trustee after the Effective Date;

6.     enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and Confirmation Order;

7.      resolve any cases, controversies, suits or disputes that may arise in connection with the Effective Date, interpretation or enforcement of the Plan, the Confirmation Order, or any Entity's obligations incurred in connection with the Plan;

8.      issue injunctions, enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

9.      enforce Article IX.A, Article IX.B, Article IX.C and Article IX.D hereof;

10.     enforce the injunction set forth in Article IX.E.3 hereof;

11.     resolve any cases, controversies, suits or disputes with respect to the releases, injunction, and other provisions contained in Article IX herein, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions, and other provisions of this Plan;

12.     enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked, or vacated;

13.     resolve any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order, or any contract (except for the Master Restructuring Agreement), instrument, release, indenture, or other agreement or document adopted or entered into in connection with the Plan or the Disclosure Statement;

14.     resolve any disputes between the Responsible Person and the Litigation Trustee;

15.     resolve any disputes arising from the non-payment of any amounts required to be paid by the Parent under, or in connection with, the Plan or the Confirmation Order; and

16.     enter an order and a Final Decree closing the Chapter 11 Cases.

## ARTICLE XI.

## MISCELLANEOUS PROVISIONS

A.      **Modification of Plan**

Subject to the limitations contained in the Plan:  (1) the Debtors, with the consent of the Creditors' Committee, the Restructuring Committee, and the NM1 Committee, and, solely with respect to Articles III.B.3, IV.B, IV.C, IV.D, IV.I, IV.L, IV.P, VI, IX.B and IX.C of the Plan, the Creditors' Committee, reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; provided, however, that any pre-Confirmation Date amendments shall not materially or adversely affect the interests, rights or treatment of any Allowed Claims or Equity Interests under the Plan and shall not be inconsistent with the Master Restructuring Agreement; and (2) after the entry of the Confirmation Order, subject to the consent of the Restructuring Committee and the NM1 Committee, the Debtors, the Responsible Person or the Liquidating Trustee may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

B.      **Revocation of Plan**

Subject to the consent of the Restructuring Committee and the NM1 Committee, the Debtors reserve the right to revoke or withdraw the Plan prior to the entry of the Confirmation Order, and to file subsequent chapter 11 plans.  If the Debtors revoke or withdraw the Plan (subject to the consent of the Restructuring Committee and the

NM1 Committee) or if entry of the Confirmation Order or the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan, assumption or rejection of executory contracts effected by the Plan, and any document or agreement executed pursuant hereto shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, such Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission of any sort by the Debtors or any other Entity.

## C.      Binding Effect

On the Effective Date, the provisions of the Plan shall bind any Holder of a Claim against, or Equity Interest in, a Debtor and such Holder's respective successors and assigns, whether or not the Claim or Equity Interest of such Holder is Impaired under the Plan, whether or not such Holder has accepted the Plan and whether or not such Holder is entitled to a Distribution under the Plan and the Parent with respect to its obligations hereunder.

## D.      Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

## E.      Governing Law

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, unless otherwise stated, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the state of Delaware without giving effect to the principles of conflict of laws thereof.

## F.      Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Effective Date occurs. Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by a Debtor or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtor with respect to the Holders of Claims or Equity Interests or other parties-in-interest; or (2) any Holder of a Claim or Equity Interest or other party-in-interest prior to the Effective Date.

## G.      Article 1146 Exemption

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property under this Plan shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any prohibited tax or governmental assessment and to accept for filing and recordation instruments or other documents transfers of property without the payment of any tax or governmental assessment.

## H.      Section 1125(e) Good Faith Compliance

Confirmation of the Plan shall act as a finding by the Bankruptcy Court that the Debtors and each of their respective Representatives have acted in "good faith" under section 1125(e) of the Bankruptcy Code.

## I.      Further Assurances

The Debtors, the Responsible Person, the Litigation Trustee, and the Liquidating Trustee, all Holders of Claims receiving Distributions hereunder, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

## J.      Service of Documents

Any pleading, notice or other document required by the Plan to be served on or delivered to the Debtors shall be sent by first class U.S. mail, postage prepaid as follows:

**To the Debtors:**

Abeinsa EPC
3030 North Central Avenue, Suite 808
Phoenix, Arizona 85012
Attn: Javier Ramirez

Abengoa Bioenergy
16150 Main Circle Drive, Suite 300
Chesterfield, Missouri 63017-4689
Attn: Jeffrey Bland, General Counsel, US

Abengoa Solar LLC
1250 Simms Street, Unit 101
Lakewood, CO 80401
Attn: Timothy McMahon

*with a copy to:*

DLA Piper LLP (US)
203 N. LaSalle Street, Suite 1900
Chicago, Illinois 60601
Attn: Richard A. Chesley

- and -

DLA Piper LLP (US)
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
Attn: R. Craig Martin

**To the Responsible Person:**

Jeffrey D. Bland
3030 North Central Avenue, Suite 808
Phoenix, Arizona 85012
Attn: Legal Department

*with a copy to:*

**To the Liquidating Trustee:**

Drivetrain, LLC
630 Third Avenue, 21st Floor
New York, NY 10017

*with a copy to:*

**To the Litigation Trustee:**

Drivetrain, LLC
630 Third Avenue, 21st Floor
New York, NY 10017

*with a copy to:*

**To the Creditors' Committee:**

Hogan Lovells US LLP
875 Third Avenue
New York, New York  10022
Attn:  Christopher R. Donoho, III

*with a copy to:*

Morris, Nichols, Arsht & Tunnel LLP
1201 North Market Street, Suite 1600
Wilmington, Delaware 19801
Attn:  Robert J. Dehney

*with a copy to:*

**To Certain Noteholders:**

Clifford Chance US LLP
31 West 52nd Street
New York, New York 10019-6131
Attn:  Jennifer DeMarco and Kristine Manoukian

**K.      Filing of Additional Documents**

On or before the Effective Date, the Debtors may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**L.      No Stay of Confirmation Order**

The Debtors shall request that the Bankruptcy Court waive stay of enforcement of the Confirmation Order otherwise applicable, including under Bankruptcy Rules 3020(e), 6004(h), or 7062.

*[Remainder of page intentionally left blank.]*

Dated:      December 6, 2016
            Wilmington, Delaware

**Solar Reorganizing Debtor**

Abengoa Solar LLC

By:  C. WINDKAM
Its: AUTHORIZED SIGNATORY

Dated:     December 6, 2016
           Wilmington, Delaware

**EPC Reorganizing Debtors**

Abener Teyma Mojave General Partnership

_____
By: Javier Ramirez
Its: Authorized Representative

Dated:     December 6, 2016
           Wilmington, Delaware

**EPC Reorganizing Debtors**

Abeinsa Abener Teyma General Partnership

_____
By: Leonardo Maccio
Its: Authorized Representative

Dated:      December 6, 2016
            **Wilmington, Delaware**

**EPC Reorganizing Debtors**

Teyma Construction USA, LLC

_____

By: Leonardo Maccio
Its: President

Dated:     December 6, 2016
           Wilmington, Delaware

**EPC Reorganizing Debtors**

Teyma USA & Abener Engineering and
Construction Services General Partnership

_____
By: Leonardo Maccio
Its: Authorized Representative

Dated:    December 6, 2016
            Wilmington, Delaware

**EPC Reorganizing Debtors**

Abeinsa EPC LLC

_____

By: Leonardo Maccio
Its: President

Dated:    December 6, 2016
            Wilmington, Delaware

**EPC Reorganizing Debtors**

Abener Teyma Hugoton General Partnership

_____

By: Leonardo Maccio
Its: Authorized Representative

Dated:    December 6, 2016
          Wilmington, Delaware

**EPC Reorganizing Debtors**

Abener North America Construction, LP

_____
By:
Its:

Dated:      December 6, 2016                     **EPC Reorganizing Debtors**
            Wilmington, Delaware

                                                 Abener Construction Services, LLC

                                                 _____
                                                 By:
                                                 Its:

Dated:   December 6, 2016
         Wilmington, Delaware

**EPC Reorganizing Debtors**

Abeinsa Holding Inc.

By: JOSE FERNANDO GIRALDEZ
Its: DIRECTOR

*[Plans of Reorganization and Liquidation Signature Pages]*

Dated:    December 6, 2016
           **Wilmington, Delaware**

                              **EPC Reorganizing Debtors**

                              Abengoa Bioenergy New Technologies, LLC

                              _____

                              By: Antonio Jose Vallespir de Gregorio
                              Its: Chief Executive Officer

Dated:    December 6, 2016
          Wilmington, Delaware

**EPC Reorganizing Debtors**

Abengoa US Holding, LLC

By: _____
Its:

By: _____
Its:

Dated:  December 6, 2016
        Wilmington, Delaware

**EPC Reorganizing Debtors**

Abengoa US, LLC

By:  _____
Its:

By:  _____
Its:

Dated:     December 6, 2016
           Wilmington, Delaware

**EPC Reorganizing Debtors**

Abengoa US Operations, LLC

By: _____
Its:

By: _____
Its:

*[Plans of Reorganization and Liquidation Signature Pages]*

Dated:     December 6, 2016
           Wilmington, Delaware

**EPC Liquidating Debtors**

Abencor USA, LLC

By: Pedro Montoro
Its: COO

Dated:    December 6, 2016
              Wilmington, Delaware

**EPC Liquidating Debtors**

Inabensa USA, LLC

By: _Emilio Rodriguez Izquierdo_
Its: _CEO_

Dated:   December 6, 2016
          Wilmington, Delaware

**EPC Liquidating Debtors**

Nicsa Industrial Supplies, LLC

By: Mr. Alfonso González Domínguez
Its: President

Dated:   December 6, 2016
         Wilmington, Delaware

**EPC Liquidating Debtors**

Abener Teyma Inabensa Mount Signal
Joint Venture

By: Javier Ramirez
Its: Authorized Representative

*[Plans of Reorganization and Liquidation Signature Pages]*

Dated:     December 6, 2016
           Wilmington, Delaware

**Bioenergy and Maple Liquidating Debtors**

Abengoa Bioenergy Hybrid of Kansas, LLC

_____

By: Antonio Jose Vallespir de Gregorio
Its: Chief Executive Officer

Dated:      December 6, 2016
            Wilmington, Delaware

**Bioenergy and Maple Liquidating Debtors**

Abengoa Bioenergy Technology Holding, LLC

_____
By: Antonio Jose Vallespir de Gregorio
Its: Chief Executive Officer

Dated:    December 6, 2016
          Wilmington, Delaware

**Bioenergy and Maple Liquidating Debtors**

Abengoa Bioenergy Meramec Holding, Inc.

_____
By: Antonio Jose Vallespir de Gregorio
Its: Chief Executive Officer

Dated:    December 6, 2016
              Wilmington, Delaware

**Bioenergy and Maple Liquidating Debtors**

Abengoa Bioenergy Holdco, Inc.

_____
By: Antonio Jose Vallespir de Gregorio
Its: Chief Executive Officer

# **EXHIBIT B**

**Effective Date Notice**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| ABEINSA HOLDING INC., *et al.*, | Case No. 16-10790 (KJC) |
| Debtors.[1] | (Jointly Administered) |
|  | Related D.I.: [ ] |

## NOTICE OF (I) ENTRY OF CONFIRMATION ORDER AND (II) EFFECTIVE DATE

**PLEASE TAKE NOTICE** that an order (the "Confirmation Order") of The Honorable Kevin J. Carey, United States Bankruptcy Judge for the District of Delaware, confirming the *Debtors' Modified First Amended Plans of Reorganization and Liquidation*, attached to the Confirmation Order as Exhibit A (including all exhibits thereto and as the same may be amended, modified or supplemented from time to time, the "Plan")[2] was entered on _____, 2016 [D.I. __].

**PLEASE TAKE FURTHER NOTICE** that all conditions precedent to the Effective Date pursuant to Article VIII.A. of the Plan have been satisfied or waived and the transactions contemplated to occur on the Effective Date have been consummated. _____, 201__, is the Effective Date of the Plan.

---

[1]     The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Abeinsa Holding Inc. (9489); Abeinsa EPC LLC (1176); Abencor USA, LLC (0184); Abener Construction Services, LLC (0495); Abener North America Construction, LP (5989); Abengoa Solar, LLC (6696); Inabensa USA, LLC (2747); Nicsa Industrial Supplies LLC (9076); Teyma Construction USA, LLC (0362); Abeinsa Abener Teyma General Partnership (2513); Abener Teyma Mojave General Partnership (2353); Abener Teyma Hugoton General Partnership (7769); Abener Teyma Inabensa Mount Signal Joint Venture (9634); Teyma USA & Abener Engineering and Construction Services General Partnership (6534); Abengoa US Holding, LLC (6871); Abengoa US, LLC (9573); Abengoa US Operations, LLC (1268); Abengoa Bioenergy Hybrid of Kansas, LLC (9711); Abengoa Bioenergy Technology Holding, LLC (7434); Abengoa Bioenergy New Technologies, LLC (8466); Abengoa Bioenergy Holdco, Inc. (8864); Abengoa Bioenergy Meramec Holding, Inc. (1803).

[2]     Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Plan.

**PLEASE TAKE FURTHER NOTICE** that the Plan and its provisions are binding on, among others, the Debtors, all Holders of Claims and/or Equity Interests (irrespective of whether such Claims or Equity Interests are Impaired under the Plan or whether the Holders of such Claims or Equity Interests have accepted the Plan), and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors, as provided in the Plan.

**PLEASE TAKE FURTHER NOTICE** that any Holder of a Claim arising from the rejection of an executory contracts and unexpired leases with the Debtors pursuant to the Plan must submit a proof of claim on account of such Claim by no later than _____, 201 **at 4:00 p.m.  (ET)** to the Claims Agent, Prime Clerk LLC, 830 Third Avenue, 3rd Floor, New York, NY 10022.  **<u>Any proofs of claim not submitted and actually received by the Claims Agent by such date will be forever barred from assertion against the Estates, the reorganized EPC Reorganizing Debtors, EPC Liquidating Debtors, reorganized Solar Reorganizing Debtor, Bioenergy and Maple Liquidating Debtors, Liquidating Trusts, Liquidating Trustees, Litigation Trust and Litigation Trustee</u>.**

**PLEASE TAKE FURTHER NOTICE** that the Administrative Claims Bar Date is _____, **2016 at 4:00 p.m. (ET)**.  Any Administrative Claim, including, without limitation, Administrative Claims of Professionals, not Filed by the Administrative Claims Bar Date shall be deemed disallowed under the Plan and shall be forever barred the Estates, the reorganized EPC Reorganizing Debtors, EPC Liquidating Debtors, reorganized Solar Reorganizing Debtor, Bioenergy and Maple Liquidating Debtors, Liquidating Trusts, Liquidating Trustees, Litigation Trust and Litigation Trustee, and the Holder thereof shall be enjoined from

commencing or continuing any action, employment of process or act to collect, offset, recoup or

recover such Claim.

Dated: December __, 2016
       Wilmington, Delaware

Respectfully submitted,

**DLA PIPER LLP (US)**

By: */s/ R. Craig Martin*
    R. Craig Martin (DE 005032)
    1201 North Market Street, Suite 2100
    Wilmington, Delaware 19801
    Telephone: (302) 468-5700
    Facsimile: (302) 394-2341
    craig.martin@dlapiper.com

    Richard A. Chesley (admitted *pro hac vice*)
    203 North LaSalle Street, Suite 1900
    Chicago, Illinois 60601
    Telephone: (312) 369-4000
    Facsimile: (312) 236-7516
    richard.chesley@dlapiper.com

    *Counsel to Debtors and Debtors in Possession*